IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
Civil No. 08-SC-5348 (ADM/JSM)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| 1.   THOMAS JOSEPH PETTERS; | ) |
| PETTERS COMPANY, INC., | ) |
| PCI; PETTERS GROUP WORLDWIDE, LLC; | ) |
| 1.   DEANNA COLEMAN aka DEANNA MUNSON; | ) |
| 2.   ROBERT WHITE; | ) |
| 3.   JAMES WEHMHOFF; | ) |
| 4.   LARRY REYNOLDS dba NATIONWIDE | ) |
| INTERNATIONAL RESOURCES aka NIR; | ) |
| 6.   MICHAEL CATAIN dba ENCHANTED FAMILY | ) |
| BUYING COMPANY; | ) |
| 7.   FRANK E. VENNES JR. dba METRO GEM | ) |
| FINANCE, | ) |
| METRO GEM INC., | ) |
| GRACE OFFERINGS OF FLORIDA, LLC, | ) |
| METRO PROPERTY FINANCING, LLC, | ) |
| 38 E. ROBINSON, LLC, | ) |
| 55 E. PINE, LLC, | ) |
| ORLANDO RENTAL POOL, LLC, | ) |
| 100 PINE STREET PROPERTY, LLC, | ) |
| ORANGE STREET TOWER, LLC, | ) |
| CORNERSTONE RENTAL POOL, LLC, | ) |
| 2 SOUTH ORANGE AVENUE, LLC, | ) |
| HOPE COMMONS, LLC, | ) |
| METRO GOLD, INC.; | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF MOTION FOR ORDER TO SHOW GOOD CAUSE**

FACTS

On October 6, 2008, the Court placed defendants Petters Company, Inc. (PCI) and Petters Group Worldwide (PGW) into receivership and appointed Douglas A. Kelley (Kelley) to serve as their receiver. Kelley was subsequently appointed receiver for individual defendants Thomas

Doc# 2776397\1

Petters (Petters), Deanna Coleman, Robert White, James Wehmhoff, Larry Reynolds and Michael Catain by a separate order dated October 14, 2008.[1]  Under both orders, Kelley was granted "the full power of an equity Receiver," directed to take possession and control of the operations and assets of the receivership entities, and charged with performing all acts necessary or advisable to preserve the value of the assets of the receivership estate for the benefit of the defendants' creditors.  Kelley's duties include defending litigation brought against the receiverships or receivership entities.

The corporate and individual receivership defendants have been besieged by a host of lawsuits pending in multiple forums throughout the country.  Petters has been sued individually in at least seven different civil lawsuits pending in Minnesota, Texas, New York and Illinois.  PCI and/or PGW are embroiled in litigation in 30 or more additional cases venued in multiple jurisdictions.[2]  New lawsuits are filed nearly every day.  Given the wide expanse of the fraudulent scheme alleged by the government in this case, many more actions are anticipated.

The ever-growing wave of civil litigation threatens to consume a major portion of Kelley's time and will, if left unchecked, financially overwhelm the receivership estate.  To avoid such a result, this Court should exercise its inherent authority to stay all litigation against receivership entities to allow Kelley ample time to focus on his court-mandated duties.

---

[1] On October 16, 2008, the Court appointed Gary Hansen receiver over defendant Frank Vennes and his related entities.

[2] To date, ten Petters-related entities have filed bankruptcy petitions, staying litigation against those defendants under the automatic stay provision of the federal bankruptcy code.

ARGUMENT

A. THE COURT CAN STAY ALL LITIGATION AGAINST THE RECEIVERSHIP ENTITIES.

The instant receiverships were established pursuant to 18 U.S.C. §1345 and Fed. R.Civ. P. 65. Section 1345 authorizes broad injunctive relief to protect those affected by ongoing mail fraud, wire fraud or banking fraud schemes. Besides enjoining receivership defendants, 18 U.S.C. §1345(b) empowers district courts to "take such other action as is warranted to prevent a continuing or substantial injury to the United States or any other person . . . for whose protection [an anti-fraud] action is brought." Victim restitution is a primary focus of §1345. *United States v. Payment Processing Ctr., LLC*, 439 F.Supp.2d 435, 438 (E.D.Pa. 2006). Toward that end, receivership actions under §1345 are often brought to preserve the status quo and protect innocent people while parallel criminal investigations proceed. *United States v. Payment Processing Ctr., LLC*, 435 F.Supp.2d 462, 464 (E.D.Pa. 2006)(citing S.Rep. No. 225, 98th Cong., 2d Sess. 401-02, *reprinted in* 1984 U.S. Code Cong. & Admin. News 3182, 3539).

