**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

United States of America,

        Plaintiff,

  v.

Thomas Joseph Petters; Petters Company,
Inc., a/k/a PCI; Petters Group Worldwide, LLC;
Deanna Coleman, a/k/a Deanna Munson;
Robert White; James Wehmhoff; Larry
Reynolds and/or d/b/a Nationwide International
Resources, a/k/a NIR; Michael Catain and/or d/b/a
Enchanted Family Buying Company;
Frank E. Vennes, Jr., and/or d/b/a Metro Gem
Finance, Metro Gem, Inc., Grace Offerings
of Florida, LLC, Metro Property Financing,
LLC, 38 E. Robinson, LLC, 55 E. Pine, LLC,
Orlando Rental Pool, LLC, 100 Pine Street
Property, LLC, Orange Street Tower, LLC,
Cornerstone Rental Pool, LLC, 2 South
Orange Avenue, LLC, Hope Commons, LLC,
Metro Gold, Inc.,

        Defendants,

Douglas A. Kelley,

        Receiver,

Gary Hansen,

        Receiver.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 08-5348 ADM/JSM

_____

Nagendra Setty, Esq., Fish & Richardson, PC, Atlanta, GA, and John C. Adkisson, Esq., Fish & Richardson, PC, Minneapolis, MN, on behalf of LG Electronics, Inc.

Michelle S. Rhyu, Esq., Cooley, Godward, Kronish, LLP, Palo Alto, CA, and Jane S. Welch, Esq., Morrison, Fenske & Sund, PA, Minnetonka, MN, on behalf of Zenith Electronics, LLC.

Daniel C. Beck, Esq., Winthrop & Weinstine, PA, Minneapolis, MN, on behalf of Acorn Capital Group, LLC.

Terrence J. Fleming, Esq., Lindquist & Vennum, PLLP, Minneapolis, MN, on behalf of Receiver Douglas A. Kelley.

Gregory G. Brooker, Esq., and Robyn A. Millenacker, Esq., Assistant United States Attorneys, Minneapolis, MN, on behalf of Plaintiff.

J.D. Jackson, Esq., Dorsey & Whitney, LLP, Minneapolis, MN, on behalf of Interlachen Harriet Investments Limited.

_____

## I. INTRODUCTION

On December 5, 2008, the undersigned United States District Judge heard oral argument on the Motions to Intervene by LG Electronics, Inc. ("LGE") [Docket No. 79]; Acorn Capital Group, LLC ("Acorn") [Docket No. 103]; and Zenith Electronics, LLC ("Zenith") [Docket No. 115]. LGE, Acorn, and Zenith each assert they are entitled to intervene in this case either as a matter of right or permissively for the limited purpose of requesting that the Court modify previously entered orders to clarify that the provisions staying litigation against the receivership do not apply to litigation against Polaroid Corporation ("Polaroid").[1] Alternatively, LGE, Acorn, and Zenith request that the Court lift the stay to allow them to proceed with their respective pending lawsuits against Polaroid in other jurisdictions. For the reasons set forth below, the motions are granted in part and denied in part.

---

[1] Receiver Douglas A. Kelley ("Receiver Kelley") and Plaintiff United States of America ("the United States") submitted a Motion to Amend and Clarify the Preliminary Injunction and Receivership Orders [Docket No. 91], which included a request that the Court clarify that the stay of litigation applies to Polaroid. As stated on the record during oral argument on December 5, 2008, when the stay of litigation was ordered on October 22, 2008, the Court intended that the stay apply to Polaroid, and the Second Amended Order for Entry of Preliminary Injunction, Appointment of Receiver, and Other Equitable Relief [Docket No. 127] ("the Second Amended Order") entered on December 8, 2008, clarifies that point. Therefore, the requests by LGE, Acorn, and Zenith to modify the stay of litigation are denied.

## II. BACKGROUND

This action was brought by the United States pursuant to the Fraud Injunction Statute, 18 U.S.C. § 1345, to freeze the assets of the named defendants, as well as any affiliates, subsidiaries, divisions, successors, or assigns that are owned 100% or controlled by them. The purpose of the action was to preserve the assets for restitution to victims of an alleged fraud scheme in the event that related criminal actions alleging this fraud scheme result in convictions and orders to pay restitution. The procedural history detailing the issuance of the preliminary injunction, which, among other things, established the receivership and ordered the stay of litigation against the receivership, is described in the Court's previous orders (particularly the Second Amended Order) and is incorporated by reference.

