**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

United States of America,

        Plaintiff,

  v.

Thomas Joseph Petters; Petters Company,
Inc., a/k/a PCI; Petters Group Worldwide, LLC;
Deanna Coleman, a/k/a Deanna Munson;
Robert White;
James Wehmhoff;
Larry Reynolds, and/or dba Nationwide International
Resources, aka NIR;
Michael Catain and/or dba Enchanted
Family Buying Company;
Frank E. Vennes, Jr., and/or dba Metro Gem
Finance, Metro Gem, Inc., Grace Offerings
of Florida, LLC, Metro Property Financing,
LLC, 38 E. Robinson, LLC, 55 E. Pine, LLC,
Orlando Rental Pool, LLC, 100 Pine Street
Property, LLC, Orange Street Tower, LLC,
Cornerstone Rental Pool, LLC, 2 South
Orange Avenue, LLC, Hope Commons, LLC,
Metro Gold, Inc.,

        Defendants,

Douglas A. Kelley,

        Receiver,

Gary Hansen,

        Receiver.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 08-5348 ADM/JSM

_____

Douglas A. Kelley, Esq., and Steven E. Wolter, Esq., Kelley & Wolter, P.A., Minneapolis, MN, on behalf of Receiver Douglas A. Kelley.

Frank J. Magill, Jr., Esq., and Gregory G. Brooker, Esq., United States Attorneys Office, Minneapolis, MN, on behalf of Plaintiff United States of America.

Jon M. Hopeman, Esq., Eric J. Riensche, Esq., and Jessica M. Marsh, Esq., Felhaber Larson, Fenlon & Vogt, P.A., Minneapolis, MN, and Paul C. Engh, Esq., Engh Law Office, Minneapolis, MN, on behalf of Defendant Thomas Joseph Petters.

_____

## I. INTRODUCTION

This matter is before the Court pursuant to Receiver Douglas A. Kelley's ("Receiver Kelley") request [Docket No.191] seeking an order authorizing him to make a second set of payments from frozen receivership assets for legal work performed on behalf of certain individual defendants named in the above captioned case.[1]

Plaintiff United States of America ("the Government") has filed a Response ("Government's Response") [Docket No. 212], stating its concern that receivership assets be preserved and maintained for restitution to victims. The United States does not commit itself to a position of how this goal is best accomplished. Rather, the Response outlines the possible options and the law supporting judicial discretion in the

---

[1] Receiver Kelley's request also sought authorization to make interim payments for legal services performed on behalf of the Receivership and for legal work done on behalf of certain current and former employees of Petters Company, Inc., P.C.I., Petters Group Worldwide, LLC, or their subsidiaries. These legal fees were not objected to and were authorized for payment pursuant to the Court's Orders dated March 16, 2009 [Docket No. 215] and March 20, 2009 [Docket No. 223].

disbursement of receivership funds.

The law firms representing Defendant Petters, Felhaber, Larson, Fenlon & Vogt, P.A. ("Felhaber") and the Engh Law Office ("Engh") (collectively, "Petters' counsel"), have filed a Reply [Docket No. 224 ] to the Government's Response. Petters' Counsel's Reply, March 23, 2009. Petters' counsel assert that they are entitled to full payment of fees and costs incurred in representing Defendant Petters and demand assurance that such payments will not later be subject to any "cap" or claw-back provisions under forfeiture law.

For the reasons set forth below, Receiver Kelley's request is granted in part and denied in part.

## II.  BACKGROUND

On October 3, 2008, the Court issued an ex parte Temporary Restraining Order ("TRO") [Docket No. 6] pursuant to 18 U.S.C. § 1345, based on a probable cause showing that, inter alia, (1) Defendants were engaged in a large scale Ponzi scheme involving more than $3 billion dollars, (2) Defendants were carrying out the fraud scheme in violation of federal mail, wire, and banking fraud laws, and (3) Defendants' assets would be dissipated and unavailable for restitution and/or forfeiture if not restrained. TRO ¶¶ 3-4, Oct. 3, 2008. Shortly thereafter, the parties stipulated to the entry of a preliminary injunction and appointment of receiver. Stip. for Entry of Prelim. Inj., Oct. 15, 2008 [Docket No. 54]; Stip. for Entry of Prelim. Inj., October 16, 2008 [Docket No. 58]. Two receiverships were ultimately established. The receivership at issue in this

current Motion ("the Receivership") encompasses the assets of all Defendants, see, Second Am. Order for Entry of Prelim. Inj., dated December 8, 2008 [Docket No. 127], with the exception of Defendant Frank E. Vennes, Jr. ("Defendant Vennes"), who has not been charged with a crime in this matter.  Receiver Kelley is the Court appointed Receiver for the Receivership at issue here.  Second Am. Order 13, ¶ A.   The second receivership encompasses the assets of Defendant Vennes and is not at issue in the current Motion.  Order for Entry of Prelim. Inj., October 6, 2008 [Docket No. 59].

