UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

  v.

Thomas Joseph Petters; Petters Company,
Inc., a/k/a PCI; Petters Group Worldwide, LLC;
Deanna Coleman, a/k/a Deanna Munson;
Robert White; James Wehmhoff; Larry
Reynolds and/or d/b/a Nationwide International
Resources, a/k/a NIR; Michael Catain and/or d/b/a
Enchanted Family Buying Company;
Frank E. Vennes, Jr., and/or d/b/a Metro Gem
Finance, Metro Gem, Inc., Grace Offerings
of Florida, LLC, Metro Property Financing,
LLC, 38 E. Robinson, LLC, 55 E. Pine, LLC,
Orlando Rental Pool, LLC, 100 Pine Street
Property, LLC, Orange Street Tower, LLC,
Cornerstone Rental Pool, LLC, 2 South
Orange Avenue, LLC, Hope Commons, LLC,
Metro Gold, Inc.,

        Defendants,

Douglas A. Kelley,

        Receiver,

Gary Hansen,

        Receiver,

Ritchie Special Credit Investments, Ltd.; Rhone
Holdings II, Ltd.; Yorkville Investments I, LLC;
Ritchie Capital Structure Arbitrage Trading, Ltd.;
Ritchie Capital Management, LLC

        Applicant Intervenors.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 08-5348 ADM/JSM

Timothy D. Kelly, Esq., and Jennifer S. Wilson, Esq., Kelly & Berens, P.A., Minneapolis, MN, on behalf of Applicant Intervenors.

Robyn A. Millenacker, Esq., David W. Fuller, Esq., and Gregory G. Brooker, Esq., Assistant United States Attorneys, Minneapolis, MN, on behalf of Plaintiff.

Terrence J. Fleming, Esq., Lindquist & Vennum, PLLP, Minneapolis, MN, on behalf of Receiver Douglas A. Kelley.

## I. INTRODUCTION

On April 17, 2009, the undersigned United States District Judge heard oral argument on the Motion to Intervene and Vacate Restraining Order as to Petters Group Worldwide, L.L.C. ("PGW") [Docket No. 225] of Petitioner Ritchie Special Credit Investments, Ltd.; Rhone Holdings II, Ltd.; Yorkville Investments, I, L.L.C.; Ritchie Capital Structure Arbitrage Trading, Ltd.; and Ritchie Capital Management, L.L.C. (hereinafter "Ritchie"). Ritchie seeks to intervene for the limited purpose of requesting the Court to vacate its receivership order and asset freeze (collectively, "the Injunction") from restraining PGW or its assets. Ritchie Mem. of Law [Docket No. 227] at 1-2, 7-14. Ritchie asserts that Plaintiff United States of America ("the Government") has not produced the necessary level of proof to enjoin the assets of PGW and its wholly-owned subsidiary Polaroid Corporation ("Polaroid"). Id. at 14-24, 26-28. Ritchie further contends that because the Injunction was improperly procured, all actions of the receiver relating to PGW and Polaroid, including the bankruptcy filings of those entities, should be declared void *ab initio*. Id. at 28-29.

The Government responds that Ritchie's request to intervene should be denied because

(1) Ritchie lacks standing to intervene, (2) the request is not timely, and (3) the related proceedings in the Bankruptcy Court provide an alternate forum for Ritchie to adequately represent its interests. Gov't. Mem. in Opp. at 17-24, Apr. 13, 2009 [Docket No. 239]. The Government further argues that if Ritchie is allowed to intervene, the request to vacate the Injunction as to PGW should be denied, because the Government has made a proper showing that the Injction and its scope are justified. Id. at 25-33. Counsel for Receiver Kelley presented oral argument essentially joining in the Government's position.

For the reasons set forth below, the Motion to Intervene is denied.

## II. BACKGROUND

A court-ordered receivership and asset freeze imposed under the Fraud Injunction Statute, 18 U.S.C. § 1345, is currently in place restraining the assets of the named defendants. The defendants are accused of orchestrating a massive Ponzi scheme that allegedly generated fraud proceeds in excess of three billion dollars. The purpose of the § 1345 action is to preserve the assets for restitution to victims of the alleged fraud scheme in the event that the defendants are found guilty of the related criminal charges.[1]

**A. The Temporary Restraining Order ("TRO") and Preliminary Injunction**

On October 2, 2008, the Government moved for a TRO [Docket No. 2] to freeze the assets of the above-named defendants. The TRO was supported by the affidavit of FBI Special Agent Eileen Rice, predicated on her investigation which included "the execution of numerous

