UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

          Plaintiff,

  v.

Thomas Joseph Petters; Petters Company,
Inc., a/k/a PCI; Petters Group Worldwide, LLC;
Deanna Coleman, a/k/a Deanna Munson;
Robert White; James Wehmhoff; Larry
Reynolds and/or d/b/a Nationwide International
Resources, a/k/a NIR; Michael Catain and/or d/b/a
Enchanted Family Buying Company;
Frank E. Vennes, Jr., and/or d/b/a Metro Gem
Finance, Metro Gem, Inc., Grace Offerings
of Florida, LLC, Metro Property Financing,
LLC, 38 E. Robinson, LLC, 55 E. Pine, LLC,
Orlando Rental Pool, LLC, 100 Pine Street
Property, LLC, Orange Street Tower, LLC,
Cornerstone Rental Pool, LLC, 2 South
Orange Avenue, LLC, Hope Commons, LLC,
Metro Gold, Inc.;

          Defendants,

Douglas A. Kelley,

          Receiver,

Gary Hansen,

          Receiver,

J.P. Morgan Chase Bank, N.A.; Chase
Equipment Finance, Inc.;

          Applicant Intervenors.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 08-5348 ADM/JSM

John R. McDonald, Esq., and Kevin M. Decker, Esq., Briggs and Morgan, P.A., Minneapolis, MN, on behalf of J.P. Morgan Chase Bank, N.A and Chase Equipment Finance, Inc.

Gregory G. Brooker, Esq., James S. Alexander, Esq., and Joseph T. Dixon, III, Esq., Assistant United States Attorneys, Minneapolis, MN, on behalf of Plaintiff.

Terrence J. Fleming, Esq., Lindquist & Vennum, PLLP, Minneapolis, MN, and Kevin M. Magnuson, Esq., Kelley and Wolter, P.A., Minneapolis, MN, on behalf of Receiver Douglas A. Kelley.

## I. INTRODUCTION

On May 29, 2009, the undersigned United States District Judge heard oral argument on the Motion to Intervene by J.P. Morgan Chase Bank, N.A and Chase Equipment Finance, Inc. (collectively "J.P. Morgan") [Docket No. 255]. J.P. Morgan seeks to intervene for the limited purpose of requesting relief from the Court's Order of December 8, 2008 [Docket No. 127], imposing a stay of litigation against receivership assets. J.P. Morgan claims a security interest in four J.P. Morgan accounts[1] ("the Accounts" or "the Collateral") of Defendant Thomas J. Petters ("Petters"). J.P. Morgan seeks permission to liquidate the Accounts and apply the proceeds to Petters' outstanding loan obligations.

Plaintiff United States of America ("the Government") opposes the motion. The Government contends the Accounts have been identified as forfeitable assets, and, as such, 21 U.S.C. § 853(k) bars J.P. Morgan from litigating its property interest in any forum other than the

---

[1] The accounts which are the subject of the present motion are J.P. Morgan account numbers Q17438005, A72735003, A81794009, and A56676009 and the proceeds thereof. J.P. Morgan's Mem. of Law in Supp. of Mot. to Intervene [Docket No. 257] at 3.

ancillary forfeiture proceeding to be held in the related criminal case (08-CR-364 RHK/AJB).

Douglas A. Kelley, Esq. ("Receiver Kelley" or "the Receiver"), the Court-appointed receiver, also opposes the motion. Receiver Kelley contends that lifting the stay of litigation now as to J.P. Morgan is premature because (1) the Accounts are subject to criminal forfeiture, (2) material fact questions exist regarding the validity of J.P. Morgan's claimed interest, and (3) resolving J.P. Morgan's disputed interest at this time will detract the Receiver from his duties of untangling the defendants' complex financial histories and marshaling the assets of the receivership estate. Receiver Kelley requests the Court to order J.P. Morgan to turn over the Accounts to him and comply with his discovery requests concerning J.P. Morgan's claimed security interest.

