IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
Civil No. 08-5348 (ADM/JSM)

---

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| 1. THOMAS JOSEPH PETTERS; | ) |
| PETTERS COMPANY INC., | ) |
| PCI; PETTERS GROUP WORLDWIDE, LLC; | ) |
| 2. DEANNA COLEMAN aka DEANNA MUNSON; | ) |
| 3. ROBERT WHITE; | ) |
| 4. JAMES WEHMHOFF; | ) |
| 5. LARRY REYNOLDS dba | ) |
| NATIONWIDE INTERNATIONAL RESOURCES | ) |
| aka NIR; | ) |
| 6. MICHAEL CATAIN dba | ) |
| ENCHANTED FAMILY BUYING COMPANY; | ) |
| 7. FRANK E. VENNES JR. dba | ) |
| METRO GEM FINANCE | ) |
| METRO GEM INC., | ) |
| GRACE OFFERINGS OF FLORIDA LLC, | ) |
| METRO PROPERTY FINANCING, LLC, | ) |
| 38 E. ROBINSON, LLC, | ) |
| 55 E. PINE, LLC, | ) |
| ORLANDO RENTAL POOL, LLC, | ) |
| 100 PINE STREET PROPERTY, LLC, | ) |
| ORANGE STREET TOWER, LLC, | ) |
| CORNERSTONE RENTAL POOL, LLC, | ) |
| 2 SOUTH ORANGE AVENUE, LLC, | ) |
| HOPE COMMONS, LLC, | ) |
| METRO GOLD, INC., | ) |
| | ) |
| Defendants. | ) |

---

James A. Lodoen, Esq., and Sandra S. Smalley-Fleming, Esq., Lindquist & Vennum, P.L.L.P., Minneapolis, MN, on behalf of Receiver Douglas A. Kelley.

1

Michael A. Rosow, Esq., and Michael J. Stepan, Esq., Winthrop & Weinstine, P.A., Minneapolis, MN, on behalf of Asset Based Resource Group, L.L.C., as successor servicer to Acorn Capital Group, L.L.C.

Thomas Lallier, Esq., Foley & Mansfield, P.L.L.P., Minneapolis, MN, and John I. Karesh, Esq., Vedder Price, P.C., New York, NY, on behalf of C.I.T. Leasing Corporation.

James A. Rubenstein, Esq., Moss & Barnett, P.A., Minneapolis, MN, on behalf of Petters Aircraft Leasing, L.L.C.

## ORDER APPROVING THE FORECLOSURE AGREEMENT

This matter came before the Court on the Motion [Docket No. 388] by Douglas A. Kelley, in his capacity as Court Appointed Receiver in this action (the "Receiver") to approve the terms and conditions of that certain Foreclosure Agreement dated June 12, 2009 (the "Foreclosure Agreement") by and among C.I.T. Leasing Corporation ("CIT"), the Receiver and Petters Aircraft Leasing, LLC ("PAL").

Asset Based Resource Group, L.L.C., as successor servicer to Acorn Capital Group, L.L.C. ("Acorn") has filed an Objection [Docket No. 422] urging, inter alia, that (1) the motion was not timely served, (2) the Receiver has not properly marketed the aircraft, and (3) CIT should not be entitled to "pre-payment penalties"[1] totaling over $9 million. Acorn requests the Court to invoke its equitable power to deny payment of those charges if the Foreclosure Agreement is approved.

Counsel for CIT and PAL each argued in support of the Motion.

Based upon all of the files and records herein and the briefs and oral arguments of all counsel, the Court grants the Motion.

---

[1] CIT characterizes these charges as "make whole" payments included in the lease agreement to put it in the same position it would have been in had the lease agreement not been prematurely terminated.

**FINDINGS OF FACT**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

2. This Motion relates to two Boeing 737-800 Aircraft with manufacturer's serial number 29635 (FAA registration N810SY) and manufacturer's serial number 29660 (FAA registration N811SY) (each an "Aircraft" and collectively, the "Aircraft").

3. CIT leased the Aircraft to PAL pursuant to: (a) Amended and Restated Aircraft Finance Lease Agreement dated as of July 1, 2007 as regards the Aircraft with registration N810SY and (b) Aircraft Finance Lease Agreement dated as of August 13, 2007 as regards the Aircraft with registration N811SY (collectively, the "Finance Leases").

4. Thereafter, PAL subleased the Aircraft to MN Airlines d/b/a Sun Country Airlines ("Sun Country") pursuant to (i) Aircraft Lease Agreement N810SY dated as of July 19, 2007, as amended and supplemented from time to time, and (ii) Aircraft Lease Agreement N811SY dated as of August 13, 2007, as amended and supplemented from time to time, each between PAL as sublessor and Sun Country as sublessee (collectively, the "Subleases").

