UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

    Plaintiff,

 v.

Thomas Joseph Petters; Petters Company,
Inc., a/k/a PCI; Petters Group Worldwide, LLC;
Deanna Coleman, a/k/a Deanna Munson;
Robert White;
James Wehmhoff;
Larry Reynolds, and/or dba Nationwide International
Resources, aka NIR;
Michael Catain and/or dba Enchanted
Family Buying Company;
Frank E. Vennes, Jr., and/or dba Metro Gem
Finance, Metro Gem, Inc., Grace Offerings
of Florida, LLC, Metro Property Financing,
LLC, 38 E. Robinson, LLC, 55 E. Pine, LLC,
Orlando Rental Pool, LLC, 100 Pine Street
Property, LLC, Orange Street Tower, LLC,
Cornerstone Rental Pool, LLC, 2 South
Orange Avenue, LLC, Hope Commons, LLC,
Metro Gold, Inc.,

    Defendants,

Douglas A. Kelley,

    Receiver,

Gary Hansen,

    Receiver.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 08-5348 ADM/JSM

Douglas A. Kelley, Esq., and Steven E. Wolter, Esq., Kelley & Wolter, P.A., Minneapolis, MN, on behalf of Receiver Douglas A. Kelley.

Timothy Kelly, Esq., Kelly & Berens, P.A., Minneapolis, MN, on behalf of Ritchie Special Credit Investments, Ltd., Rhone Holdings II. Ltd., Yorkville Investment I, L.L.C., Ritchie Capital Structure Arbitrage Trading, Ltd., and Ritchie Capital Management L.L.C.

Michael A. Rosow, Esq., Winthrop & Weinstine, P.A., Minneapolis, MN, on behalf of Asset Based Resource Group, L.L.C., as successor servicer to Acorn Capital Group, L.L.C.

Gregory G. Brooker, Esq., and Joseph T. Dixon III, Esq., United States Attorneys Office, Minneapolis, MN, on behalf of Plaintiff United States of America.

## I.  INTRODUCTION

This matter is before the Court pursuant to Receiver Douglas A. Kelley's ("Receiver Kelley") eleven motions [Docket Nos. 331, 335, 339, 343, 347, 351, 355, 359, 363, 367, 371] for an order authorizing him to make interim payments from receivership assets for professional and legal work performed on behalf of the receivership estate and certain individual defendants named in the above-captioned case.

Asset Based Resource Group, L.L.C., successor servicer to Acorn Capital Group, L.L.C. ("Acorn") has filed an Omnibus Objection [Docket No. 380] to the Receiver's Motions, alleging (1) Receiver Kelley has not sufficiently delineated the fees and costs attributable to each particular defendant, (2) the billing records underlying the fee petitions are not publicly disclosed and thus leave creditors unable to determine whether the fees and expenses were actual, reasonable, and necessary, and (3) inadequate notice was given prior to the hearing on the fee petitions.

Ritchie Special Credit Investments, Ltd., Rhone Holdings II. Ltd., Yorkville Investment I, L.L.C., Ritchie Capital Structure Arbitrage Trading, Ltd., and Ritchie Capital Management L.L.C. (collectively "Ritchie") has also filed an Objection [Docket No. 376], arguing that Ritchie is entitled to view the itemized statements underlying the fee petitions to determine whether the services were reasonable, necessary, and beneficial to the receivership. Ritchie further urges that fee petitions be submitted more contemporaneously to when the services are rendered.

Plaintiff United States of America ("the Government") has filed a Response [Docket No. 379], restating its previously expressed concern that receivership assets be preserved and maintained for restitution to victims.[1] At the hearing, the Government supported Receiver Kelley's retention of professionals to help him unwind fraudulent businesses, preserve legitimate businesses, ferret out new assets, and claw back improper transactions.

