United States of America,

        Plaintiff,

  v.

**MEMORANDUM OPINION AND ORDER**
Civil No. 08-5348 ADM/JSM

Thomas Joseph Petters; Petters Company,
Inc., a/k/a PCI; Petters Group Worldwide, LLC;
Deanna Coleman, a/k/a Deanna Munson;
Robert White;
James Wehmhoff;
Larry Reynolds, and/or dba Nationwide International
Resources, aka NIR;
Michael Catain and/or dba Enchanted
Family Buying Company;
Frank E. Vennes, Jr., and/or dba Metro Gem
Finance, Metro Gem, Inc., Grace Offerings
of Florida, LLC, Metro Property Financing,
LLC, 38 E. Robinson, LLC, 55 E. Pine, LLC,
Orlando Rental Pool, LLC, 100 Pine Street
Property, LLC, Orange Street Tower, LLC,
Cornerstone Rental Pool, LLC, 2 South
Orange Avenue, LLC, Hope Commons, LLC,
Metro Gold, Inc.,

        Defendants,

Douglas A. Kelley,

        Receiver,

Gary Hansen,

        Receiver.

---

Steven E. Wolter, Esq., and Douglas A. Kelley, Esq., Kelley & Wolter, P.A., Minneapolis, MN, on behalf of Receiver Douglas A. Kelley.

Jennifer Wilson, Esq., Kelly & Berens, P.A., Minneapolis, MN, on behalf of Ritchie Special Credit Investments, Ltd., Rhone Holdings II. Ltd., Yorkville Investment I, L.L.C., Ritchie Capital Structure Arbitrage Trading, Ltd., and Ritchie Capital Management L.L.C.

Michael A. Rosow, Esq., Winthrop & Weinstine, P.A., Minneapolis, MN, on behalf of Asset Based Resource Group, L.L.C., as successor servicer to Acorn Capital Group, L.L.C.

Assistant United States Attorneys David Fuller, Gregory G. Brooker and Ana Voss, Minneapolis, MN, on behalf of Plaintiff United States of America.

_____

## I. INTRODUCTION

This matter is before the Court on Receiver Douglas A. Kelley's ("Receiver Kelley") four motions [Docket Nos. 469, 473, 477, 481] for authorization to make interim payments from receivership assets for professional and legal services rendered to the receivership estate ("the Receivership") and Defendant Thomas Joseph Petters ("Defendant Petters").

Asset Based Resource Group, L.L.C., successor servicer to Acorn Capital Group, L.L.C. ("Acorn") has filed an Omnibus Objection [Docket No. 487] to the Receiver's Motions, alleging that the fee applications do not provide sufficient information for Acorn to determine whether its interest in the corporate Receivership accounts is adequately protected. Specifically, Acorn argues that (1) Receiver Kelley's affidavit [Document No. 471] in support of Kelley & Wolter, P.A.'s fees and costs does not sufficiently delineate which corporate Receivership entities incurred the fees and expenses, and fails to specify which funds will be used to pay the corporate Receivership entities' fees and expenses; (2) the fee request for Receiver Kelley's counsel, Lindquist & Vennum, PLLP ("Lindquist & Vennum"), does not delineate the fees and costs attributable to each individual Receivership defendant; and (3) Receiver Kelley does not bind himself to pay individual and corporate Receivership expenses from the corresponding individual and corporate Receivership account.

Ritchie Special Credit Investments, Ltd., Rhone Holdings II. Ltd., Yorkville Investment I, L.L.C., Ritchie Capital Structure Arbitrage Trading, Ltd., and Ritchie Capital Management

L.L.C. (collectively "Ritchie") has also filed an Objection [Docket No. 499]. Ritchie's Objection incorporates its previous objections [Docket Nos. 263, 376] by reference, joins Acorn's objections, and notes Ritchie's continued objection to the delay from when services are performed to when approval of fees is requested.[1] Ritchie further objects to the use of Receivership funds for forensic accounting services, which Ritchie characterizes as a law enforcement responsibility, and objects to the extent, if any, that assets of Petters Group Worldwide, L.L.C. ("PGW") or its affiliates are used to pay Receivership expenses relating to Petters Company, Inc. ("PCI").[2]

Plaintiff United States of America ("the Government") did not file a response to these Motions. At the hearing, the Government stated that it does not oppose the interim payment requests and that it supports Receiver Kelley's efforts and the fee approval procedures established by the Court.