The instant receiverships are a product of the court's equity jurisdiction. Courts presiding over equity receiverships possess extremely broad power to supervise and protect receivership assets. *See, e.g., SEC v. Black*, 163 F.3d 188, 199 (3rd Cir. 1998)(noting that in dealing with receivers vested with equitable powers, "district court has wide discretion as to how to proceed"); *FDIC v. Bernstein*, 786 F.Supp. 170, 177 (E.D.N.Y. 1992)("one common thread keeps emerging out of cases involving equity receiver—that is, a district court has extremely broad discretion in supervising an equity receiver").

The fundamental purpose of an equity receivership is to protect property for ultimate return to the proper parties. The receiver's role is to safeguard assets, preserve their value, and help facilitate an equitable property distribution. *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006). A receiver's efforts are "rendered meaningless" if third parties can obtain judgments against the receivership estate and deplete its assets by means of litigation and

its attendant costs. *SEC v. Credit Bancorp, Ltd.*, 93 F.Supp.2d 475, 477 (S.D.N.Y. 2000). To prevent needless asset depletion, the district court must be able to exercise control over claims brought against receivership assets. *Id.* As the Sixth Circuit Court of Appeals explained in *Liberte Capital*:

> The receivership court has a valid interest in both the value of the claims themselves and the costs of defending any suit as a drain on receivership assets. To this extent, the receivership court may issue a blanket injunction, staying litigation against the named receiver and the entities under his control unless leave of that court is first obtained.

*Id.* (citations omitted).

This court's power to stay competing actions springs from its control over property placed in receivership. *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980). Recognizing the inherent power to prevent interference with administration of property under their control, courts have issued blanket stays against non-parties in a variety of contexts including, among others:

- SEC actions (*see Wencke, supra*)

- FTC enforcement litigation (*FTC v. Med Resorts Int'l, Inc.*, 199 F.R.D. 601 (N.D.Ill. 2001))[3] *See FTC v. Business Card Experts, Inc., et al.*, Case No. 06-

---

[3] A recent FTC action filed in this district contained the following stay provision as part of a receivership ordered by United States District Judge Patrick J. Schiltz:

> XV. STAY OF ACTIONS AGAINST RECEIVERSHIP DEFENDANTS
>
> IT IS FURTHER ORDERED that, except by leave of this Court, during pendency of the receivership ordered herein, Defendants, and all investors, creditors, stockholders, lessors, customers and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of Defendants, and al others acting for or on behalf of such persons, are hereby enjoined from taking action that would interfere with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Defendants, including but not limited to:
>
> A. Petitioning, or assisting in the filing of a petition that would cause any Receivership Defendant to be placed in bankruptcy;
>
> B. Commencing, prosecuting, or continuing a judicial, administrative, or

SC4671 (PJS/RLE)(Docket No.8 at 23).

- Desegregation orders (*United States v. Hall*, 472 F.2d 261 (5th Cir. 1972))

- SBA receiverships (*United States v. Acorn Technology Fund, L.P.*, 429 F.3d 438 (3rd Cir. 2005))

- Failed bank receiverships (*see Bernstein, supra*)

The authority for ordering a stay depends not on a statutory grant of power but rather "derives from the inherent power of a court of equity to fashion effective relief." *Wencke*, 622 F.2d at 1369.[4]

---

other action or proceeding against the Receivership Defendants, including the issuance or employment of process against the Receivership Defendants, except that such actions may be commenced if necessary to toll any applicable statute of limitations;

C. Filing or enforcing any lien on any asset of the Receivership Defendants, taking or attempting to take possession, custody, or control of any asset of the Receivership Defendants; or attempting to foreclose, forfeit, alter, or terminate any interest in any asset of the Receivership Defendants, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise;

D. Initiating any other process or proceeding that would interfere with the Receiver managing or taking custody, control, or possession of, the assets or documents subject to this receivership.