## III. DISCUSSION

**A.      Intervention**

Claiming both intervention as a matter of right and permissive intervention, LGE, Acorn, and Zenith have moved to intervene for the limited and sole purpose of requesting the Court to modify previous orders staying litigation to clarify that the stay of litigation against the receivership does not apply to Polaroid, or, in the alternative, to petition the court for relief from the stay as it applies to Polaroid. See Mem. in Supp. of LGE's Mot. to Intervene [Docket No. 81] at 5; Mem. in Supp. of Acorn's Mot. to Intervene [Docket No. 104] at 2; Mem. in Supp. of Zenith's Mot. to Intervene [Docket No. 112] at 1.

Under the Federal Rules of Civil Procedure, a movant may, upon timely application, intervene in an action as a matter of right if the movant establishes that (1) it has a cognizable interest in the subject matter of the litigation; (2) the interest may be impaired as a result of the

3

litigation; and (3) the interest is not adequately protected by the existing parties to the litigation. Fed. R. Civ. P. 24(a)(2); Mille Lacs Band of Indians v. Minnesota, 989 F.2d 994, 997 (8th Cir. 1993). Even if a movant is unable to meet these requirements, a district court has discretion to grant permissive intervention if a movant's claim or defense and the main action share a common question of law or fact. Fed. R. Civ. P. 24(b)(1)(B); Med. Liab. Mut. Ins. Co. v. Alan Curtis LLC, 485 F.3d 1006, 1009 (8th Cir. 2007). In exercising this discretion, the district court must consider whether permissive intervention will "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ P. 24(b)(3).

The motions by LGE, Acorn, and Zenith to intervene for the limited and sole purpose of seeking a modification or lifting of the stay of litigation against the receivership are not conventional motions to intervene. As such, the analytical framework established by Rule 24 does not lend itself well to resolving the issues presented by these motions. In practice, however, the inquiry required under Rule 24 "is a flexible one, and a practical analysis of the facts and circumstances of each case is appropriate." 6 James Wm. Moore, et al., Moore's Federal Practice § 24.03[1][b] (3d ed. 2008); see also Gene Shreve, Questioning Intervention of Right—Toward a Methodology of Decisionmaking, 74 Nw. U.L. Rev. 894, 922-23 (1980) ("The [factual] circumstances that serve as a basis for decision are so varied and random that [courts] would virtually need to create a new rule to describe each case."). Courts have likewise recognized that the resolution of a Rule 24 motion requires flexibility. See, e.g., Public Serv. Co. of New Hampshire v. Patch, 136 F.3d 197, 204 (1st Cir. 1998) ("The inherent imprecision of Rule 24['s] individual elements dictates that they be read not discretely, but together, and always in keeping with a commonsense view of the overall litigation.")(quotation omitted); Donnelly v.

Glickman, 159 F.3d 405, 409 (9th Cir. 1998) (explaining that in determining whether intervention is appropriate, courts are "guided primarily by practical and equitable considerations," and "generally interpret the requirements broadly in favor of intervention").

Rather than attempting to force the factual allegations presented by LGE's, Acorn's, and Zenith's motions into the analytical framework of Rule 24, a practical, commonsense application of Rule 24 suggests intervention for the limited purpose sought by LGE, Acorn, and Zenith is appropriate here.  See Inmates of the Rhode Island Training School v. Martinez, 465 F. Supp. 2d 131, 136-37 (D. R.I.. 2006) (declining to "engag[e] in a convoluted analysis in order to fit the facts of [the] Motion's square peg into the Rule's round hole," and relying instead on "the reasonable measure of latitude" afforded to the district court in the "practical application of Rule 24(a)(2)") (quotation omitted); see also 7C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1904 (3d ed. 2008) (commenting that Rule 24 is not "'a comprehensive inventory of the allowable instances for intervention'" and that considerations such as the public interest "may require that intervention be allowed wholly outside the rule") (quoting Missouri-Kansas Pipe Line Co. v. United States, 312 U.S. 502, 505 (1941)).  The heart of the dispute presented by the motions is not so much the question of intervention but rather the question of whether the stay of litigation applies to Polaroid and if so, whether the stay should be lifted to allow LGE, Acorn, and Zenith to proceed with their pending actions against Polaroid.  When the stay of litigation was granted on October 22, 2008, it was expressly contemplated, and the order provided, that individuals and entities who, like LGE, Acorn, and Zenith, have claims against the named defendants or their associated entities that are subject to the receivership would be allowed to petition the Court for relief from the stay.  See Am. Order for Entry of Prelim. Inj.,

Appointment of Receiver, and Other Equitable Relief [Docket No. 70] at 2.  Therefore, if, as the movants, Receiver Kelley, and the United States apparently have assumed, the granting of a motion to intervene for the limited purpose of requesting relief from the stay is a threshold event that must occur before a nonparty can actually request that the stay be lifted, it would betray the stated intent of the order staying litigation to now deny, under the guise of Rule 24, such nonparties the ability to move the Court for relief from the stay.