In the weeks following the entry of the Preliminary Injunction and Order for Receivership, Defendants Deanna Coleman, Robert White, James Wehmhoff, Larry Reynolds, and Michael Catain (collectively, the "Individual Defendants") entered pleas of guilty to criminal charges in the related criminal cases.  Defendant Thomas Joseph Petters is contesting the charges and preparing for trial while detained in custody.  He is presumed to be innocent of the charges against him.

The stipulated terms of the Receivership require Receiver Kelley to apply to the Court for approval of any payment or debt incurred by the Defendants, including attorney fees.  Second Am. Order,16, ¶ 4.  Receiver Kelley's first motion for approval of attorney fees [Docket No. 134],  which included attorney fees for some of the Individual Defendants, was not contested, and the Court approved the fees in their entirety after an *in camera* review of the attorney invoices.  Order Approving Fees, December 23, 2008 [Docket Nos. 162, 165].

On  February 17, 2009, Receiver Kelley filed a motion for approval of a second

interim disbursement of attorney fees. Among the fees requested, and those that are the subject of this Order, are the attorney fees incurred in representing Defendants Petters, Wehmhoff, Reynolds and Catain. Id.

In its Response, the Government has expressed concern about depletion of receivership assets "if payments for attorney fees of defendants are continually authorized from frozen funds without any limitations and without regard to the availability of funds in an individual defendant's receivership account to pay for such fees." Government's Resp. 3. Also, the Government states its intent to seek forfeiture of Defendants' assets to obtain funds that will ultimately be available for victim restitution. Id.10-11. The Government waves several cautionary flags and advises the Court of its discretion to limit fees but, significantly, does *not* interpose an objection to the Receiver's Motion.

Taking strong umbrage to the Government's position, Petters' counsel, in a reply laden with emotion, urge the payment of Defendant Petters' attorney fees. They argue that: (1) such payment does not contradict the intended purpose of the injunction, (2) defense fees and costs should not be capped, (3) the concept of individual accounts within the receivership is fictitious, and (4) the Government should not be entitled to use forfeiture claw-back provisions to later disgorge fees that have been paid in representing Defendant Petters. Petters' Counsel's Reply at 6, 8, 9 and 12.

### III.  DISCUSSION

The purpose of freezing assets in a receivership under 18 USC §1345 is to preserve the status quo and prevent assets from being dissipated or diverted. SEC v. Capital

Counsellors, Inc., 512 F.2d 564 (2nd Cir. 1975); SEC v. Infinity Group Co., 212 F.3d 180, 197 (3rd Cir. 2000).

"The award of fees in a receivership is entrusted to the discretion of the district court." Commodities Futures Trading Comm'n. v. Am. Metals Exch. Corp., 991 F.2d 71, 79 (3rd Cir. 1993) (citing Capital Counsellors, 512 F.2d at 658). In determining whether restrained receivership funds should be used to pay attorney fees, the court must balance the "government's justification for restraining property with the defendant's legal interest in a full and fair hearing on the merits." United States v. Payment Processing Ctr., LLC, 439 F. Supp. 2d 435, 441 (E.D. Pa. 2006). While the Sixth Amendment does not entitle a defendant to use frozen funds to pay the costs of legal defense, a district court has the authority to release receivership funds in the interest of fundamental fairness if wrongdoing is not yet proven and the restrained property is a defendant's only means of securing counsel. See Payment Processing, 439 F. Supp. 2d at 440-441 (stating that the rationale in Caplin & Drysdale, Chartered v. United States, 491 U.S. 617 (1989) and United States v. Monsanto, 491 U.S. 600 (1989) "does not merit denying a defendant in a §1345 action a reasonable claim for fees from restrained property upon the appropriate showing before the §1345 complaint has been resolved on the merits"); Fed. Sav. & Loan Ins. Corp. v. Dixon, 835 F.2d 554, 565 ( 5th Cir. 1987), ("[T]he court cannot assume the wrongdoing before judgment in order to remove the defendants' ability to defend themselves."); Commodity Futures Trading Comm'n v. Noble Medals Int'l, Inc., 67 F.3d. 766, 775 (9th Cir. 1995) (district court must exercise discretion in awarding fee

applications when wrongdoing is not yet proven).