---

[1] All of the named defendants with the exception of Defendant Frank E. Vennes, Jr. ("Vennes") have been criminally charged for their alleged participation in the fraudulent scheme. To date, pleas of guilty have been entered by each of the individual defendants with the exception of Thomas J. Petters ("Petters"). Petters maintains his innocence and is detained in custody awaiting trial.

search warrants for documents, records, and proceeds from illegal activities, and . . . the subsequent investigation and analysis of evidence seized pursuant to these warrants." Rice Aff., Oct. 2, 2008 [Docket No. 5] ¶ 2. Rice's affidavit outlined a scheme whereby Petters, along with employees of Petters Company, Inc. ("PCI") and other Petters entities, induced investors to provide financing to PCI based on fictitious documents prepared by the defendants. Id. ¶¶ 7-8. The documents purported to purchase merchandise for PCI, which PCI would then resell. Id. ¶¶ 8-10. In reality, no merchandise was purchased, and instead, "the money raised by PETTERS through PCI [was] used for his other business ventures and to support his extravagant lifestyle." Id. ¶ 9a.

The Court issued the TRO on October 3, 2008 [Docket No. 6]. Shortly thereafter, the Government and Petters entered into a Stipulation for Preliminary Injunction [Docket No. 11], agreeing to the establishment of a receivership and asset freeze over Petters' assets and the assets of any affiliates, subsidiaries, divisions, successors, or assigns that are owned 100% or controlled by him. Based on the stipulations and the evidence of record, the Court entered an Order for Preliminary Injunction. Order for Entry of Prelim. Inj., Oct. 6, 2008 [Docket No. 12]. In the days that followed, similar stipulations for preliminary injunction were reached between the Government and the other defendants [Docket Nos. 54, 58]. Pursuant to these stipulations and the evidentiary record, the Court broadened the Injunction to include the assets of all defendants. Order Amending Inj., Oct. 22, 2008 [Docket No. 70].

The enjoined assets are subject to a receivership ("the Receivership") directed by

Douglas A. Kelley, Esq. ("Receiver Kelley" or "Kelley"), the Court-appointed receiver.[2] The scope of the Receivership includes, inter alia, the corporate assets of PGW and PCI, as named defendants, as well as Polaroid, a wholly-owned subsidiary of PGW. Second Am. Order, Dec. 8, 2008 [Docket No. 127] at 4; Mem. Opinion and Order, Dec. 12, 2008 [Docket No. 143] at 2, n.1. The Injunction also imposes a stay of litigation against the named defendants and the Receivership assets. Second Am. Order at 19-20. In response to motions to intervene brought by third parties in November 2008 [Docket Nos. 79, 103, 115], the Court clarified that the Injunction and stay of litigation were intended to apply to Polaroid. Mem. Opinion and Order, Dec. 12, 2008 at 2, n.1.

### B. The Illinois Receivership

On October 7, 2008, Ritchie brought its first emergency motion to intervene, asking the Court to vacate its Order appointing Kelley as Receiver for PGW and PCI. Ritchie informed the Court that it had already obtained a receivership order and receiver for PCI and PGW from an Illinois state court on September 30, 2008 ("the Illinois Receivership"). First Ritchie Mot., Oct. 7, 2008 [Docket No. 14] at 3.

The Illinois Receivership was established in response to Ritchie's Illinois state court complaint filed against Petters, PGW and PCI, which alleged that Petters, PGW and PCI had defaulted on promissory notes held by Ritchie in an amount exceeding $220 million. Mem. in Support of First Emergency Mot. To Intervene [Docket No. 15], Ex. 7 (Illinois Complaint) ¶¶ 2,

---

[2] A separate receivership, with its own independent receiver, was created for the assets of defendant Vennes and any affiliates, subsidiaries, divisions, successors, or assigns in which Vennes has a controlling interest. [Docket No. 59]. That receivership is not the subject of the present motion.