## II. BACKGROUND

This case was commenced by the Government pursuant to the Fraud Injunction Statute, 18 U.S.C. § 1345, to freeze the assets of the named defendants, as well as any affiliates, subsidiaries, divisions, successors, or assigns that are owned 100% or controlled by them. The defendants are accused of orchestrating a large-scale Ponzi scheme involving over three billion dollars. The objective of the injunction imposed under 18 U.S.C. § 1345 ("the § 1345 Injunction") is to preserve the assets for restitution and forfeiture if the related criminal actions alleging the fraud scheme result in conviction.

The enjoined assets are subject to a receivership ("the Receivership") directed by Receiver Kelley.[2] See Second Am. Order for Entry of Prelim. Inj., Appointment of Receiver,

---

[2] A separate receivership, with its own independent receiver, Gary Hansen, was created for the assets of defendant Vennes and any affiliates, subsidiaries, divisions, successors, or assigns in which Vennes has a controlling interest. Order for Entry of Prelim. Inj., Appointment

and Other Equitable Relief ("the Receivership Order"), Dec. 8, 2008 [Docket No. 127] at 13. The Receivership Order imposes a stay of litigation against the named defendants and the Receivership assets. Id. at 19-20. The stay of litigation specifically prohibits lien holders from attempting to foreclose on their collateral. Id. at 19.

On December 1, 2008, Petters and two of his corporate entities, Petters Group Worldwide ("PGW") and Petters Company, Inc. ("PCI") were indicted in a related criminal case on counts of mail fraud, wire fraud, conspiracy to commit mail and wire fraud, and money laundering conspiracy. See United States v. Thomas J. Petters, Petters Company, Inc., and Petters Group Worldwide, LLC, ("Petters Crim.") (08-CR-364 RHK/AJB) [Petters Crim. Docket No. 79]. The Indictment includes specific forfeiture counts seeking forfeiture under 18 U.S.C. §§ 981(a)(1), 982(a), and 28 U.S.C. § 2461(c) of property owned by Petters. Id. at ¶¶ 25-29. In the months following the Indictment, the Government filed three Bills of Particulars in the criminal case, each stating the Government's intent to seek forfeiture of Petters's, PCI's and PGW's property as a result of the alleged offenses. Bill of Particulars, Dec. 22, 2008 [Petters Crim. Docket No. 89]; Second Bill of Particulars ("Second Bill"), March 19, 2009 [Petters Crim. Docket No. 161]; Third Bill of Particulars ("Third Bill"), May 1, 2009 [Petters Crim. Docket No. 186]. The Second and Third Bills specifically list as forfeitable assets the Accounts at issue in this Motion. See Second Bill at 2-3; Third Bill at 2-3.

Petters is currently in federal custody awaiting trial, which is scheduled to begin in September 2009. Order Setting Trial Date, Apr. 17, 2009 [Petters Crim. Docket No. 179].

---

of Receiver, and Other Equitable Relief, Oct. 16, 2008 [Docket No. 59]. The receivership under Hansen's direction is not the subject of the present motion.

**III. DISCUSSION**

J.P. Morgan argues that its right to immediately foreclose on its security interest stems from the legal principle that a receiver takes receivership property subject to any liens and encumbrances, and a receiver may not augment the receivership estate with property which does not rightfully belong to it. J.P. Morgan's Mem. of Law in Supp. of Mot. at 9, 10-14 (citing East v. Crowdus, 302 F.2d 645, 650 (8th Cir. 1962); Citizens Banking Co. v. Monticello State Bank, 143 F.2d 261 (8th Cir. 1944)).

However, J.P. Morgan's argument fails to recognize at least two significant factual circumstances which distinguish this case from the general receivership principle and authority cited by J.P. Morgan. First, the Accounts at issue have been identified in the Government's Second and Third Bills of Particulars as potentially forfeitable. Thus, J.P. Morgan's claimed property right has been put into question by the Government's potentially superior interest under the statutory forfeiture scheme. Second, the Receiver's refusal to allow J.P. Morgan to foreclose on the Collateral is not an attempt to augment the Receivership estate with interests which may legitimately belong to third parties. Rather, the Receiver is merely invoking the stay of litigation to preserve the status quo and temporarily prevent J.P. Morgan from exercising its claimed property interests until the Receiver has had an opportunity to organize and clarify rightful ownership of the assets in the Receivership estate.