5. Pursuant to the Finance Leases, title to the Aircraft is held in the name of PAL and CIT has a duly perfected first mortgage and security interest in the Aircraft, the Subleases and all rights, powers and privileges of PAL thereunder, and all other property, rights and privileges described in the Finance Leases (the "Collateral").

6. On October 6, 2008, Sun Country filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code. By letter dated April 20, 2009, amended on April 28, 2009 and on May 29, 2009, Sun Country served notice of its rejection of the Subleases

effective May 30, 2009, pursuant to Section 365(a) of the Bankruptcy code. The rejection was subsequently extended and is effective as of June 1, 2009, subject to the Bankruptcy Court's approval.

7. For approximately 10 months PAL attempted to sell the Aircraft to generate the funds necessary to repay CIT.

8. As a result of Sun Country's failure to pay rent that is due and owing under the Subleases, PAL has failed to pay rent that is due and owing under the Finance Leases.

9. After Sun Country rejected the Subleases someone needed to assume control of the Aircraft, and to pay for insurance, storage and maintenance for the Aircraft. PAL was not in the position to do this. The Aircraft need to be insured and inducted into a manufacturer-approved storage and maintenance program under which routine maintenance and inspections are performed on the Aircraft while in storage. Under the Finance Leases, it is PAL's obligation to properly maintain the Aircraft. If this maintenance and these inspections are not timely and properly performed, the Aircraft may lose their airworthy status, and additional, potentially significant maintenance costs may be incurred to rectify such deficiencies and lack of proper maintenance and storage could have a negative impact on the market value of the Aircraft. The costs of insuring, maintaining and storing the Aircraft are substantial. PAL has indicated that it is without sufficient funds to pay for such insurance, storage and maintenance. This risk increases with the passage of time.

10. As a result of Sun Country's bankruptcy case, the rejection of the Subleases by Sun Country, the failure of Sun Country to pay rent due and owing under the Subleases, and the failure of PAL to pay Rent due and owing under the Finance Leases, Events of

Default have occurred and currently exist under the Finance Leases. PAL and CIT have agreed to proceed with a strict foreclosure of the Collateral pursuant to Section 9-620 of the UCC in full satisfaction of any and all obligations of PAL arising under or pursuant to the Finance Leases in accordance with the provisions of the Foreclosure Agreement.

11. Further, as a result of PAL's inability to sell the Aircraft and the mounting costs to PAL of maintaining the status quo, the Receiver has consented to the Foreclosure Agreement which, by its terms, is subject to an order of this Court. By the Motion, the Receiver sought approval of this Court to consummate the transactions contemplated by the Foreclosure Agreement.

12. The Foreclosure Agreement, among other things, provides that CIT shall accept and PAL shall consent to such acceptance of the Aircraft in full satisfaction of any and all obligations of PAL arising under or pursuant to the Finance Leases in accordance with the provisions of the Foreclosure Agreement.

13. Additionally, CIT will release all claims against PAL arising out of the Aircraft, and will assign any and all of its claims against Sun Country arising out of the Aircraft to PAL, with the exception of certain "Excluded Payments" set forth in the Foreclosure Agreement including the Rent Arrears and Security Deposit as defined therein.

14. In consideration for PAL's consent to the acceptance of the foreclosure on the security interest by CIT and the entry into the Foreclosure Agreement, CIT has agreed to pay PAL the amount of $1,500,000 per Aircraft (the "Foreclosure Fee").

15. In order to administer the return of the Aircraft, PAL appointed CIT as its agent to take such action including such action set forth in Schedule II of the letter of agreement (the "Letter Agreement") between PAL and CIT.

16. Any and all Obligations as defined in the Finance Leases, and any other obligations associated with or arising out of the return of the Aircraft as discussed in Paragraph 9 above and the Letter Agreement will be deemed satisfied and released on the Foreclosure Date, except for the agreement regarding Sun Country Invoice No. 6-01 that is specifically set out in the Foreclosure Agreement.

17. Prior to entering into the Foreclosure Agreement, PAL made significant efforts to market the Aircraft. PAL engaged in sale discussions with numerous prospective buyers, but was unable to procure a buyer that was both reliable and willing to offer a reasonable price for the Aircraft.

18. If PAL were to continue efforts to market the Aircraft rather than enter into the Foreclosure Agreement, significant costs would accrue and the ability to realize any equity from the sale of the Aircraft would be speculative. The current payoff amount is on average approximately $33,400,000 per Aircraft. The payoff amounts and holding costs through December 31, 2009 would be almost $34,500,000 per Aircraft. Additional attempts to market the Aircraft would also result in significant brokerage and legal costs.