## II. BACKGROUND

A receivership ("the Receivership") was established in October 2008 pursuant to the Anti-Fraud Injunction Act of 18 U.S.C. § 1345 to protect the victims of an alleged massive fraud scheme. The Receivership encompasses the assets of the named Defendants and the entities 100% owned or controlled by them, with the exception of Defendant Frank E. Vennes, Jr. ("Defendant Vennes") and the entities wholly owned or controlled by him.[2] The scope and terms of the Receivership are set forth in the Court's Order of December 8, 2008 ("the Receivership

---

[1] The Government first raised this concern in a Response [Docket No. 212] to an earlier fee petition [Docket No. 191] involving attorney fees for certain individual defendants. In that Response the United States did not commit itself to a position, but instead outlined the possible options and the law supporting judicial discretion in the disbursement of receivership funds.

[2] A separate receivership (the "Vennes Receivership") has been established for the assets of Defendant Vennes, who has not been criminally charged in this matter, and the entities 100% owned or controlled by him. See Court's Order for Entry of Prelim. Inj., Oct. 16, 2008 [Docket No. 59]. The present Motions do not involve the Vennes Receivership.

Order"). See Second Am. Order for Prelim. Inj., Appointment of Receiver, and Other Equitable Relief [Docket No. 127].

The Defendants are accused of orchestrating a Ponzi scheme involving over three billion dollars. Individual defendants Deanna Coleman, Robert White ("Defendant White"), James Wehmhoff ("Defendant Wehmhoff"), Larry Reynolds and Michael Catain ("Defendant Catain") have entered pleas of guilty to criminal charges in the related criminal cases. Defendant Thomas Joseph Petters ("Defendant Petters") is contesting the charges and is detained in custody.

In addition to the present requests for compensation, the Receiver has previously submitted fee applications on behalf of himself, his counsel, and counsel for certain Defendants in December, February, and April [Docket Nos. 152, 191, and 251]. The protocol for each fee application to date has been (1) the Receiver's review of itemized statements showing the fees and costs incurred in representing the Receivership or Defendants, (2) the Receiver's motion requesting Court approval of fees and costs the Receiver has found to be reasonable and necessary, (3) the Court's independent, *in camera* review[3] of the itemized statements, (4) a public hearing on the fee applications, and (5) Court approval of fees and costs found to be reasonable and necessary in representing the Receivership or Defendants.

### III. DISCUSSION

The Court will continue to properly review itemized billing statements *in camera*. In analyzing the itemized statements, the Court will exercise its discretion in approving fees and costs which are reasonable and necessary to assist the Receiver with his duties or provide legal representation to the Defendants. The procedural requirements for future fee petitions will be

---

[3] Due to the ongoing related criminal cases against the individual and corporate Defendants, the Court has required itemized invoices for professional services to be submitted *in camera* to safeguard the attorney-client privilege and Defendants' Fifth amendment rights.

supplemented to ensure that fee petitions are submitted in a more timely and contemporaneous fashion.

### A. *In Camera* Review

Ritchie and Acorn's request to require that the billing records supporting the fee petitions be redacted and publicly disclosed is neither practical nor necessary. A district court has the discretion to require *in camera* review of fee petitions in receivership cases to protect and preserve the attorney-client privilege. Fed. Sav. and Loan Ins. Corp. v. Ferm, 909 F.2d 372, 374-75 (9th Cir. 1990). See also Minnesota Supply Co. v. Raymond Corp., 472 F.3d 524, 545 n.14 (8th Cir. 2006) (refraining from deciding the moot issue of whether the district court's *in camera* review of attorney invoices was proper, but "remind[ing] parties that the District Court has substantial discretion in awarding fees and costs.").

The related criminal proceedings against the Defendants justifies the Court's *in camera* review of all itemized billing statements supporting the fee petitions. Requiring public disclosure of redacted billing statements would not only be burdensome given the complexity of the case, but would also create the risk of inadvertently disclosing confidential and protected information. Additionally, the Court's established procedures for approving fee petitions in this case temper the concern that Receivership assets will be depleted by unnecessary or unreasonable fees. Both the Receiver and the Court independently scrutinize the billing statements and deduct unreasonable or unnecessary fees before fees are approved, and each fee petition publicly discloses the hours billed, the hourly rate of the professional providing the services, and the total amount being charged to each individual or corporate receivership estate. Neither Acorn nor Ritchie has identified any legal precedent for requiring their requested level of

supplemented to ensure that fee petitions are submitted in a more timely and contemporaneous fashion.