## II. BACKGROUND

This Receivership was established in October 2008 pursuant to the Anti-Fraud Injunction Act, 18 U.S.C. § 1345, to protect the victims of an alleged Ponzi scheme. The Receivership encompasses the assets of the named defendants and the entities 100% owned or controlled by them, with the exception of Defendant Frank E. Vennes, Jr. ("Defendant Vennes").[3] The scope

---

[1] Ritchie also noted its continuing objection to the Court's *in camera* review of fee statements. That issue is on appeal to the Eighth Circuit and will not be addressed in this Order.

[2] Ritchie's Objection also contends that PricewaterhouseCoopers' ("PwC") performance of accounting services to the Receiver raises a conflict of interest. The objection is not relevant to the present Motions, because approval of PwC's fees is not at issue here.

[3] A separate receivership (the "Vennes Receivership"), not affected by these Motions, has been established for the assets of Defendant Vennes and the entities 100% owned or controlled by him. See Court's Order for Entry of Prelim. Inj., Oct. 16, 2008 [Docket No. 59].

and terms of the Receivership are set forth in the Court's Order of December 8, 2008 ("the Receivership Order"). See 2d Am. Order for Prelim. Inj., Appointment of Receiver, and Other Equitable Relief [Docket No. 127].

The Receivership Order authorizes Receiver Kelley to hire attorneys or other professionals to assist him in performing his duties and responsibilities, and to make disbursements from the Receivership that are necessary or advisable for carrying out his duties. Receivership Order at 15-16. The Receivership Order also requires Receiver Kelley to obtain Court approval prior to paying attorney fees for the Receivership defendants. Id. at 16.

The Court has developed the following procedures for approval of fee applications in this Receivership case:

1. Professionals requesting payment for services rendered to the Receivership or Receivership defendants submit itemized billing statements to Receiver Kelley for his review.

2. Receiver Kelley files a motion requesting Court approval of fees and costs he considers to be reasonable and necessary to represent the Receivership or Receivership defendants. Motions for approval of fees and costs must:

- be filed at least every sixty days in conjunction with the Receiver's Status Report.
- be noticed at least one calendar week prior to the hearing date.
- include billing summaries specifying the name, hourly rate, and time expended by each individual providing services to the Receivership or Receivership defendant.
- be accompanied by an affidavit of the Receiver stating the balance of funds available in the individual Receivership account being charged in the fee application.

3. Receiver Kelley submits for the Court's *in camera* review[3] itemized billing statements supporting the motion to approve fees.

4. The Court conducts an independent, *in camera* review of the itemized statements.

5. The Court holds a public hearing on the motion to approve fees.

6. The Court approves fees and costs found to be reasonable and necessary to represent the Receivership estate or individual Receivership defendants.

On July 31, 2009, Receiver Kelley filed the present Motions seeking interim payment for legal services provided to the Receivership estate and Defendant Petters. At the public hearing on the Motions, the Court inquired as to the basis for Ritchie's and Acorn's standing to object, as neither Ritchie's nor Acorn's Objections contained exhibits or docket references identifying their interests in the Receivership estate. The Court requested Ritchie and Acorn to brief the issue of standing and to include an affidavit specifying the Receivership entities to which they claim creditor status. In response, Ritchie submitted a brief that did "not repeat the details of Ritchie's interest, which Ritchie has set forth in previous pleadings and appearances." Ritchie's Mem. of Law in Support of Standing ("Ritchie's Brief") [Docket No. 533] at 1. No docket citations were provided for the previous pleadings to which Ritchie alluded. Acorn similarly submitted a brief which lacked any exhibits or docket citations identifying Acorn's interest in the Receivership estate. See Mem. of Law in Support of Standing ("Acorn's Brief") [Docket No. 529]. Acorn's Brief did contain an unverified statement that Acorn provided $273 million to PAC Funding, LLC ("PAC Funding"). Id. at 3. PAC Funding is a Receivership entity currently in Chapter 11