Provided that, this Order does not stay: (i) the commencement or continuation of a criminal action or proceeding; (ii) the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or (iii) the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

[4] No reported case has been identified involving a blanket stay in the context of a §1345 receivership. In the *Payment Processing Center* litigation, however, the court recognized the possibility of such a stay but declined to order one "absent a defense request." 443 F.Supp.2d 728, 736 (E.D.Pa. 2006). Here, PGW, PCI and Petters all request a stay. Kelley has invited counsel for the remaining individual defendants to express their views regarding a stay and none have voiced any opposition to the instant motion.

Where significant public interest considerations are at stake, it becomes especially important for a court to take control over the defendants' assets and impose a receivership free from interference in other court proceedings. *Id.* at 1372. Similar to the cases discussed above, there is a strong federal interest in ensuring effective relief to those affected by the alleged fraud in the case at bar. *Wencke*, 622 F.2d at 1372. Likewise, the requested stay will not deprive non-party litigants of their day in court but only postpone their actions to a later time. *Id.*

B.   A BLANKET STAY IS NECESSARY.

The instant receiverships are the product of an alleged fraud of monumental proportion. In its receivership orders, the Court found probable cause to believe that the fraud entails at least $3 billion. The volume and complexity of the underlying financial dealings justify imposing a stay to afford Kelley adequate time to analyze the transactions and familiarize himself with other important aspects of the receivership estate. *Id.* at 1373. As the *Wencke* court aptly observed when facing a similar situation, a complex fraud may leave the financial status of the affected entities so obscure or complex that a receiver is hampered in conducting immediate litigation. *Id.* Also, the expense of defending the myriad lawsuits spawned by a wide-ranging fraud scheme may be overwhelming unless temporarily deferred. *Id.* In such circumstances, a blanket stay of litigation is the only way to give a receiver a meaningful opportunity to perform his assigned tasks without disruption from the competing demands of attending to an unmanageable wave of civil litigation. *Id.*; *see also Acorn Tech Fund*, 429 F.3d at 443 (noting that "a district court should give . . . substantial weight to the receiver's need to proceed unhindered by litigation, and the very real danger of litigation expenses diminishing the receivership estate").

A stay order will also help to insure that all creditors of the receivership estate are treated alike. By preserving the status quo, a blanket stay will avoid preferential treatment of some creditors of the receivership defendants to the detriment of others. *See SEC v. Pittsford Capital Income Partners, LLC*, 2007 WL 61096, *2 (W.D.N.Y. Jan. 5, 2007)(slip op.)(rejecting judgment creditors' motion to lift stay to enforce judgment so as to receive full compensation rather than pro rata recovery available to hundreds of other fraud victims); *see also United States*

*v. Andrews*, 2007 WL 837250 (W.D.Okla. Mar. 15, 2007)(slip op.)(refusing to impose a constructive trust in favor of latter victim of Ponzi scheme to detriment of others merely because defendant fortuitously spent money of other victims first).

## CONCLUSION

The purpose of staying civil litigation against the receivership defendants is straightforward: "A receiver must be given a chance to do the important job of marshaling and untangling a company's assets without being forced into court by every investor or claimant." *Acorn Tech Fund*, 429 F.3d at 443. Unless a blanket stay is ordered precluding litigation against the receiver, the receivership defendants and the assets under the receiver's control, without leave of court, the flood of pending and anticipated litigations threatens to overwhelm the administration of the receivership and financially deplete its assets. To avoid that result and give Kelley ample time to perform his court-ordered duties, a stay should be ordered.

DATED: October 21, 2008.                **LINDQUIST & VENNUM P.L.L.P.**

By    s/ Sandra Smalley-Fleming
Terrence J. Fleming, #128983
Sandra Smalley-Fleming #296983
4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 371-3211
tfleming@lindquist.com
ssmalley@lindquist.com

*Attorneys for Douglas A. Kelley, Receiver*

Doc# 2776397\1