LGE's, Acorn's, and Zenith's motions to intervene for the limited purpose of requesting a lifting of the stay of litigation are granted.[2]

**B.     Lifting of the Stay**

As previously noted, the issue of whether the Court's previous orders should be modified or amended to clarify that Polaroid is not subject to the stay of litigation has been resolved by the Second Amended Order entered on December 8, 2006.  The remaining issue, therefore, is whether LGE, Acorn, and Zenith should be granted relief from the stay.

The Eighth Circuit has yet to articulate a standard to govern a district court's

---

[2] In responding to LGE's, Acorn's, and Zenith's motions to intervene, Receiver Kelley and the United States contend that granting the motions will "unduly delay and prejudice the parties' rights in this litigation, as it will indefinitely lead to a flood of motions by similarly-situated persons across the country that are affected by the receivership stay, and who claim to have an interest in the assets of the Petters' related entities," and, thus, the burden and expense of responding to such motions would defeat the purpose of the stay.  Joint Mem. in Opp'n to Acorn's Mot. to Intervene [Docket No. 109] at 11; Joint Mem. in Opp'n to LGE's Mot. to Intervene [Docket No. 100] at 10-11; Joint Mem. in Opp'n to Zenith's Mot. to Intervene [Docket No. 122] at 11.  Though not insensitive to this concern, the Court believes that, as was contemplated when the stay was ordered, considerations of fairness and due process require the presence of a mechanism to permit nonparties affected by the stay to petition the Court for relief. Furthermore, the Court's decision denying LGE's, Acorn's, and Zenith's requests to lift the stay on the ground that the requests are premature at this early stage of the receivership (see infra part III.B) should discourage a "flood of motions by similarly-situated persons."

consideration of whether to lift a stay of litigation imposed in connection with an action brought under the Fraud Injunction Act, 18 U.S.C. § 1345. Nonetheless, LGE, Acorn, Zenith, Receiver Kelley, and the United States all suggest that the standard laid out by the Ninth Circuit in S.E.C. v. Wencke, 622 F.2d 1363 (9th Cir. 1980) ("Wencke I") and S.E.C. v. Wencke, 742 F.2d 1230, 1231 (9th Cir. 1984) ("Wencke II") (collectively "Wencke") should apply to the Court's evaluation of the issue.[3]

Under the Wencke standard, a district court considers the following factors in deciding whether to grant relief from a stay of litigation against a receivership and the assets subject to the receiver's control: "(1) whether refusing to lift the stay genuinely preserves the status quo or whether the [movant] will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the [movant's] underlying claim." Wencke II, 742 F.2d at 1231. The consideration of these factors balances the interests of the receiver and the movant. On the one hand, the factors enable a district court to remain mindful that (1) "'[t]he interests of the Receiver are very broad and include not only protection of the receivership res, but also protection of defrauded investors and considerations of judicial economy'" and (2) the purpose of a stay of litigation against the receiver is to give the receiver "a chance to do the important job of marshaling and untangling a company's assets without being forced into court by every investor or claimant." Acorn Tech.,

---

[3] The Third Circuit has also adopted the Wencke standard. See United States v. Acorn Tech. Fund, L.P., 429 F.3d 438, 441 (3d Cir. 2005). And several district courts not bound by either Wencke or Acorn Tech. have relied on the Wencke standard in considering whether to lift a stay of litigation against a receivership estate. See S.E.C. v. Pittsford Capital Income Partners, L.L.C., No. 06 Civ 6353, 2007 WL 61096, at *2 (W.D.N.Y. Jan. 5, 2007); F.T.C. v. 3R Bancorp, No. 04 C 71772005 WL 497784, at *2 (N.D. Ill. Feb. 23, 2005); United States v. ESIC Capital, Inc., 675 F. Supp. 1462, 1462 (D. Md. 1987).