Here, the balance between the Government's goal of preserving Receivership assets for future restitution or forfeiture and the Individual Defendants' need to fund a defense weighs in favor of the release of a portion of the Receivership assets to pay reasonable attorney fees and costs. The reasonableness of requested fees is dependent on a number of factors, including whether the legal services were rendered before or after the entry of a guilty plea.

### A.      Defendants Reynolds, Wehmhoff, and Catain

Defendants Reynolds, Wehmhoff and Catain have entered pleas of guilty, and are no longer entitled to the presumption of innocence. The fees incurred for legal services after entry of their pleas has been and will continue to be carefully scrutinized. The Court recognizes that attorneys for the Defendants who have pleaded guilty must continue to advise their clients in their cooperation with both the criminal prosecutors and with Receiver Kelley in preserving the assets in the Receivership. It serves the public interest that counsel for these Defendants complete their representation and be reasonably compensated for their effort. Because all of Defendants' assets are frozen in the Receivership, Receivership funds are the only source with which to pay the attorney fees being requested.

Accordingly, the Court will release Receivership funds to pay the Individual Defendants' attorney fees requested, with some exceptions. The Court's *in camera* review of the invoices for legal services performed on behalf of Defendant Reynolds

reveals that a reduction of the fees requested by the Receiver is appropriate because some of those fees were excessive in light of the time required to counsel a defendant after the entry of a guilty plea.[2] Defendant Reynolds also retained counsel in California ("Reynolds' California counsel") who have sought payment by a previous Motion to Modify Payments for Defendant Reynolds' Living Expenses [Docket No. 177]. As the Court ordered in ruling on that Motion, "[r]equests for attorneys' fees are to be presented in the first instance to Receiver Kelley to be included in his Motion to Approve Payments of Receiver and Attorney Fees." Order Modifying Payments for Living Expenses, February 23, 2009, 4 ¶ 3, [Docket No. 203]. In addition to the procedural defect of Reynolds' California counsel's fee request, the request appears to duplicate services rendered by Defendant Reynolds' local counsel, who has been paid substantial fees for Defendant Reynolds' defense.

Defendant Wehmhoff's requested attorney fees have been adjusted slightly to reflect the Court's disallowing any payment for food expenses during the course of representation.

### B. Defendant Petters

Defendant Petters has plead not guilty, and has the benefit of the presumption of innocence. He faces potential penalties that are effectively life imprisonment if

---

[2]Billed entries deemed excessive include reviewing indictment and press coverage regarding another Individual Defendant after Defendant Reynolds has entered a plea of guilty, and billing full quarter hours for brief tasks such as leaving phone messages and providing file instructions to legal assistants. See Republican Party of Minn. v. White, 456 F.3d 912, 920 (8th Cir. 2006) (finding overbilling of fees where short phone calls were billed in quarter hour increments).


convicted. He is entitled to quality legal representation as he challenges the Government's case against him. The allegations of massive fraud necessitate a large scale document review, and the complexity of the case will require extensive time and expertise by defense counsel.

The threshold of proof required to enter the TRO and stipulated to in the Order for Preliminary Injunction does not rise to the level of proof necessary to adjudicate the criminal claims on their merits. See Payment Processing, 439 F. Supp. 2d at 440-441(stating that rationale in Monsanto "does not merit denying a defendant in a §1345 action a reasonable claim for fees from restrained property upon the appropriate showing before the claim has been resolved on the merits"); Noble Metals, 67 F.3d at 775 ("Discretion must be excercised by the district court in light of the fact that wrongdoing is not yet proved (sic) when the application for attorney fees is made."); SEC v. Duclaud Gonzalez de Castilla, 170 F. Supp. 2d 427, 430 (releasing attorney fees for defendants' defense because "inference on which asset freeze was granted may not be supported by the necessary quantum of proof").

Moreover, because Defendant Petters is incarcerated and all of his property is subject to the receivership, the Court finds he has no other means of funding a defense. Payment Processing, 439 F. Supp. 2d at 440 (defendant's ability to fund a defense is an important factor in determining whether equity favors releasing the assets). Therefore, in the interest of providing Defendant Petters with the opportunity for a full and fair hearing on the merits in this complex case, and in the absence of other sources available to

Defendant Petters to secure counsel, the Court will authorize payment for attorney fees reasonably and necessarily incurred in Defendant Petters' defense.