4. The Illinois complaint further alleged that Petters, PGW and PCI fraudulently induced Ritchie to sign Note Purchase Agreements and extend the due dates of those Agreements by falsely representing that PCI maintained a successful, viable business purchasing and reselling merchandise. Id. at ¶ 22. Absent those representations, Ritchie would not have signed the Note Purchase Agreement and would not have purchased promissory notes from Petters, PGW and PCI in February 2008 and May 2008. Id. Similarly, Ritchie would not have agreed to extend the notes in the absence of Petters, PGW and PCI's false representations regarding PCI, and their failure to disclose "that PCI was involved in a 'Ponzi scheme' that used funds obtained from new investors to pay off prior creditors." Id. at ¶ 24. Ritchie described itself as "'last in' to what the participants in the fraud called a 'Ponzi scheme,' meaning that [Ritchie's] funds likely were used to pay prior creditors in hopes of perpetuating the scheme."[3] Id. at ¶ 23. The Illinois complaint sought a receivership for the assets of PGW and PCI because Petters had stepped down from his roles as "sole owner and ultimate 'leader'"of PGW and PCI as a result of the fraud investigation, and Ritchie thus feared that PGW and PCI's assets "were in imminent danger of corporate waste." First Ritchie Mot. at 3. The Illinois state court granted Ritchie's requested relief, placing the assets of PGW and PCI into a receivership and appointing William Procida as receiver. Id.

This Court found no merit or legal basis for Ritchie's First Emergency Motion seeking to intervene and enforce the terms of the Illinois Receivership, and the Motion was accordingly denied. Order Denying Ritchie Mot., Oct. 9, 2008 [Docket No. 41]. The following day, in response to this Court's denial of Ritchie's First Emergency Motion, the Illinois state court

---

[3] At oral argument on its second motion to intervene, Ritchie maintained that the majority of the funds loaned by Ritchie were to PGW, not PCI, and that PGW was not a participant in the alleged fraud. However, Ritchie's Illinois complaint unequivocally alleges otherwise.

terminated its Illinois Receivership Order. Illinois Order at ¶ 3, October 10, 2009 [Bankr. D. Minn. 08-bk-45257, Docket No. 132-2, Ex. C-4].

### C.  The PCI and PGW Bankruptcies

On October 11, 2008, Receiver Kelley filed for Chapter 11 Bankruptcy relief for PCI, PGW, and certain related Petters entities. In re Petters Co, Inc., 08-bk-45257 (and jointly administered cases), Bankr. Minn. Oct. 11, 2008, ("PCI Bankr.")[PCI Bankr. Docket No. 1]. Because PGW and PCI lacked the management personnel necessary to operate as a Chapter 11 Debtor-in-Possession ("DIP") under 11 U.S.C. § 1101(1), the U.S. Trustee applied to the Bankruptcy Court to appoint Receiver Kelley as the Chapter 11 trustee of PGW and PCI. Application for Appointment of Trustee, Dec. 24, 2008, [PCI Bankr. Docket No. 114]. Ritchie objected to Kelley's appointment as trustee, arguing that Kelley's role as a receiver charged with obtaining maximum recovery for fraud victims posed a conflict of interest with the role of a trustee charged with protecting creditors' interests. Ritchie Obj., Jan. 7, 2009, [PCI Bankr. Docket No. 117] at 2-3, 8-11. Ritchie further argued that Kelley's dual service as trustee for both PGW and PCI also presented a conflict due to the likelihood of cross running claims between the two bankruptcy estates. Id. at 3-4, 11-15. The Bankruptcy Court overruled Ritchie's objections, finding that no conflict presently existed and any future conflicts could be addressed if and when they arose. Order Overruling Obj., Feb. 26, 2009, [PCI Bankr. Docket No. 153] at 30-34. Accordingly, the Bankruptcy Court approved the U.S. Trustee's appointment of Kelley as Chapter 11 Trustee for both PGW and PCI. Id. at 34. Ritchie has appealed the Bankruptcy Court's ruling to this Court. Notices of Appeal and Election to Dist. Court, Mar. 9, 2009, [PCI Bankr. Docket Nos. 158-59].

Ritchie is also pursuing an additional avenue for appointing a trustee other than Kelley in the PGW bankruptcy case. Ritchie requested a Meeting of Creditors pursuant to 11 U.S.C. § 1104(b)(1) "for the purpose of electing one disinterested person to serve as trustee in the chapter 11 case of [PGW]." Notice of Meeting, Mar. 27, 2009, PCI Bankr.[Docket No. 186]. The meeting was held on April 22, 2009. The U.S. Trustee has not yet published the election results.

**D. The Polaroid Bankruptcy**

On December 18, 2008, Polaroid filed for Chapter 11 bankruptcy relief. In re Polaroid Corp., 08-bk-46617 (and jointly administered cases), Bankr. Minn. Dec. 12, 2009, ("Polaroid Bankr.") [Polaroid Bankr. Docket No.1]. Because Polaroid's executive management remained intact, CEO Mary Jeffries executed the bankruptcy petition,[4] and Polaroid became a Chapter 11 Debtor-in-Possession ("DIP").