**A. Forfeiture and Pretrial Restraining Orders**

The first issue concerns whether the § 1345 Injunction should be modified to allow J.P. Morgan to foreclose on property that has been identified in the Second and Third Bills of Particulars as potentially forfeitable upon conviction. Generally, third parties seeking to assert an interest in property identified as forfeitable must wait until the ancillary proceeding following

5

the criminal trial. See 21 U.S.C. § 853(k) (prohibiting a third party from intervening in a criminal case or bringing an action against the United States to adjudicate its interest in property identified as forfeitable); 21 U.S.C. § 853(n) (outlining procedures for ancillary proceeding to determine third party interests in property subject to an order of forfeiture); see also United States v. Puig, 419 F.3d 700, 703 (8th Cir. 2005) (finding that 21 U.S.C. § 853(k) requires a third party claimant to utilize the ancillary proceeding when asserting an interest in property identified in an indictment as subject to forfeiture"); United States v. Totaro, 345 F.3d 989, 993-94 (8th Cir. 2003) (requiring a third party to utilize post-trial ancillary proceeding to claim an interest in forfeited property). This general rule has also been applied to assets restrained under 18 U.S.C. § 1345, as in the instant case, and identified as forfeitable. See United States v. Smith, No. 05-895, 2007 (D. Minn. Aug. 7, 2007) (denying judgment creditor's post-trial request for payment from receivership funds because claim must be filed in the ancillary proceeding).

An exception to the bar under 21 U.S.C. § 853(k) exists, however, where a restraining order has been placed on a defendant's assets prior to trial, and a third party claims an interest in property which is subject to the restraining order. See, e.g., United States v. Waterboro, 64 F.3d 752, 755-56 (1st Cir. 1995) ("We conclude that under § 853(e), third parties claiming an interest in restrained or potentially restrainable property may participat[e] in the associated restraining order proceedings.") (quotation marks omitted) (alteration in original); United States v. Siegal, 974 F. Supp. 55, 57 (D. Mass. 1997) (noting that "a court may elect to hold a hearing after the initial entry of the order, and to modify the restraining order or vacate an order which has been shown to be clearly improper") (quotation omitted). The cases recognizing this exception all involve pretrial restraining orders issued pursuant to 21 U.S.C. § 853(e) in the drug forfeiture statute or the parallel RICO provision in 18 U.S.C. § 1963(l). However, the reasoning and

analysis in those decisions are equally sound here,[3] where a pretrial injunction has been imposed to preserve assets,[4] and that injunction, like a restraining order, affects a third party's claimed property interests.

"While third parties may not challenge the ultimate forfeitability of assets seized under 21 U.S.C. § 853, they may ask the court to modify the restraint of their assets in proceedings related to the protective order under § 853(e)." United States v. Datwani, Crim. No. 00-851, 2009 WL 961123, *2 (D. Puerto Rico Apr. 8, 2009). See also United States v. Riley, 78 F.3d 367, 370 (8th Cir. 1996) (nullifying a pretrial restraining order where an indictment did not properly identify property as forfeitable). The legislative history of 21 U.S.C. § 853(k) clarifies that "[t]his provision is not intended to preclude a third party with an interest in property that is or may be subject to a restraining order from participating in a hearing regarding the order." S.Rep. No. 225, 98th Cong., 2d Sess. 204 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3389 n.42. Similarly, the legislative history of 21 U.S.C. § 853(e)(A)(1) notes that the court may

> modify the [restraining] order or vacate an order that was clearly improper (*e.g.*, where information presented at the hearing shows that the property restrained was not among the property named in the indictment). However, it is stressed that at such a hearing the court is not to entertain challenges to the validity of the indictment.

---

[3] The injunction was issued pursuant to 18 U.S.C. § 1345, which made it unnecessary for the Government to seek an order under 21 U.S.C. § 853(e). However, with the filing of the Indictment, a restraining order would have been authorized under 21 U.S.C. § 853(e)(1)(A), which allows for a restraining order "upon the filing of an indictment or information charging a violation . . . for which criminal forfeiture may be ordered . . . and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture."