19. Given the extreme volatility and the current softness of the aircraft market, the $1,500,000 per Aircraft and other consideration that PAL will receive as a result of the Foreclosure Agreement is a favorable result, and the Foreclosure Agreement is in the best interest of the receivership.

20. There is (i) good, sufficient, and sound business purpose and justification; and (ii) compelling circumstances to warrant the Receiver to enter into the Foreclosure Agreement and consummate the transactions contemplated thereby pursuant to the Foreclosure Agreement. PAL would incur substantial operating losses; (a) PAL does not

have sufficient financing to continue its operations on a stand-alone basis; (b) the value of PAL is placed at risk by current financial condition; and (c) PAL and its advisors diligently and in good faith, marketed the Aircraft to secure the highest and best offer.

21. The Foreclosure Agreement was negotiated, proposed and entered into by the Receiver, PAL and CIT without collusion, in good faith, and after arms-length and lengthy bargaining between the parties.

22. The terms and conditions of the Foreclosure Agreement represent the highest or otherwise best available offer for the Aircraft and will provide a recovery for the Receivership creditors that is in all probability equal to or greater than what would be provided by any other practical available alternative and constitutes reasonably equivalent value and fair consideration.

23. The Foreclosure Agreement must be approved and consummated promptly to preserve the value of the Aircraft.

24. Adequate notice of the proposed the Motion, this Order and the hearing have been given under the circumstances, which include a quickly approaching closing date and rapidly accumulating costs for Aircraft maintenance and storage.

25. A reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to all interested parties, persons and entities.

26. The Receiver and PAL have full corporate power and authority to execute the Foreclosure Agreement and all other documents contemplated thereby or such other related agreements as CIT deems reasonably necessary or appropriate to effectuate any of the transactions contemplated thereby. No consents or approvals, other than this Order and those as may be expressly provided for in the Foreclosure Agreement are required to

consummate such transactions. Upon the strict foreclosure under Minn Stat § 336. 9-620, 9-621 and 9-622, the transfer of the Aircraft to CIT shall be a legal, valid and effective transfer of the Aircraft, and will vest CIT with all right, title and interest in and to the Aircraft, free and clear of all liens, claims and encumberances.

**NOW, THEREFORE, IT IS HEREBY ORDERED**, as follows:

1. The relief requested in the Motion [Docket No. 388] is GRANTED and approved in all respects. All objections to the Motion are hereby overruled on the merits and deemed denied.

2. The Foreclosure Agreement is hereby approved in all respects including the strict foreclosure contemplated thereby and the waiver of the Receiver set forth in Section 15(b) thereof and the disclaimer of the Receiver set out in Section 4(e) thereof. The Receiver, PAL, and CIT are authorized and directed to perform their respective obligations and to become bound to the provisions contained in the Foreclosure Agreement, and CIT is permitted to consummate the strict foreclosure contemplated therein and to enforce its rights with respect to the Security Deposit and the Rent Arrears as defined therein and as described in the supporting Affidavit of Mark L. Ebanks, sworn to on June 19, 2009. CIT shall have the benefit of all of the provisions contained in the Foreclosure Agreement, notwithstanding any provision of the prior Order of this Court dated December 8, 2008 [Docket No. 127] to the contrary.

3. The parties are authorized to take all actions necessary to comply with and perform their respective obligations under the Foreclosure Agreement including the execution and delivery of and performance under such other documents and agreements not inconsistent with the terms thereof as may be necessary or convenient to consummate the transactions contemplated therein.

4. Effective upon the completion of the strict foreclosure, all parties and/or entities asserting liens, claims or encumbrances against the Aircraft are hereby permanently enjoined and precluded from, with respect to liens, claims or encumbrances: (a) asserting,

commencing, or continuing in any manner any action against CIT (or any of its subsidiaries or affiliates) or any director, officer, agent, representative or employee of CIT (collectively, the "Protected Parties"), or against any Protected Party's assets or property; (b) taking any action to enforce, attach, collect or recover, by any manner or means or any judgment, award, decree or order against the Protected Parties relating in any way to the Aircraft; and (iii) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due to the Protected Parties.

5. PAL's appointment of CIT as its agent to administer the return of the Aircraft and to take such action including such action set forth in Schedule II of the Letter Agreement between PAL and CIT is ratified and approved nunc pro tunc as of June 12, 2009.

6. Notwithstanding any other provision of this Order, this Order shall not affect in any manner any defense or counterclaim which Sun Country may have in connection with the Subleases or any claims related thereto, provided, however, that Sun Country shall assert no liens or other interest in the Aircraft.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: June 26, 2009.