### A. *In Camera* Review

Ritchie and Acorn's request to require that the billing records supporting the fee petitions be redacted and publicly disclosed is neither practical nor necessary. A district court has the discretion to require *in camera* review of fee petitions in receivership cases to protect and preserve the attorney-client privilege. Fed. Sav. and Loan Ins. Corp. v. Ferm, 909 F.2d 372, 374-75 (9th Cir. 1990). See also Minnesota Supply Co. v. Raymond Corp., 472 F.3d 524, 545 n.14 (8th Cir. 2006) (refraining from deciding the moot issue of whether the district court's *in camera* review of attorney invoices was proper, but "remind[ing] parties that the District Court has substantial discretion in awarding fees and costs.").

The related criminal proceedings against the Defendants justifies the Court's *in camera* review of all itemized billing statements supporting the fee petitions. Requiring public disclosure of redacted billing statements would not only be burdensome given the complexity of the case, but would also create the risk of inadvertently disclosing confidential and protected information. Additionally, the Court's established procedures for approving fee petitions in this case temper the concern that Receivership assets will be depleted by unnecessary or unreasonable fees. Both the Receiver and the Court independently scrutinize the billing statements and deduct unreasonable or unnecessary fees before fees are approved, and each fee petition publicly discloses the hours billed, the hourly rate of the professional providing the services, and the total amount being charged to each individual or corporate receivership estate. Neither Acorn nor Ritchie has identified any legal precedent for requiring their requested level of

disclosure in this 18 U.S.C. § 1345 context. Indeed, the Government has referred to the Court's required level of disclosure in this case as "unprecedented transparency."

The risks involved in disclosing the itemized invoices, as well as the safeguards to protect against payment of unreasonable fees, justify the Court's exercise of discretion to review the itemized billing statements *in camera*.

### B. Reasonable Fees

Consistent with the previous fee requests, the Court will approve fees which are actual, reasonable, necessary, and allowed under the Receivership Order.[4] "Attorney's fees are within the broad discretion of the district court." Haing v. Lee, 415 F.3d 822, 825 (8th Cir. 2005). "The starting point in determining attorney['s] fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." Id. (quoting Fish v. St. Cloud State Univ., 295 F.3d 849, 851 (8th Cir. 2002)). District courts may rely on their own experience and knowledge of prevailing market rates to determine reasonable hourly rates. Haing, 415 F.3d at 825. The Court has applied the lodestar analysis and other factors discussed below in determining the reasonableness of the fees requested.

#### 1. Receiver and Receiver's Professionals

"It is so well established that allowances to a receiver and his counsel are largely in the discretion of the court exercising control over them, that it is unnecessary to review at length the authorities on the subject." Trustees Corp. v. Kansas City M. & O. Ry. Co., 26 F.2d 876, 880 (8th Cir. 1928). "The compensation is usually determined according to the circumstances of the

---

[4] The Receivership Order entitles the Receiver, his counsel, and his accountants to reasonable compensation from Receivership funds for services rendered and costs incurred in carrying out the Receiver's duties, Receivership Order at 17-18. Similarly, Defendants' counsel are entitled to reasonable attorney fees for legal services rendered to Defendants. Id. at 16.

particular case, and corresponds with the degree of responsibility and business ability required in the management of the affairs entrusted to him, and the perplexity and difficulty involved in that management." Id., at 881 (quoting Stuart v. Boulware, 10 S.Ct. 242, 244 (1890)). Factors considered in determining reasonable compensation for a receiver's attorney include the attorney's ability and experience, the amount involved, the time necessary to accomplish legal tasks, the difficulty and intricacy of the legal issues involved, the results attained, and the amount charged by attorneys of equal standing and ability. Federal Oil Mktg. Corp. v. Cravens, 46 F.2d 938, 940 (8th Cir. 1931).