---

[3] To safeguard the attorney-client privilege and the Receivership defendants' fifth amendment rights in ongoing related criminal cases, the Court has required itemized invoices for professional services to be submitted *in camera*.

5

bankruptcy.[4]  See In re PAC Funding, LLC, Case No. 08-bk-45371 GFK (Bankr. D. Minn.).

### III.  DISCUSSION

#### A.  Standing

The right of stakeholders in the Receivership to participate in public hearings concerning professional fees paid with Receivership funds is not contested.  The Court's request for briefing on the issue of standing was intended to have Ritchie and Acorn specify their interests in particular Receivership funds.  While Ritchie and Acorn did not specifically identify the Receivership funds in which they are stakeholders, the Court will consider their Objections under the broad equities of this § 1345 action.  Given the large number of victims and creditors in this case, the public interest is served by allowing those claiming stakeholder status to bring their concerns regarding fee petitions before the Court.  However, the Court makes no determination as to whether Ritchie and Acorn are stakeholders with standing to object to future distributions of the Receivership estate outside the context of fee petitions.

#### B.  Corporate Receivership

Acorn argues that unless Receiver Kelley provides a breakdown of the fees and costs attributable to each corporate Receivership entity, as well as a breakdown of which corporate Receivership entities are funding the fees and costs, Acorn is unable to adequately protect its interest in the corporate Receivership entities.

The benefits of requiring this level of detail for corporate Receivership entities must be weighed against the costs and delay which will result from imposing more onerous disclosure requirements on the Receiver.  Here, the benefits appear minimal or non-existent.  Receiver

---

[4] At the hearing, counsel for Acorn represented that Acorn is also a creditor of Petters Aviation and Petters Aircraft Leasing.

Kelley has represented that the individual and corporate Receivership accounts will be balanced at the conclusion of these proceedings. Requiring further detail now will impose additional cost and delay to the Receivership. The current level of detail required for fee applications serves the goals of preserving the Receivership assets and protecting the interests of the Receivership beneficiaries.

### C. Lindquist & Vennum's Fees

Acorn objects that Lindquist & Vennum's fees do not specify the fees and costs attributable to each individual Receivership defendant. The Court's *in camera* review of Lindquist & Vennum's itemized billing statements establishes that the vast majority of Lindquist & Vennum's services were rendered to the corporate Receivership entities. Thus, the services do not require further delineation for the reasons set forth in Paragraph B, above.

### D. Receiver's Obligation to Pay from Corresponding Receivership Accounts

Acorn urges that Receiver Kelley must be required to pay individual and corporate Receivership expenses from the corresponding individual and corporate Receivership account. The Receivership Order, which sets forth Receiver Kelley's duties and obligations, does not impose such a rigid requirement. Instead, the Receivership Order directs Receiver Kelley to "make efforts to draw payment from the assets of the different Defendants and their entities in proportion to the amount of time spent with regard to each." Receivership Order at 18. The "make efforts" language provides Receiver Kelley with some flexibility among accounts. In light of the language of the Receivership Order, as well as Receiver Kelley's representations that the Receivership entity accounts will be balanced at the conclusion of the Receivership, the Court will not require Kelley on an ongoing basis to pay Receivership expenses only with funds

from the Receivership entity which incurred them.