429 F.2d at 443 (quoting Wencke II, 742 F.2d at 1231). In this regard, "[a] district court should give appropriately *substantial* weight to the receiver's need to proceed unhindered by litigation, and the very real danger of litigation expenses diminishing the receivership estate." Id. (emphasis added). On the other hand, the factors ensure that there is "an appropriate escape valve, which allows potential litigants to petition the court for permission to sue" so that such individuals are "not denied a day in court during a lengthy stay." Id. The burden is on the movant to prove that the balance of the factors weighs in favor of lifting the stay. ESIC Capital, 675 F. Supp. at 1462-63.

For purposes of these motions, the Court will assume that LGE's, Acorn's, and Zenith's asserted claims are arguably colorable, and, for that reason, the third factor would support lifting the stay. See id. at 444 (explaining that under the third factor a district court should determine only whether a movant has asserted a "colorable" claim). Even having made such an assumption, the Court is nevertheless convinced that the balance weighs in favor of denying the motions to lift the stay. Refusing to lift the stay will preserve the status quo. Since Receiver Kelley was appointed on October 6, 2008, he has dutifully identified, managed, and preserved the assets for the *best interests of all* (creditors, claimants, and victims alike). In addition, the Court is not persuaded that LGE, Acorn, and Zenith will suffer "substantial injury" by not being permitted to immediately proceed with litigation against Polaroid.[4] Furthermore, when a movant

---

[4] Acorn argues that its position is unique, claiming that by virtue of its "secured interest in Polaroid's assets," it has Fifth Amendment property rights that are being deprived by the stay of litigation. Mem. in Supp. of Acorn's Mot. to Intervene at 12-16. The Court fails to see how Acorn's alleged Fifth Amendment property rights have been deprived. First, the stay merely temporarily delays Acorn's ability to exercise its rights as a secured creditor; it does not amount to a taking by stripping or depriving Acorn of its rights. Cf. In re Briggs Transp. Co., 780 F.2d 1339, 1342 (8th Cir. 1985) (holding that the bankruptcy code's automatic stay, which

seeks to lift a stay in the very early stages of a receivership, "even the most meritorious claims might fail to justify lifting a stay given the possible disruption of the receiver's duties." Id. at 443-44. During these early stages, "the receiver's need to organize and understand the entities under his control may weigh more heavily than the merits of [a movant's] claim." Wencke I, 622 F.2d at 1373-74. Information before the Court reveals a complex matrix of more than several dozen business entities and subsidiaries owned or controlled by the named defendants. And the receiver has had little more than two months to "begin to unravel these labyrinthine entanglements." 3R Bancorp, 2005 WL 497784, at *3. Granting relief from the stay at this time is therefore premature.

Without question, once the receivership estate is completed and a distribution is contemplated, there will come a time for those claiming an interest in assets subject to the receivership to make arguments regarding what preferences those interests should have in the distribution scheme. But first, the receiver must be given full opportunity to marshal the assets of the receivership estate and then preserve them. See S.E.C. v. Credit Bancorp, Ltd., 93 F. Supp. 2d 475, 477 (S.D.N.Y. 2000) (holding that the preservation of the receivership estate is paramount). The requests by LGE, Acorn, and Zenith for a lifting of the stay are denied.

As previously noted, the limited purpose for which LGE, Acorn, and Zenith sought to intervene was to request relief from the stay of litigation. Inasmuch as the preceding discussion provides the answer to those requests, there is no need for LGE, Acorn, and Zenith to continue to

---

temporarily delays a secured creditors right to enforce its lien on the collateral does not constitute a taking). Furthermore, procedural due process is satisfied because Acorn has been provided both notice of and an opportunity to be heard on the issue of whether the stay should be modified or lifted to allow Acorn to proceed with its pending action against Polaroid.

be involved in this action, and thus, they are hereby dismissed as intervening parties to this case.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. the motions by LGE, Acorn, and Zenith [Docket Nos. 79, 103, and 115] are **GRANTED** as to the request to intervene for the requested, limited purpose;

2. the motions by LGE, Acorn, and Zenith [Docket Nos. 79, 103, and 115] are **DENIED** as to the requests to clarify, modify, or lift the stay of litigation;

3. having denied the requests for relief from the stay of litigation, LGE, Acorn, and Zenith are terminated as intervening parties in this action; and

4. LGE's Motion for Leave to File Reply Brief in Support of Motion to Intervene [Docket No. 139] is **DENIED**.

        BY THE COURT:


        s/Ann D. Montgomery
        ANN D. MONTGOMERY
        U.S. DISTRICT JUDGE

Dated:  December 12, 2008.