The attorney fees that will be compensated are not without limits, however, as Petters' counsel seem to urge. Any assurances the Government may or may not have made to Petters' counsel with regard to fee allowances are not dispositive, as the Court has always maintained the discretion to limit attorney fees and costs if they are unreasonable. The funding of Defendant Petters' defense is protected by two procedural safeguards that stand between Petters and the prosecution – the Receiver and the Court.[3] Both have and will continue to operate independently in reviewing the payments to defense counsel.

Defendant Petters' counsel must continue to submit their itemized fee statements to the Receiver, who will submit them to the Court for *in camera* review and approval. The Court will review each itemized invoice and determine whether the requested fees and expenses are reasonable and necessary. Here, the Court finds the fees and expenses requested by Petters' counsel to be reasonable and necessary with the exception of two expense items for payment to a private law firm for "professional legal services."[4] The fees approved to date have not been unreasonable in light of the complexity and

---

[3]The pertinent language of the Receivership Order states that "[t]he Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by defendants, including reasonable living expenses and/or attorneys fees." Second Am. Order 16, ¶ 4.

[4]The invoiced amounts for these expenses are $3,345.00 incurred October 31, 2008, and $200.00 incurred November 13, 2008, for a total of $3,545.00. No further explanation of the services has been provided to the Court despite the *in camera* protection.

magnitude of this case.

Regarding the Government's concern that Defendant Petters' individual receivership account lacks the funds necessary to pay the attorney fees, Receiver Kelley's most recent status report [Docket No. 201] indicates that several large assets are in the process of being liquidated,[5] and that the forthcoming funds will substantially replenish Defendant Petters' receivership account. Based on Receiver Kelley's Second Status Report, the Court finds that sufficient liquid assets will be available to satisfy the fees currently requested by Defendant Petters' counsel.

The Court cannot guarantee going forward that Receivership assets will always be sufficient to satisfy Defendant Petters' attorney fees. While Receiver Kelley may not be constrained to maintain strict individual accounts within the Receivership, clearly funds derived from the Individual Defendants who have already pled guilty may not be applied to the defense costs of Defendant Petters.

Similarly, funds belonging to the corporate entities which are also subject to this Receivership, namely Petters Company, Inc. and Petters Group Worldwide, LLC, and their affiliates (the "Petters entities") may not necessarily be available to pay Defendant Petters' attorney fees. With regard to the Petters entities currently in Chapter 11 bankruptcy, the Receiver cannot, short of the notice and approval required under the Bankruptcy Code and Rules, use the bankruptcy estates as "slush funds" to advance funds

---

[5]The Court approved a Stipulation Regarding Sale of Property [Docket No. 214] for the sale of the residence in Keystone, CO for $1,510,000. Receiver's Second Status Report 6 ¶ IV.A [Docket No. 201]. The Receiver has also received four offers for Defendant Petters' luxury automobiles, as well as an offer for Defendant Petters' 2004 Tiara 2900 Coronet boat. Id.

to Petters' counsel until Defendant Petters' other assets are liquidated.

Finally, the issue of whether the Government can exercise certain claw-back provisions under forfeiture statutes to require disgorgement of fees already paid to Petters' counsel is not ripe for determination, and the present Motion to approve attorney fees is not the proper vehicle for litigating that issue. Until such time as the Government attempts to exercise its forfeiture power, this Court will decline Petters' counsel's invitation to order the government to "list all assets it seeks to forfeit, right now." Petters' Counsel's Reply at 12.

Petters' counsel are frustrated and highly concerned about the lack of certainty of future payment for their legal services. Their effort to seek guarantees and clarity is understandable, but unattainable. Uncertainty of future payment for legal services is endemic to practicing law, particularly in the context of criminal defense. This case is not unique in requiring counsel to balance their time and expense with consideration to the fact it may not be reimbursed. This Court has now authorized payment of fees to Petters' counsel in excess of a half million dollars. Though a large fee, it is commensurate with the task at hand under the circumstances of this case. There will be no blank checks issued, but future fees will be authorized where reasonable and justified.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED** that:

1. Receiver Kelley is authorized to make the following payments:

13

| | |
|---|---|
| Felhaber, Larson, Fenlon & Vogt, P.A. | $329,365.20 |
| Colich & Associates | $76,800.00 |
| Greene Espel P.L.L.P. | $ 46,228.00 |
| Frederic Bruno & Associates | $ 13,000.00 |

2.Receiver Kelley is directed to seek reimbursement of the foregoing sums to the extent possible under applicable insurance policies, including directors and officers liability policies maintained by Petters Company Inc., Petters Group Worldwide, LLC or any other related entity.

BY THE COURT:


            s/Ann D. Montgomery            
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: March 25, 2009.