Pursuant to its powers as a DIP, Polaroid filed an adversary proceeding against Ritchie in the bankruptcy case, seeking to avoid Ritchie's liens as fraudulent and preferential transfers. Polaroid v. Ritchie Capital Mgmt., Adv. No. 09-ap-04032 (Bankr. Minn. Feb. 12, 2009) [Docket No. 1][5]. In its answer, Ritchie contends its liens are valid and enforceable. Ritchie Answer, Mar. 11, 2009, Adv. No. 09-ap-04032 [Docket No. 8]. This adversary proceeding remains pending.

---

[4] The petition was accompanied by a statement from Receiver Kelley granting Jeffries the authority to file the bankruptcy petition. Id. Presumably, Polaroid decided this statement of authority was necessary given Polaroid's receivership status, but Jeffries, as CEO, would also have had the authority to file the petition in the absence of a receivership. See Boyce v. Chemical Plastics, Inc., 175 F.2d 839, 843 (8th Cir. 1949); Minn. Stat. Ann. § 302A.201.

[5] Polaroid has filed a similar lien avoidance action against Acorn Capital Group, LLC. See Polaroid v. Acorn Capital Group, Adv. No. 09-ap-04031 (Bankr. D. Minn. Feb. 12, 2009).

On January 28, 2009 Polaroid proceeded with its intent to pursue a liquidating Chapter 11 plan by seeking Bankruptcy Court approval of bidding procedures to be followed in a forthcoming auction of Polaroid's assets. Mot. to Approve Bidding Procedures, Jan. 28, 2009, [Polaroid Bankr. Docket No 71]. Over Ritchie's objection,[6] the Bankruptcy Court approved the bidding procedures on February 18, 2009. Order Approving Bidding Procedures, Feb. 18, 2009, [Polaroid Bankr. Docket No.118]. An auction was scheduled for March 31, 2009.[7] Id. at 7. After a series of continuances in the lively, lengthy and contentious auction process, an order for the sale of Polaroid was approved by the Bankruptcy Court on April 17, 2009. Order Authorizing Sale, Apr. 17, 2009, [Polaroid Bankr. Docket No. 332]. This order is currently on appeal. Notices of Appeal by Lithograph Legends, LLC and Acorn Capital Group, LLC, Apr. 20, 2009, [Polaroid Bankr. Docket Nos. 339, 349].

### III. DISCUSSION

**A.     Intervention**

Ritchie has moved to intervene as a matter of right for the limited purpose of requesting the Court to vacate the Injunction as to PGW. See Ritchie Mem. in Supp. of Second Ritchie Mot. [Docket No. 227] at 1, 7-10.[8]

Under the Federal Rules of Civil Procedure, a movant may, upon timely application,

---

[6] The objection did not concern the validity of Polaroid's bankruptcy filing contested here; rather, Ritchie objected to the liquidation of Polaroid, the DIP's refusal to recognize a "credit bid" as an acceptable bid under the auction procedures, and certain additional items. See Ritchie Obj., Feb. 13, 2009 [Polaroid Bankr. Docket No. 101].

[7] For timeline purposes, Ritchie filed the present motion more than a month after bidding procedures were approved, and about one week before the initially scheduled auction date.

[8] Ritchie does not seek permissive intervention under Fed. R. Civ. P. 24(b)(1).

intervene in an action as a matter of right if the movant establishes that (1) it has a cognizable interest in the subject matter of the litigation; (2) the interest may be impaired as a result of the litigation; and (3) the interest is not adequately protected by the existing parties to the litigation. Fed. R. Civ. P. 24(a)(2); Mille Lacs Band of Indians v. Minnesota, 989 F.2d 994, 997 (8th Cir. 1993). The movant bears the burden of demonstrating its right to intervene. 6 James Wm. Moore, et al., Moore's Federal Practice § 24.03[1][a] (3d ed. 2008). All criteria must be satisfied before a non-party can intervene as a matter of right. Id.