[4] As with the current injunction, the legislature's purpose in providing for a restraining order under § 853(e) "is to preserve the status quo, i.e., to assure the availability of the property pending the disposition of the criminal case." S.Rep. No. 225, 98th Cong., 2d Sess. 204 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3387.

Id. at 3386.

Whether a pretrial restraining order on potentially forfeitable property should be modified turns on the due process concerns implicated when the delay between the seizure of property and the conclusion of the criminal trial threatens to deprive a third party of its due process right to have a "meaningful hearing at a meaningful time." United States v. Bissell, 866 F.2d 1343, 1353 (11th Cir. 1989). See also United States v. Holy Land, 493 F.3d 469, 475 (5th Cir. 2007) (noting that "[i]n some cases . . . due process will require that the district court . . . promptly hold a hearing at which the property owner can contest the restraining order, without waiting until trial to do so"). In determining whether due process requires a district court to hear a third party challenge to the restraining order, courts commonly invoke tests that balance the third party's interest in a pretrial adjudication with the government's interest in postponing the adjudication until the ancillary proceeding. See, e.g., Holy Land, 493 F.3d at 474-76 (applying three-part test from Mathews v. Eldridge, 424 U.S. 319 (1976));[5] United States v. Arboleda-Hurtado, 790 F. Supp. 1140, 1142 (S.D. Fla. 1992) (adopting four-part test from Barker v. Wingo, 407 U.S. 514 (1972)).[6] The Eighth Circuit has not yet adopted a particular test, but has recognized that "[p]reconviction restraints are extreme measures," and has allowed a third party to challenge a pretrial restraining order. United States v. Riley, 78 F.3d 367, 370 (8th Cir. 1996).

In a case very similar to this one, a post-indictment, pretrial protective order was issued

---

[5] The Eldridge test weighs the (1) private interest affected by restraint, (2) risk of erroneous deprivation of interest through procedures used, and (3) probable value of additional procedural safeguards. Holy Land, 493 F.3d at 475.

[6] The Barker test considers the (1) length of delay in criminal proceedings, (2) reason for delay, (3) property claimant's assertion of his right to a hearing, and (4) prejudice to claimant caused by the delay. Arboleda-Hurtado, 790 F. Supp. at 1142.

8

to freeze a number of financial accounts, including an account belonging to a third party. Arboleda-Hurtado, 790 F. Supp. at 1141. The third party requested the funds to be released from restraint. Id. The court recognized that "although the protective order [did] not definitively divest the ownership rights of the third party, it [did] remove those assets from the third party's immediate control which is a significant property interest." Id. at 1141-42. Accordingly, the court analyzed whether depriving the third party of this protected interest until the post-trial ancillary proceeding violated due process. Id. at 1142-44. The analysis considered the length of and reason for the delay between the seizure of the property and the hearing, the third party's assertion of its right to a hearing, and the prejudice to the third party.[7] Id. The court found that "a ten to eleven month delay between the seizure [of the account] and a hearing to adjudicate the validity of [the third party's] alleged interest in the property" was not an undue delay. Id. at 1142. Moreover, because the third party did not allege that the assets seized were outside the scope of the indictment, there was no showing that the initial seizure was improper. Id. at 1143. Thus, the third party lacked a valid reason for making a pretrial challenge to the restraining order. Id. at 1143. Finally, the court found that the prejudice suffered by the third party's temporary deprivation of access to the account funds was outweighed by the government's interest in obtaining pretrial restraining orders without having to prove the merits of the underlying criminal case and forfeiture counts. Id. at 1144. Accordingly, court denied the third party's request to release the funds, and the third party was required to await the ancillary proceeding to adjudicate its right to the funds. Id. at 1144-45.

Here, J.P. Morgan has been provided with a hearing and opportunity to challenge the

---

[7] These factors comprise the Barker test outlined supra at n.6.