The Court finds that Receiver Kelley's fees and costs are reasonable and necessary. The requested hourly rates are within the prevailing market range, and the time expended is reasonable in light of the complexity of the Receivership assets and entities and the myriad of tasks needing to be handled expeditiously under difficult circumstances. Receiver Kelley's fee petition is approved in the amount requested.

The itemized billing statements of the accounting professionals engaged to assist Receiver Kelley demonstrate that those services were also reasonable and necessary. While some of the hourly rates are high and the total fees are substantial, the rates charged are commensurate with prevailing market rates, and the work performed was proportional to the size and complexity of the case. The fee petitions for Tonya Rosso, FTI Consulting, Inc., Pricewaterhouse Coopers Corporate Advisory and Restructuring, LLC, and Pricewaterhouse Coopers, LLP are thus approved in the amount requested.

The itemized billing records for Receiver Kelley's counsel, Lindquist & Vennum, P.L.L.P., reflect entries for services rendered to Douglas A. Kelley in his capacity as trustee for

the bankruptcy estate of Petters Company, Inc. ("PCI") and other Receivership entities in bankruptcy whose bankruptcy cases are being jointly administered with the PCI bankruptcy case.[5] From the outset, the Court and Receiver have been mindful that the assets of those bankruptcy estates may not be depleted without regard to the procedures imposed by bankruptcy law, and that professional fees and costs incurred by Kelley in his capacity as trustee for the bankruptcy estates are subject to the approval process outlined in the Bankruptcy Code and Rules. Accordingly, the fees and costs relating to the bankruptcy estates will be deducted from the current fee petition. The Court has identified the bankruptcy related time entries and expenses on Exhibit A to this Order. The Court makes no finding as to the reasonableness of those fees and costs, and counsel for the Receiver may, without prejudice, request payment in bankruptcy court pursuant to the Bankruptcy Code and Rules governing compensation of professional persons. The Court further finds the non-bankruptcy services performed by Receiver Kelley's counsel, Lindquist & Vennum, P.L.L.P. to be actual, reasonable and necessary, and will authorize payment of the non-bankruptcy fees and expenses.

### 2. Defendant Petters

Defendant Petters awaits his criminal trial and is presumed innocent. The Court will continue to authorize the reasonable necessary fees incurred in Defendant Petters' defense "in the interest of providing Defendant Petters with a full and fair hearing on the merits of this complex case, and in the absence of other sources available to Defendant Petters to secure counsel." Mem. Op. and Order, March 25, 2009 [Docket No. 229] at 10. The Court has

---

[5] Those entities are Petters Group Worldwide, Thousand Lakes, PC Funding, PAC Funding, MGC Finance, Palm Beach Finance Holdings, Edge One, SPF Funding and PL Ltd. The itemized statements did not contain billing entries for Polaroid Corporation, an entity currently in Chapter 11 bankruptcy and subject to the Receivership Order.

thoroughly analyzed the itemized statements of Defendant Petters' counsel and finds the fees and costs incurred to be reasonable and necessary. Therefore, the Court will approve the fee petitions of Defendant Petters' counsel, Felhaber, Larson, Fenlon & Vogt, P.A. and Paul Engh, for the full amount requested.

### 3. Defendants Wehmhoff, White, and Catain

Defendants Wehmhoff, White, and Catain have entered pleas of guilty. As the Court has previously noted, Defendants who have pleaded guilty "are no longer entitled to the presumption of innocence. The fees incurred for legal services after entry of their pleas has been and will continue to be carefully scrutinized." Mem. Op. and Order, March 25, 2009 at 7. Such scrutiny is required to protect "already frozen assets from possible excessive dissipation due to unreasonable attorneys' fees. It ensures compliance with the preliminary injunction's requirement that otherwise frozen funds be used solely for fees which are 'reasonable.'" Ferm, 909 F.2d at 374. See also, Commodities Futures Trading Comm'n. v. Morse, 762 F.2d 60, 63 (8th Cir. 1985) (reasoning that where a receivership estate lacks sufficient funds to pay claims of defrauded customers, it would be inequitable to further deplete the funds to pay the attorneys retained by defendant); FTC v. World Wide Factors, Ltd., 882 F.2d 344, 347 (9th Cir. 1989) (noting that courts "regularly have frozen assets and denied attorney fees or limited the amount for attorney fees.").