### E.  Forensic Accounting Services

Ritchie maintains that forensic accounting services are a law enforcement responsibility which should not be funded with Receivership assets, and objects to any fees by Receiver Kelley or his counsel in supervising or participating in a forensic accounting.  At the hearing, Receiver Kelley represented through counsel that forensic accounting services are being used to unwind the labyrinth of transactions made by the numerous Petters entities.  The forensic accounting services are also utilized in assembling the assets of the Receivership estate by identifying transactions which may be recovered for the benefit of the Receivership estate.  This is an appropriate responsibility of Receiver Kelley, who is directed by the Receivership Order to take possession of all of the Receivership defendants' assets and may sue to recover assets of the Receivership defendants or persons whose interests are held or controlled by them.  Receivership Order at 13-14.  Accordingly, fees and costs reasonably and necessarily incurred by Receiver Kelley or his counsel in directing or participating in a forensic accounting are approved.

### F.  PGW and PAC Funding Assets Not Used to Pay Corporate Receivership Fees

Ritchie objects to the extent, if any, that assets of PGW or its subsidiaries are used to pay fees and costs incurred by PCI.  The objection parallels Acorn's concern that fees incurred by corporate Receivership entities will be paid with assets belonging to PAC Funding.  As the Court has previously indicated, the Court and Receiver are "mindful that the assets of those bankruptcy estates may not be depleted without regard to the procedures imposed by bankruptcy law." Mem. Opinion and Order, June 30, 2009 [Docket No. 440] at 8.  Therefore, assets of PCI, PGW, PAC Funding, or other bankruptcy estates will not be used to fund fee petitions approved by this

Court.

**G. Approved Fees**

In accordance with the present fee application procedures and upon an *in camera* review of the itemized billing statements, the Court approves fees and costs as follows:

**1. Kelley & Wolter**

The Court finds that Receiver Kelley's fees and costs are actual, reasonable and necessary. The requested hourly rates are within the prevailing market range, and the time expended is reasonable and necessary in light of the complexity of the Receivership assets and entities. Receiver Kelley's fee petition is approved in the amount requested.

**2. Lindquist & Vennum**

The itemized billing records for Receiver Kelley's counsel, Lindquist & Vennum, reflect an increased billing rate which became effective January 1, 2009. The Receivership Order requires twenty days' notice to be filed with the Court before the Receiver and his professionals may increase their hourly rates. Receivership Order at 18. Moreover, because Lindquist & Vennum was retained by the Receiver during the final quarter of 2008, it is reasonable to require the firm to maintain those rates through 2009 for services rendered to the Receivership. The Court finds the services rendered to be actual, reasonable and necessary, and will authorize payment of fees and expenses at the 2008 rates. This results in a reduction of $22,012.85 from the amount originally requested.

**3. Felhaber, Larson, Fenlon & Vogt, P.A. ("Felhaber")**

The Court has analyzed the itemized statements submitted by Felhaber, Defendant Petters' counsel, and has identified two areas where fees will be reduced. First, the statements

contain several time entries for services described generically as "trial preparation." These entries do not provide sufficient specificity for the Court to determine the nature of the services performed, whether the amount of time expended was reasonable, and whether the services could have been performed by personnel with less expertise at a lower rate. Accordingly, the entries described as "trial preparation" will be deducted from the amount of fees approved by the Court, without prejudice to renewing the request for these fees with more specificity. If counsel for Defendant Petters determines that providing further detail for the Court's in *camera review* somehow compromises Defendant Petters' defense, counsel may resubmit the request for fees after the criminal proceedings have been completed.

Second, the itemized statements contain several entries for services which appear to be rendered on behalf of Defendant Petters' adult daughter ("Ms. Petters"). While the Court has approved payment from Receivership funds for Defendant Petters' legal representation to ensure a full and fair trial on the merits, the Receivership will not fund the legal costs incurred in researching and asserting Ms. Petters' interest in Receivership assets. As an adult, Ms. Petters will be required to retain and fund any legal representation on her behalf. A chart summarizing the time entries deducted from Felhaber's fee request is attached as Exhibit A to this Order.