The timeliness of a motion to intervene "is a threshold factor that must be satisfied before the other factors should be considered." Hollywood Cmty Synagogue, Inc. v. City of Hollywood, Fla., 254 F. App'x. 769, 771 (11th Cir. 2007) (citing NAACP v. N.Y., 413 U.S. 345, 365 (1973)). Timeliness "is not just a function of counting days." United States v. Alcan Aluminum, Inc., 25 F.3d 1174, 1181 (3d Cir. 1994). Rather, timeliness depends on all of the circumstances of a case. NAACP, 413 U.S. at 366; Iowa State Univ. Research Found. v. Honeywell, Inc., 459 F.2d 447, 449 (8th Cir. 1972). The Eighth Circuit considers the following factors in determining whether a motion to intervene is timely: "how far the litigation had progressed at the time of the motion for intervention, the prospective intervenor's prior knowledge of the pending action, the reason for the delay in seeking intervention, and the likelihood of prejudice to the parties in the action." Minnesota Milk Producers Ass'n v. Glickman, 153 F.3d 632, 646 (8th Cir. 1998) (quoting Arrow v. Gambler's Supply, Inc., 55 F.3d 407, 409 (8th Cir. 1995)).

In the instant case, there has been substantial progression of litigation between the initiation of these proceedings and Ritchie's present motion to intervene and request the

unwinding of the Receiver's actions. The scope of the Injunction was reviewed and clarified in November during a hearing in which Ritchie did not participate. Since then, the litigation proceedings have been frequent and fervent. Challenges to the U.S. Trustee's appointment of a PGW bankruptcy trustee have been contentious and ongoing. Polaroid has filed for Chapter 11 bankruptcy and has begun lien avoidance proceedings. Polaroid and interested parties have also been immersed for the past several months in the mammoth task of preparing for and proceeding with the auction of Polaroid's assets.

Moreover, Ritchie's First Emergency Motion to Intervene shows knowledge of the Injunction since its inception. Ritchie did not question the validity of the Injunction at that time, nor did it raise its current concerns when the Court broadened and clarified the scope of the Injunction. Ritchie's knowledge of the proceedings is further evidenced by its full and active participation in the PGW and Polaroid bankruptcy cases.

Ritchie's delay in seeking intervention is also lacking justification. Ritchie cites changed circumstances as its reason for waiting over five months before challenging the validity of the Injunction. However, Ritchie does not identify any change in the quality or quantity of proof supporting the issuance of the Injunction. Rather, Ritchie complains of Polaroid's attempt to avoid Ritchie's liens in the bankruptcy case and certain actions by Receiver Kelley that Ritchie perceives as being adverse to its interest. The actions by Polaroid and Receiver Kelley have no bearing on the validity and scope of the Injunction[9] and do not justify Ritchie's belated challenge

---

[9] The Court views the Receiver's impartiality as an important matter, but not an issue that relates to the current motion challenging the validity of the Injunction. Ritchie's challenges to Kelley's disinterestedness, both as Receiver and Bankruptcy Trustee, are under consideration in an appeal to this Court, to be ruled upon in due course.

to the Injunction itself.

Finally, several entities and individuals will suffer prejudice if Ritchie is allowed to intervene at this juncture for the purpose requested. Much has transpired since the time the Injunction was established in early October. The Injunction has been revisited for clarification. Litigation has ensued and continues over the appointment of the PGW trustee. Polaroid has filed for bankruptcy and has engaged in a spirited and ongoing sale of its assets.[10] The numerous creditors involved in the PGW and Polaroid bankruptcy cases have invested substantial time and resources participating in those proceedings. Accordingly, Ritchie's motion to intervene is untimely and is denied.

Even if Ritchie's request to intervene had been timely, Ritchie is unable to satisfy the second requirement of intervention as a matter of right. Denial of Ritchie's motion to intervene does not impair or impede Ritchie's ability to protect its interest. Ritchie is not foreclosed from, and in fact *is*, fully asserting and protecting its interest in Bankruptcy Court. That forum provides Ritchie with ample opportunity to dispute Polaroid's attacks on its liens and raise affirmative defenses on its behalf, as well as the opportunity to appeal any adverse ruling.[11] Therefore, in addition to being untimely, Ritchie's motion to intervene as a matter of right does not satisfy all

---

[10] Not only has Ritchie been aware of the Injunction since October 2008, it has been aware of the Polaroid auction since at least January 28, 2009, when the hearing to approve bidding procedures was noticed. Nevertheless, Ritchie waited until March 23, 2009, to file the present "emergency" motion.