Receivership Order. The Court finds that J.P. Morgan's delayed ability to access the Collateral does not violate due process under either the Eldridge or Barker test. The anticipated twelve-month delay from when the Accounts were restrained to when ancillary proceeding is expected to occur is not unreasonable and has not been prolonged by the Government. Additionally, J.P. Morgan does not allege that the Accounts were outside the scope of the Indictment, nor has it shown that it would be prejudiced by a delay until the ancillary proceeding before adjudicating its interest. The current restraint on the Accounts merely acts as a temporary delay, not a deprivation, of J.P. Morgan's ability to exercise its rights. Cf. In re Briggs Transp. Co., 780 F.2d 1339, 1342 (8th Cir. 1985) (holding that the bankruptcy code's automatic stay, which temporarily delays a secured creditors right to enforce its lien on the collateral does not constitute a taking). If the Accounts are ultimately included in an order for forfeiture, the ancillary proceeding provides J.P. Morgan with a "meaningful hearing at a meaningful time" to adjudicate its interest. Bissell, 866 F.2d at 1353.[8]

The Government's interest in an efficient and orderly prosecution is significant. The ancillary proceeding set forth in 21 U.S.C. § 853(n) protects the Government's ongoing criminal prosecution from being impeded by defending against third party claims on potentially

---

[8] J.P. Morgan also argues inequitable treatment with other secured creditors in this case who have been allowed to enforce their lien rights. However, in the few instances where encumbered receivership assets have been sold and the mortgages satisfied with the sale proceeds, the Receiver, Government, and defendant/property owner have all stipulated to the transaction. Such transactions do not compel the conclusion that J.P. Morgan must also be allowed to enforce its lien at this juncture. See SEC v. Universal Fin., 760 F. 2d 1034, 1038 (9th Cir. 1985) (per curiam) (denying lienholders' motion for relief from four-year-old stay despite receiver's stipulations with other third parties to release certain properties from the stay order). Here, the Receiver is not yet satisfied that J.P. Morgan's asserted interest is valid and has thus determined that allowing J.P. Morgan to enforce its claimed property right at this time would not be in the best interests of the Receivership—a situation very different from the alleged "favored" secured creditors.

forfeitable property. The balance of interests decidedly shifts to allow the Receivership Order to restrain the Accounts pending prosecution of the criminal case. The delay of J.P. Morgan's claimed right to foreclose on the Collateral does not violate due process.

**B. Augmenting Receivership Estate**

Contrary to J.P. Morgan's argument, Receiver Kelley is not seeking to augment the estate by refusing to recognize valid security interests. Rather, he is complying with the Receivership Order precluding creditors from enforcing "any claim, right or interest against . . . Defendants, including . . . enforcing any lien on any asset of Defendants." Receivership Order at 19. This stay of litigation preserves the status quo while Receiver Kelley continues to investigate the Receivership estate, marshal assets, and untangle the mass of transactions by the defendants. Mem. Opinion and Order, Dec. 12, 2008 [Docket No. 143] at 9. Following this phase of the Receivership, "there will come a time for those claiming an interest in assets subject to the [R]eceivership to make arguments regarding what preferences those interests should have in the distribution scheme." Id. Meanwhile, Receiver Kelley is not claiming that validly encumbered property passes to the Receivership in its entirety. Rather, he is utilizing the Receivership Order's stay of litigation to achieve the purpose for which it was intended.[9]

**C. Receiver's Request for Turnover and Discovery**

In addition to opposing J.P. Morgan's motion, Receiver Kelley requests that the Court order J.P. Morgan to turn over the Accounts to him and comply with his requests for discovery. Receiver Kelley's requested relief is not procedurally before the Court at this time. Such relief

---

[9] Because J.P. Morgan's motion to intervene is denied, the Court need not consider J.P. Morgan's request for relief from the stay, but notes the prematurity of such request in light of Receiver Kelley's continued need to investigate and account for the Receivership assets.

11

will be considered at the time an appropriate motion is filed.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that J.P. Morgan's Motion to Intervene [Docket No. 255] is **DENIED.**

BY THE COURT:


    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  June 23, 2009.