The Court's scrutiny of the itemized invoices for legal services provided to defendants Wehmhoff, White, and Catain indicates that a reduction in fees is necessary. Counsel representing Defendant Wehmhoff has already been paid over $100,000 for a client who pleaded guilty in December. While the Court recognizes that Defendant Wehmhoff continues to require

9

legal representation concerning his probation, sentencing, and cooperation with the Receiver, the Court finds the request for an additional $61,341 to be excessive. The nature and extent of the work performed entitles his counsel, Greene Espel P.L.L.P., to a reasonable fee of $45,000.

Counsel for Defendant White, Joseph S. Friedberg, Chartered, has not provided sufficiently detailed statements for the Court to make a determination as to whether the services charged were reasonable or necessary, and whether such services should have been charged at a lower rate considering the level of expertise required for the services. Counsel has received a substantial fee for services performed in 2008. Accordingly, the invoice provided by counsel for Defendant White will be reduced to $9,000.

Defendant Catain's representation during the period of this billing did include court proceedings. However, the fees requested by counsel for Defendant Catain, Colich and Associates, will also be reduced. All services were billed at $400 per hour in quarterly hour increments. Some of the tasks performed did not require the level of knowledge or expertise justifying a $400 per hour bill rate. For example, preparing medical authorization releases and obtaining the client's signature on the release, preparing doctor appointments, and phone calls to the client's son's college regarding tuition all appear to be tasks which can be completed by less qualified staff charging a lower hourly rate. Additionally, phone calls were billed in quarterly hour increments instead of tenths of an hour. See Republican Party of Minn. v. White, 456 F.3d 912, 920 (8th Cir. 2006) (finding overbilling of fees where phone calls were billed in quarter hour increments). While the Court recognizes that a smaller law firm may have a more difficult time delegating tasks to other personnel, some of the billed services could have been carried out by someone other than an attorney charging $400 per hour. Alternatively, counsel should charge

10

a lower hourly rate when performing tasks which do not require the expertise of a licensed attorney.  In light of these considerations, the invoice submitted by counsel for Defendant Catain will be reduced to $25,000.

### C. Procedure for Future Fee Applications

The Court concurs with the concerns raised by Ritchie and others that fee petitions be brought more contemporaneously to when services are rendered.  The Court has supplemented the fee application procedures as follows to address timeliness and notice concerns: (1) Fee petitions shall continue to include billing summaries specifying the name, hourly rate, and time expended by each individual providing services to the Receivership, (2) Receiver Kelley shall submit fee petitions every sixty days in conjunction with the Receiver's Status Report, (3) fee petitions submitted more frequently than the sixty-day interval shall be noticed at least one calendar week prior to the hearing date and must be accompanied by an affidavit by the Receiver stating the balance of funds available in the individual Receivership account being charged with the fee petition,[6] and (4) Receiver Kelley shall continue to submit for the Court's *in camera* review itemized billing statements supporting the fee petitions.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED** that:

1. Receiver Kelley's Motions to make interim fee payments for Kelley & Wolter, P.A. [Docket No. 331]; Pricewaterhouse Coopers, L.L.P. [Docket No. 339]; Pricewaterhouse Coopers Corporate Advisory and Restructuring, L.L.C. [Docket No. 343]; FTI Consulting, Inc. [Docket

---

[6] At the Court's request, Receiver Kelley supplemented the present motions with an Affidavit [Docket No. 383] specifying the balance of available funds in each individual Receivership account.

No. 347]; Tonya Rosso [Docket No. 351]; Felhaber, Larson, Fenlon & Vogt, P.A. [Docket No. 355]; and Paul Engh [Docket No. 359] are **GRANTED**;

2. Receiver Kelley's Motions to make interim fee payments for Lindquist & Vennum, P.L.L.P. [Docket No. 335]; Greene Espel P.L.L.P. [Docket No. 363]; Colich & Associates [Docket No. 367]; and Joseph S. Friedberg, Chartered [Docket No. 371] are **GRANTED IN PART** and **DENIED IN PART**.