### 4. Paul Engh

The Court finds the services performed by Defendant Petters' counsel Paul Engh to be actual, reasonable and necessary, and will authorize payment of fees and expenses in the amount requested.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Receiver Kelley's Motions to make interim fee payments for Kelley & Wolter, P.A. [Docket No. 469] and Paul Engh [Docket No. 481] are **GRANTED**;

2.  Receiver Kelley's Motions to make interim fee payments for Lindquist & Vennum, P.L.L.P. [Docket No. 473] and Felhaber, Larson, Fenlon & Vogt, P.A. [Docket No. 477] are **GRANTED IN PART** and **DENIED IN PART**.

3.  Receiver Kelley is authorized to make the following payments:

| | |
|---|---|
| Kelley & Wolter, P.A. | $293,556.73 |
| Lindquist & Vennum, P.L.L.P. | $255,132.15 |
| Felhaber, Larson, Fenlon & Vogt, P.A. | $156,319.52 |
| Paul Engh | $22,920.00 |

4.  Receiver Kelley is directed to seek reimbursement of the foregoing sums to the extent possible under applicable insurance policies, including directors and officers liability policies maintained by Petters Company Inc., Petters Group Worldwide, LLC or any other related entity.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  September 1, 2009.

Deducted Entries for "Trial Prep"

| DATE | HOURS EXPENDED | HOURLY RATE | TOTAL FEES |
|---|---|---|---|
| 2/2/09 | 5.0 | $450 | 2250 |
| 2/3/09 | 5.0 | $450 | 2250 |
| 2/4/09 | 5.0 | $450 | 2250 |
| 2/5/09 | 5.0 | $450 | 2250 |
| 2/7/09 | 2.0 | $450 | 900 |
| 2/8/09 | 4.0 | $450 | 1800 |
| 2/9/09 | 6.0 | $450 | 2700 |
| 2/11/09 | 2.5 | $450 | 1125 |
| 2/12/09 | 6.0 | $450 | 2700 |
| 2/13/09 | 3.0 | $450 | 1350 |
| 2/16/09 | 4.0 | $450 | 1800 |
| 2/17/09 | 8.0 | $450 | 3600 |
| 2/18/09 | 8.0 | $450 | 3600 |
| 2/19/09 | 9.0 | $450 | 4050 |
| 2/20/09 | 4.0 | $450 | 1800 |
| 2/23/09 | 4.0 | $450 | 1800 |
| 2/24/09 | 2.0 | $450 | 900 |
| 2/25/09 | 2.0 | $450 | 900 |
| | 84.5 Total | | $38,025 Total |

Deducted Entries Pertaining to Ms. Petters

| DATE | HOURLY RATE | HOURS EXPENDED | TOTAL FEES |
|---|---|---|---|
| 2/2 | $345 | .1 | 34.50 |
| 2/3 | $345 | .2 | 69 |
| 2/4 | $345 | .2 | 69 |
| 2/5 | $345 | 2.5 | 862.50 |
| 2/6 | $345 | .2 | 69 |
| 2/9 | $345 | 1.5 | 517.50 |
| 2/10 | $345 | 2.4 | 828 |
| 2/11 | $345 | .6 | 207 |
| 2/12 | $345 | .3 | 103.50 |
| 2/14 | $345 | 1.2 | 414 |
| 2/16 | $345 | 1.0 | 345 |
| 2/17 | $345 | 1.5 | 517.50 |
| 2/18 | $345 | .5 | 172.50 |
| 2/24 | $345 | .3 | 103.50 |
| 2/25 | $345 | 1.5 | 517.50 |
| 2/27 | $345 | 2.2 | 759 |
| 2/27 | $190 | 3.4 | 646 |
| 2/27 | $310 | .4 | 124 |
| 2/28 | $190 | 1.7 | 323 |
| | | | $6,682 Total |