[11] Ritchie appears to argue that Receiver Kelley placed Polaroid into bankruptcy, which in turn impeded or impaired Ritchie's ability to protect its interests. However, Polaroid entered into bankruptcy as a result of CEO Mary Jeffries signing the petition. Thus, if the Injunction were vacated and Receiver Kelley's actions voided *ab initio*, as Ritchie requests, Polaroid would still be in bankruptcy and Ritchie would still be required to litigate its interests in that forum.

of the elements required under Fed. R. Civ. P. 24(a)(2), and the motion to intervene is denied.[12]

**B.     Validity of the Receivership**

The Eighth Circuit has not yet enunciated the evidentiary standard for issuing a § 1345 injunction,[13] and the denial of the present motion to intervene precludes this Court from addressing the issue directly.  However, the entry of the Injunction in this case was not based solely on the Stipulations by the defendants, but also upon a substantial showing that the Injunction and its scope were properly justified under § 1345.  In addition to the Stipulations, the Court relied on evidence of record directed to the magnitude and longevity of the alleged fraud scheme, the fact that the scheme was allegedly orchestrated by the executive management (including the "sole owner and ultimate 'leader'") of both PGW and PCI, and indications that the fraud proceeds were being used to support Petters' other entities.  The indictment passed down by the Grand Jury is also evidence of  PGW's probable involvement in the scheme, either as a co-

---

[12] Contrary to Ritchie's assertions, its motion to intervene is not similar to previous requests for intervention by LG Electronics, Inc.; Acorn Capital, LLC; and Zenith Electonics, LLC that were granted by this Court. See, Mem. Opinion and Order, Dec. 12, 2008 [Docket No. 143].  First, these requests to intervene were brought four months ago, prior to the bankruptcy filing by Polaroid and before inception of significant activity in both the PGW and Polaroid bankruptcy cases.  Furthermore, in the absence of the Polaroid bankruptcy, those entities had no alternate forum in which to assert their rights as secured creditors.  Denying those parties the opportunity to be heard would have impaired or impeded their ability to protect their interests.

[13] Courts are split on the standard of proof required for a § 1345 injunction.  Some courts require the government to make a probable cause showing that a predicate crime under § 1345 is being committed.  United States v. Payment Processing Center, LLC, 461 F. Supp. 2d 319, 323 (E.D. Pa. 2006); United States v. William Savran & Assoc., 755 F. Supp. 1165, 1184 (E.D.N.Y. 1991); United States v. Weingold, 844 F. Supp. 1560, 1573 (D.N.J. 1994).  Other courts require a preponderance of the evidence standard before a § 1345 injunction can issue.  United States v. Brown, 988 F.2d 658, 659-60 (6th Cir. 1993); United States v. Hoffman, 560 F. Supp. 2d 772, 777 (D. Minn. 2008); United States v. Barnes, 912 F. Supp. 1187, 1194 (N.D. Iowa 1996).

conspirator, a recipient of the fraudulent proceeds, or both.[14]  Indictment, Dec. 1, 2008, Criminal Case 08-cr-364 ("Petters Criminal") [Petters Criminal Docket No. 79] at 9, ¶ 20.  The Stipulations for Injunction and the proceedings in the criminal case, as well as the evidence of record in the receivership case, justify the inclusion of PGW in the scope of the Injunction.

---

[14] PGW has been charged with money laundering under 18 U.S.C. § 1956, which is a designated predicate crime for the issuance of an injunction under § 1345.  The Fraud Injunction statute reads in relevant part:

> If a person is alienating or disposing of property . . . obtained as a result of a banking law violation (as defined in section § 3322(d) of this title) . . .or property which is traceable to such violation, the Attorney General may commence a civil action in any federal court –
>
> (A) to enjoin such alienation or disposition of property; or
>
> (B) for a restraining order to–
>
> > (i) prohibit any person from withdrawing, transferring, removing, dissipating or disposing of any such property or property of equivalent value; and
> >
> > (ii) appoint a temporary receiver to administer such a restraining order.

18 U.S.C. § 1345(a)(2).  In turn, 3322(d) defines a "banking law definition" to include a violation of, or a conspiracy to violate § 1956.  18 U.S.C. § 3322(d)(1)(A).  Accordingly, money laundering under §1956 is included in the definition of a banking law violation, and money laundering is alleged against PGW in the criminal indictment.  See Indictment at 9, ¶ 20.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Ritchie's Second Emergency Motion to Intervene for the Purpose of Vacating the Preliminary Injunction as to PGW [Docket No. 225] is **DENIED.**

BY THE COURT:


　　　s/Ann D. Montgomery　　
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  April 29, 2009.