3. Receiver Kelley is authorized to make the following payments:

| | |
|---|---|
| Kelley & Wolter, P.A. | $318,035.70 |
| Tonya Rosso | $11,406.44 |
| FTI Consulting, Inc. | $336,262.83 |
| Pricewaterhouse Coopers Corporate Advisory and Restructuring, L.L.C. | $92,496.24 |
| Pricewaterhouse Coopers, L.L.P. | $247,068.28 |
| Lindquist & Vennum, P.L.L.P. | $349,070.89 |
| Felhaber, Larson, Fenlon & Vogt, P.A. | $180,321.09 |
| Paul Engh | $23,920.00 |
| Colich & Associates | $25,000.00 |
| Greene Espel P.L.L.P. | $45,000.00 |
| Joseph S. Friedberg, Chartered | $9,000.00 |

2. Receiver Kelley is directed to seek reimbursement of the foregoing sums to the extent possible under applicable insurance policies, including directors and officers liability policies maintained by Petters Company Inc., Petters Group Worldwide, LLC or any other related entity.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: June 30, 2009.

**EXHIBIT A**
**DEDUCTIONS FOR SERVICES RENDERED TO BANKRUPTCY ESTATES**

| DATE | TIME KEEPER INITIALS | HOURLY RATE | TIME EXPENDED | TOTAL CHARGES |
|---|---|---|---|---|
| 12/3/08 | DU<br>JL<br>JS | $450<br>$390<br>$180 | 1.0<br>5.0<br>3.3 | $450<br>$1950<br>$594 |
| 12/4/08 | DU<br>JL<br>JS | $450<br>$390<br>$180 | .5<br>2.0<br>10.0 | $225<br>$780<br>$1800 |
| 12/5/08 | RM<br>GR<br>JS | $400<br>$145<br>$180 | 1.75<br>1.5<br>6.7 | $700<br>$217.50<br>$1206 |
| 12/6/08 | JS | $180 | 8.6 | $1548 |
| 12/7/08 | JL<br>JS | $390<br>$180 | 1.75<br>8.7 | $682.50<br>$1566 |
| 12/8/08 | JL | $390 | 7.1 | $2769 |
| 12/9/08 | JL<br>JS | $390<br>$180 | 9.8<br>3.2 | $3822<br>$576 |
| 12/10/08 | JL | $390 | 6.4 | $2496 |
| 12/11/08 | TF<br>JL<br>JS | $410<br>$390<br>$180 | .5<br>4.7<br>3.2 | $205<br>$1833<br>$576 |
| 12/12/08 | JL<br>JS | $390<br>$180 | .5<br>3.1 | $195<br>$558 |
| 12/15/08 | DU<br>JL<br>JS | $450<br>$390<br>$180 | 5.0<br>1.0<br>3.1 | $2250<br>$390<br>$558 |
| 12/16/08 | DU<br>JL<br>JS | $450<br>$390<br>$180 | 2.0<br>7.75<br>4.25 | $900<br>$3022.50<br>$765 |
| 12/18/08 | JS | $180 | 3.5 | $630 |
| 12/19/08 | JS | $180 | 4.7 | $846 |
| 12/22/08 | AB | $180 | 1.0 | $180 |
| 12/23/08 | DU<br>AB | $450<br>$180 | 1.5<br>3.7 | $675<br>$666 |
| 12/28/08 | GS | $360 | .25 | $90 |
| 12/29/08 | JL | $390 | .4 | $156 |
| 12/30/08 | SS<br>AB | $300<br>$180 | .6<br>5.0 | $180<br>$900 |
| 12/31/08 | GS<br>AB | $360<br>$180 | .25<br>5.75 | $90<br>$1035 |

Total Fees: $38,082.50
Expenses: Deposition fees of bankruptcy proceedings: $387.50
Total deductions: $38,470.00