## ATTACHMENT 2

### ASSIGNMENT OF AND
### AMENDMENT TO PURCHASE AGREEMENT

THIS ASSIGNMENT OF AND AMENDMENT TO PURCHASE AGREEMENT ("Amendment") is made and entered into this _10_ day of September, 2009 by and between SPB DEVELOPMENT COMPANY LIMITED, a Bahamian Corporation ("Vendor"); SANDY SEGALL, TRUSTEE ("Segall"); and SWIMMING POOL BEACH LTD., a Bahamian Corporation ("Purchaser").

### RECITALS

A.     Vendor and Segall entered into a certain purchase agreement dated April 17, 2009 (the "Purchase Agreement") providing for the purchase and sale of approximately 90 acres of unimproved land located between the Atlantic Ocean and The Queen's Highway in Clarence Town, Long Island, Bahamas (the "Property").

B.     Segall and Purchaser desire to provide for the assignment by Segall, and the assumption by Purchaser of all right, title, interest and obligations of Segall under the Purchase Agreement.

C.     Vendor and Purchaser desire to amend the Purchase Agreement upon the terms and conditions hereinafter set forth.

### AGREEMENTS

NOW, THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.     Recitals/Defined Terms. The Recitals are incorporated herein by reference. All capitalized terms not otherwise defined in this Amendment shall have the meanings assigned such terms in the Purchase Agreement.

2.     Assignment and Assumption. Effective as of the date of this Amendment, (i) Segall shall, and he hereby does assign to Purchaser all right, title and interest of Purchaser under the Purchase Agreement, including Purchaser's right to any Deposit(s) heretofore made by Segall under the Purchase Agreement and (ii) Purchaser shall, and it hereby does assume all obligations of Segall under the Purchase Agreement. Vendor hereby consents to the foregoing assignment and assumption.

3.     Extension of Permit Period. The Permit Period shall be, and it hereby is extended so as to now expire on October 31, 2009.

4.     Completion Date. The Completion Date shall be, and it hereby is amended so as to now be November 17, 2009.

1460191v2
Doc# 3069412\1

5.   Deposit.  The Deposit heretofore made of $155,000.00 shall be, and it hereby is made non-refundable to Purchaser except only in the event (i) the Permit is not issued in favor of Purchaser, (ii) the Order approving the sale is not issued or (iii) Vendor fails or refuses to close on the sale of the Property.

6.   Effect.   Except as amended hereby, the Purchase Agreement shall remain unmodified and in full force and effect.

7.   Counterparts.  This Amendment may be executed in any number of counterparts each of which shall be deemed an original, but all of which when taken together shall constitute one and the same instrument.  Each counterpart may be delivered by facsimile or e-mail transmission.

IN WITNESS WHEREOF, the parties have caused this Amendment to be executed and delivered as of the date first above written.

VENDOR:

**SPB DEVELOPMENT COMPANY LIMITED**

By: _Thomas E Hay_
Thomas S. Hay, Vice President


SEGALL:

_Sandy Segall, Trustee_
**SANDY SEGALL, TRUSTEE**


PURCHASER:

**SWIMMING POOL BEACH LTD.**

By: _____
Its: _____DIRECTOR_____

**COMMONWEALTH OF THE BAHAMAS**

Long Island

     **THIS AGREEMENT** is made upon the date shown in Item 1 of the Schedule hereto between the parties respectively described as the "**Vendor**" and the "**Purchaser**" therein **WHEREBY IT IS AGREED** as follows:

1.    In the interpretation of this Agreement, unless the context otherwise requires the following expressions shall have the meanings hereby assigned to them respectively:

    (a)    The "Vendor" shall include its successors in title and assigns;

    (b)    The "Purchaser" shall include its successors in title and assigns.

2.    The Vendor will sell and the Purchaser will purchase the fee simple estate in possession of the hereditaments described in Item 8 of the Schedule hereto together with all appurtenances thereunto belonging (hereinafter referred to as the "**hereditaments**").

3.    The hereditaments are being sold together with the rights of way and easements and benefits (if any) and free from encumbrances, except for the Permitted Exceptions (as hereinafter defined).

4.    The purchase price for the hereditaments shall be the sum described in Item 4 of the Schedule hereto in the currency specified in Item 4 of the Schedule and upon the execution of this Agreement the sum described in Item 5 of the Schedule hereto shall be paid to the Vendor's Attorney as stakeholder as a deposit and in part payment of the purchase price pending actual completion. The balance of the purchase price in the amount set out in Item 6 of the Schedule shall be paid in full on completion to the Vendor or its Attorney.

5.    The date for completion of the above sale shall be on or before the date shown in Item 7 of the Schedule hereto (hereinafter referred to as the "**Completion Date**").

6.    The Vendor sells **AS BENEFICIAL OWNER**.

7.    As soon as practical after the date hereof: 

i

(a) the Vendor shall produce or cause to be produced to the Purchaser or its Attorney all of the documents of title in the Vendor's possession relating to the hereditaments and such other information as the Purchaser or its Attorney shall reasonably require to deduce from a good root of title in accordance with the provisions of The Conveyancing and Law of Property Act a good and marketable documentary title in fee simple subject as hereinafter appearing but otherwise free from encumbrances, except for the Permitted Exceptions;

(b) The Vendor shall deliver a survey (the "**Survey**") of the hereditaments made on the ground by a licensed Bahamian surveyor in such form as shall be approved by the Title Company, sufficient to permit the Title Company to delete the standard survey exception.

(c) The Vendor shall also produce or cause to be produced to the Purchaser or its' Attorney a Companies Report on the Vendor, which shall consist of the following information: The Company Number; Date of incorporation; Jurisdiction in which it is incorporated – if non-Bahamian if registered a Foreign Company; History of payment of Annual Fees; The Members, Officers and Directors; Whether it is beneficially Bahamian owned; Whether it has ever been struck-off the Register; Authorized signatories.

8.     Within twenty-one (21) days from the date the Vendor delivers the last of the items required pursuant to Section 7 above, the Purchaser shall obtain, at its sole cost and expense a commitment for title insurance issued by the Title Company (as hereinafter defined), together with copies of all recorded instruments that affect the hereditaments and give rise to any exceptions in the commitment for title insurance (collectively, the "**Commitment**").

9.     Notwithstanding the provisions of Section Three (3) sub-sections Five (5) and Nine (9) of the said Conveyancing and Law of Property Act the Vendor shall not be obliged to produce an Abstract of Title in respect of the hereditaments unless requested in writing to do so by the Purchaser or its Attorney within fourteen (14) days from the delivery of all the said documents and other information.

10.     The foregoing provisions do not exempt the Vendor from answering requisitions on title properly raised by the Purchaser or its Attorney or the Title Company.

2

11.     Requisitions and objections (if any) in respect of the title or description of the hereditaments or otherwise arising out of this Agreement shall be delivered in writing to the Vendor's Attorney within twenty-one (21) days from the Purchaser's receipt of the last to be received of the Commitment, the Survey or the said documents and other information as herein above required. If the Purchaser gives timely written notice of objections, the Vendor shall have the opportunity, but not an obligation, for forty-five (45) days from the date of the Purchaser's notice to cure the same; provided that the Vendor shall be obligated to remove from the hereditaments at or before completion any liens or security interests securing liabilities incurred, assumed or taken subject to by the Vendor.  Should any requisition or objection whatsoever be insisted on which the Vendor shall be unable or unwilling to satisfy or comply with, the Purchaser shall elect within ten (10) days after the expiration of the Vendor's cure period, as the Purchaser's sole and exclusive remedy, to either (i) rescind this Agreement by giving written notice to the Vendor, in which event the deposit shall be returned to the Purchaser within seven (7) days of the date of such notice, or (ii) give the Vendor written notice that the Purchaser waives the unsatisfied objection (which shall thereupon become a Permitted Exception) and proceed to completion on the Completion Date.  In the event the Purchaser rescinds this Agreement, the Purchaser shall thereupon return or cause to be returned to the Vendor all documents of title and all other papers belonging to the Vendor in its possession in connection with this sale and this Agreement shall be cancelled without further or other liability by any party to the other.  Any exception to title to which the Purchaser does not object in the manner and within the time period specified in this Section 11 shall be deemed accepted by the Purchaser.  The phrase **"Permitted Exceptions"** means those exceptions to title set forth in the documents of title, the Commitment or the Survey that have been accepted in writing by the Purchaser, or that, by operation of the provisions of this Agreement, the Purchaser is deemed to have accepted.

12.     The Purchaser is hereby granted the right after the date hereof to access the hereditaments to conduct engineering market and economic feasibility studies of the hereditaments and a physical inspection of the hereditaments (all at Purchaser's expense) commencing on the date hereof and expiring on the date fourteen (14) days thereafter.  All inspections shall be performed by qualified and experiences persons whom are licensed if/as required.  Should the Purchaser determine, in its sole judgment, that the hereditaments are not in satisfactory condition, the Purchaser may rescind this Agreement by giving a written notice to the Vendor at any time prior

3

to the expiration aforesaid, in which event the deposit shall be returned to the Purchaser within seven (7) days of the date of such notice,.  In the event the Purchaser rescinds this Agreement, the Purchaser shall thereupon return or cause to be returned to the Vendor all documents of title and all other papers belonging to the Vendor in its possession in connection with this sale and this Agreement shall be cancelled without further or other liability by any party to the other, except that the following indemnification shall survive any termination of this Agreement. The Purchaser agrees to indemnify and hold the Vendor harmless from all claims, liabilities, damages and causes of action (other than for or because of pre-existing conditions) arising out of Purchaser's presence upon the hereditaments and/or any feasibility study performed by the Purchaser, its agents representatives or assigns unless due to the negligence of the Vendor its agents representatives or assigns.

13.     If the Vendor shall deduce such title to the hereditaments as is provided for in this Agreement in accordance with the provisions hereof and shall be ready, able and willing in accordance with such provisions to deliver the conveyance hereinafter provided for and the Purchaser having obtained the requisite permit from the Investments Board, and after ten (10) days written notice of default from Vendor, time being of the essence of the said notice, nevertheless fails to complete the purchase, the deposit paid hereunder shall be forfeited to the Vendor in complete liquidation of all damages suffered by the Vendor save that the Purchaser or its Attorney shall return or cause to be returned to the Vendor or its Attorney all documents of title and such other information as shall have been produced to the Purchaser or its Attorney as hereinbefore provided, and this Agreement shall be cancelled without further or other liability by any party to the other.

14.     If the Vendor shall fail to deduce such title to the hereditaments as is provided for in this Agreement in accordance with the provisions hereof or shall fail to deliver the conveyance hereinafter provided for, then the Purchaser having obtained the requisite permit from the Investments Board may at any time on or after the Completion Date without prejudice to any other right or remedy of the Purchaser against the Vendor give to the Vendor or its Attorney notice in writing requiring the Vendor to complete within such period (not being less than fourteen (14) days nor more than twenty-one (21) days) as the notice shall prescribe, time being of the essence of the said notice and if the Vendor shall not complete accordingly, the Purchaser

4

may (but without prejudice if the Purchaser so elects to any of the Purchaser's alternative remedies by way of damages, specific performance or otherwise) request the repayment of the said deposit which shall upon request be repaid to the Purchaser, whereupon this Agreement shall be cancelled without further or other liability by either party to the other save the Purchaser or its Attorney shall return or cause to be returned to the Vendor or its Attorney all documents of title and such other information as shall have been produced to the Purchaser or its Attorney as hereinbefore provided.

15.   Upon completion:

(a)   The Purchaser shall pay or cause to be paid to the Vendor's Attorney the sum being the balance of the purchase price described in Item 6 of the Schedule hereto;

(b)   Upon payment of the balance of the purchase price as aforesaid, the Vendor's Attorney shall deliver to the Purchaser or its Attorney a proper conveyance of the hereditaments in favor of the Purchaser or its nominee duly executed by the Vendor which shall be in a form approved by the Purchaser's Attorney and the Title Company (such approval not to be unreasonably withheld) and a draft of which said conveyance shall be submitted to such Attorney and the Title Company at least seven (7) days before the Completion Date;

(c)   The Purchaser and the Vendor will be responsible for the payment of their respective legal fees with respect to the conveyance of the hereditaments;

(d)   The Purchaser shall be entitled to vacant possession of the hereditaments and shall be responsible for the payment of all taxes, rates, assessments, charges and outgoings relating to the hereditaments after the Completion Date such taxes, rates, assessments, charges and outgoings to be apportioned where necessary and/or appropriate and to be paid in full by the Vendor up to and including the Completion Date;

(e)   The Vendor shall deliver to the Purchaser, at the expense of the Vendor, all other requisite documents necessary for completion duly executed; and

5

(f)    The Vendor shall execute and deliver to the Title Company a Seller's/Owner's Affidavit in the form attached hereto or as required by the Title Company.

16.   Notwithstanding any other provisions contained herein, completion of the sale and purchase of the hereditaments is subject to satisfaction of the following conditions:

(a)    a permit (hereinbefore and hereinafter referred to as the **"Permit"**) being issued to the Purchaser under the International Persons Landholding Act, 1992 for the acquisition of the hereditaments;

(b)    the Purchaser at its expense obtaining from International Data Management, Inc. a standard Owner's Title Insurance Commitment issued by First American Title Insurance Company (the "Title Company") agreeing to insure the Purchaser's title to the hereditaments in the amount of the purchase price, subject only to the Permitted Exceptions;

(c)    the United States District Court for the District of Minnesota issuing an order (hereinafter referred to as the **"Order"**) approving the sale of the hereditaments by the Vendor in accordance with the terms and conditions of this Agreement. The Vendor agrees to diligently, and in good faith, pursue the issuance of said Order.

If either of the conditions precedent stated in subparts (a) and (b) of this Section are not satisfied in full or have not occurred as of the Completion Date, then the Purchaser, in the Purchaser's sole discretion, may either (1) terminate this Agreement by giving written notice thereof to the Vendor on or before the date for completion, in which event the deposit (together with any interest earned thereon) shall be returned to the Purchaser and neither party shall have any further right or obligation under or in respect of this Agreement save Purchaser or its Attorney shall return or cause to be returned to the Vendor or its Attorney all documents of title and such other information as shall have been produced to the Purchaser or its Attorney as hereinbefore provided, and this Agreement shall be cancelled without further or other liability by any party to the other and the indemnification of Section 12 above shall survive any termination, or (2) close this transaction notwithstanding such non-satisfaction.

6

If the Order has not been issued by the later of the date of issuance of the Permit or the end of the Permit Period, then either the Vendor or the Purchaser may terminate this Agreement by giving written notice thereof to the non-terminating party, in which event the deposit (together with any interest earned thereon) shall be returned to the Purchaser and neither party shall have any further right or obligation under or in respect of this Agreement save Purchaser or its Attorney shall return or cause to be returned to the Vendor or its Attorney all documents of title and such other information as shall have been produced to the Purchaser or its Attorney as hereinbefore provided, and the indemnification of Section 12 above shall survive any termination.

17.     In the event the Permit is not issued in favor of the Purchaser on or before One Hundred fifty (150) days from the date hereof (hereinafter referred to as the "**Permit Period**"), the Vendor in its sole discretion has the option of:

    (a)     terminating this Agreement and the Vendor shall return to the Purchaser the deposit paid herein without any interest earned on the deposit and the Purchaser shall return to the Vendor's attorney all documents of title and papers belonging to the Vendor forwarded to the Purchaser pursuant to the provisions hereof; or

    (b)     extending this Agreement at the expiration of the Permit Period for such further period not to exceed two (2) months (hereinafter referred to as the "**Permit Extension Period**") for no additional consideration, as the Vendor in its sole discretion determines.

    (c)     Upon the expiration of the Permit Period or the Permit Extension Period, the Vendor in its sole discretion has the option of:

        i.      extending this Agreement for such further period as the parties hereto may hereafter mutually agree to in writing; or

        ii.     rescinding this Agreement and the Vendor shall return to the Purchaser the deposit paid herein within seven (7) days of the date of such notice, without any interest earned on the deposit and the Purchaser shall return to the Vendor's Attorney all documents of title and papers belonging to the Vendor forwarded to the Purchaser pursuant to the provisions hereof and

7

this Agreement shall be cancelled without further or other liability by any party to the other.

18.   The total stamp duty payable on the conveyance of the hereditaments in favor of the Purchaser shall be paid equally by the Vendor and the Purchaser.

19.   It is hereby agreed that the Purchaser shall make application to the Investments Board for the Permit in respect of its purchase within thirty (30) days after the execution of this Agreement by both parties and copies of the full proposal and correspondence along with any plans submitted therewith for the proposed development to the Investments Board shall be supplied to the Vendor with the Vendor being kept appraised of the progress of the application. It is further agreed that the Purchaser shall submit an application to the Investments Board for an approval-in-principle regarding its proposed development plans to enable the Investments Board to issue a Permit for the completion of the sale and purchase herein contemplated without regard for the National Economic Council approving the Purchaser's development plans.

20.   Any notice required or permitted under the terms of this Agreement shall be in writing and may be served by express mail, first class registered mail, facsimile transmission or hand delivery as follows:

(a)     to the Vendor's registered office and to the Vendor's Attorney:

Chancellors Chambers
P.O. Box N 4589
Samana Hill, 14 Village Road
Nassau, Bahamas
Attention: Mr. Kenred M. A. Dorsett
Telephone: (242) 394-1823
Facsimile:  (242) 394-1824
E-mail:  kdorsett@ccsbahamas.com

AND

Lindquist & Vennum, P.L.L.P.
Attn: John J. Bowden
4200 IDS Center
80 South Eighth Street
Minneapolis, MN  55402

8

Telephone: (612) 371-3968
Facsimile:  (612) 371-3207
E-mail: jbowden@lindquist.com

   (b)    to the Purchaser:

Sandy Segall, Trustee
Suite 300, 1806 North Flamingo Road
Pembroke Pines, Florida  33028
Telephone: (954) 447-7775
Facsimile: (954) 447-6696
E-mail: sss@acbdgroup.com


AND

Ellie Weinberger, Esq.
Suite 300, 1806 North Flamingo Road
Pembroke Pines, Florida  33028
Telephone: (954) 447-7775
Facsimile: (954) 447-6696
ew@acbdgroup.com


   (c)    to the Purchaser's Attorneys:

Kohl & Associates, PLC
2055 South Kanner Highway
Stuart, Florida  34994
Attention: N. Dean Kohl, Jr.
Telephone: (772) 223-9999
Facsimile: (772) 223-9008
E-mail: dkohl@kohllaw.com

and

Mackay & Moxey. P. A.
Shirlaw House, Shirley Street
P. O. Box N-4839
Nassau, Bahamas
Attention: Charles Mackay
Telephone: (242) 322-7474
Facsimile: (242) 322-2079
E-mail: C.Mackay@Bahamas.Net.BS

9

(d)      to the Title Company:

> International Data Management, Inc.
> 11369 Okeechobee Blvd.
> Bldg. B Suite 100
> Royal Palm Beach, FL 33411
> Attention: Kevin Brennan
> Telephone: (561) 798-6645
> Facsimile: (561) 798-3183
> E-mail: kbrennan@idm-inc.com

In any such case a notice shall be deemed to have been served: (i) at the time of delivery, if by hand delivery; (ii) at the time it was transmitted provided the sender received an answerback code and an activity report is thus printed, if by facsimile transmission; and (iii) if by first class registered mail or by express mail, within two (2) business days after the posting/posting date, provided however mail between the United States and The Bahamas must be by express mail.

21.     The Vendor agrees that the Purchaser may have access to the hereditaments for the duration of this Agreement for the limited purpose of conducting inspections and all other reasonable due diligence related to the Purchaser's determination of whether the hereditaments are suitable for Purchaser's proposed development, all at the Purchaser's expense. Notwithstanding the foregoing, no soil borings or similarly intrusive testing of the hereditaments shall be performed by Purchaser without the Vendor's prior written consent, which consent shall not be unreasonably withheld. Purchaser shall repair, and hold Vendor harmless from and against, any damage to the hereditaments caused by any of the activities of Purchaser or its contractors, agents and employees under this Section.

22.     The Purchaser may assign this Agreement to an entity controlled by the Purchaser PROVIDED THAT it first satisfies the Vendor that such entity is in fact controlled by the Purchaser and for the avoidance of doubt this Agreement shall not be assigned to any other entity without the prior written consent of the Vendor such consent shall not be unreasonably withheld.

23.     The Purchaser represents, warrants and covenants as follows: 

10

(a)   The purchase and sale of the hereditaments under this Agreement is an arms-length transaction between two (2) unrelated individuals or entities. Purchaser is not affiliated or associated in any way with Thomas Joseph Petters individually, Petters Real Estate Group, LLC, Long Island Enterprises Company Limited, SPB Development Company Limited or any other entity owned or controlled by Thomas Joseph Petters. Purchaser acknowledges that in the event it is established that this is not an arms-length transaction, this transaction is voidable and is subject to the full range of remedies available to the United States of America; and

(b)   Purchaser acknowledges that Vendor is selling and Purchaser is purchasing the hereditaments on an "AS IS WITH ALL FAULTS" basis and that Purchaser is not relying on any representations or warranties of any kind or nature, express or implied, made by Vendor, its agents, employees or brokers as to matters concerning the hereditaments or the physical condition thereof.

24.   In the interpretation of these presents words importing persons shall include corporations, the masculine gender shall include the feminine gender, and words importing the singular number only shall include the plural number, and visa versa.

25.   If any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

26.   This Agreement constitutes the sole and only agreement of the parties hereto and supersedes any prior understandings or written or oral agreements between the parties respecting this Agreement subject matter and cannot be changed except by their written consent.

27.   This Agreement shall be governed and construed in accordance with the laws of the Commonwealth of The Bahamas.

11

## THE SCHEDULE HEREINBEFORE REFERRED TO

1. Date of Agreement:        The _____ day of April, 2009 (the date the last party signs)

2. Vendor:                   **SPB DEVELOPMENT COMPANY LIMITED**

3. Purchaser:                Sandy Segall, Trustee

4. Purchase Price:           US$1,530,000.00

5. Deposit:                  US$153,000.00

6. Balance of Purchase Price: US$1,377,000.00

7. Completion Date:

   45 days after obtaining the Permit, but not earlier than one hundred and twenty (120) days from the date of this Agreement.

8. Description of the said hereditaments:

   ALL THAT piece or parcel of land situate West of the Settlement of Clarence Town and East of the Settlement of Dean's in the Island of Long Island one of the Islands of the Commonwealth of The Bahamas being a portion of an original tract of land known as "Bon Accord" or "Bonnie Cod" containing a net acreage of Ninety-three and Six thousand Three hundred and Forty-six thousandths (93.6346) acres and comprising a portion of a Five hundred (500) acre tract granted to one Peter Dean and recorded in the Crown Lands Office of the said Commonwealth in Book D at pages 13 which said piece or parcel of land is bounded NORTHWARDLY by the Atlantic Ocean EASTWARDLY by another portion of a Five hundred (500) acre tract originally granted to the said Peter Dean SOUTHWARDLY by the Queen's Highway and NORTHWESTWARDLY partly by a portion of a Two hundred and Eighty (280) acre tract originally granted to the said Peter Dean and partly by the Sea which said piece or parcel or land has such position boundaries shape marks and dimensions as are shown on the diagram or plan annexed to a Certificate of Title issued under the Quieting Titles Act 1959 to Outer Islands Limited in Action Number 460 of 1962 and dated the 30th day of November A.D. 1966 and is recorded in the Registry of Records in Volume 1056 at pages 324 to 327 and is delineated on that part of the said diagram or plan which is coloured PINK **Save and Except those**

12

parcels of land conveyed to various parties by the deeds particulars of which are set out in the Second Schedule hereto.

RESTRICTIONS AND CONDITIONS:  NONE

## THE SECOND SCHEDULE HEREINBEFORE REFERRED TO

1.  Conveyance dated  26th June 1987
    Semako Holdings Limited to Ernest Major

Recorded in Volume 4766 at pages 158 to 162

2.  Conveyance dated 14th October 1993
    Semako Holdings Limited to Brent J. Burrows and Rhonda J. Burrows

Recorded in Volume 6102B at pages 27 to 37

3.  Conveyance dated 16th September 1996
    Semako Holdings Limited to VanDyke Adderley

Recorded in Volume 6960 at pages 342 to 355

IN WITNESS WHEREOF the Vendor has caused its Common Seal to be hereunto affixed on the day and year first hereinbefore written.

SPB DEVELOPMENT COMPANY LIMITED

By: _____
Its: Thomas Hay, Vice President and Secretary

The Common Seal of **SPB DEVELOPMENT COMPANY LIMITED** was affixed hereto by Thomas Hay, a Vice President and Secretary of the Vendor and the said Thomas Hay affixed his signature hereto in the presence of:

_____

IN WITNESS WHEREOF the Purchaser has caused its Common Seal to be hereunto affixed on the day and year first hereinbefore written.

SANDY SEGALL, TRUSTEE

_____

13

## SELLER'S/OWNER'S AFFIDAVIT
### (Company, Corporation and/or Partnership)

Commonwealth of The Bahamas,

_____.
      (Island)

ON _____ _____, 200___, before me personally appeared the undersigned duly authorized representative and on behalf of _____ (the "Company, Corporation and/or the Partnership"), being duly sworn according to law, and intending to be legally bound deposes and affirms that the following is true and correct to the best of his/her knowledge and belief:-

1. That the Company, Corporation and/or Partnership is (was) the owner of the Land to be insured by First American Title Insurance Company as set forth in the above numbered Commitment, attached hereto as Attachment A.

2. Except as may be disclosed by the Survey or Title Commitment, there are no mortgages, judgments, encumbrances, easements, rights of way or any pending suits that may adversely affect the Land.

3. That the Company, Corporation and/or Partnership, during the time of ownership of the Land, has not allowed and knows of no violation of any covenants, restrictions, agreements, conditions or zoning ordinances affecting the Land.

4. That the Company, Corporation and/or Partnership in this transaction is (was) in actual possession of the entire premises described as the Land in the above numbered Commitment, and there are no leases, agreements or purchase contracts affecting the Land or any part thereof outstanding, other than those that are presently being assigned.

5. That the present transaction is (was) not made for the purpose of hindering, delaying or defrauding any creditors of the owner Company, Corporation and/or Partnership.

6. That any and all taxes or service charges assessed against or arising out of the Land (mark appropriate box):-
       □   as of _____ are fully paid; or
       □   will be paid at the date of Closing/Completion.

7. That all parties signatory to documents in this transaction are duly authorized to execute same on behalf of the Company, Corporation and/or the Partnership.

8. That the Company, Corporation and/or the Partnership has been duly formed according to the Laws of the jurisdiction of its incorporation or formation and is in good standing.

9. That no consent is required by members or owners of the Company, the Corporation stockholder, nor by limited partner(s) of the Partnership to this transaction.

10. To the undersigned's knowledge, the Company, Corporation and/or Partnership, during the time of ownership of the Land, has allowed no encroachments on the Land by any adjoining land owners nor has the Company, Corporation and/or Partnership encroached upon any property of adjoining land owners.

11. That the Company, Corporation and/or Partnership, during the time of ownership of the Land, has conveyed no portion of the Land nor done any act or allowed any act to be done, which has changed or could change the boundaries of the Land.

i

Seller's/Owner's Affidavit (Company, Corporation and/or Partnership)
Page 2

12. To the undersigned/s knowledge, the Company, Corporation and/or Partnership, during the time of ownership of the Land, has allowed no unrecorded easements, rights of way, continuous driveway usage, telephone, cable, drain, sewer, water, gas or oil pipeline or other rights of passage to others over the Land and has no knowledge of such adverse rights.

13. That the Company, Corporation and/or Partnership (*please select one of the below subparagraphs by placing a check mark (√) next to the applicable subparagraph*):-

| | | |
|---|---|---|
| _____ | a. | will deliver to the Purchaser the original Indenture/Deed to the Land and acknowledges the right of the Purchaser at the expense of the Purchaser to the production of all original title Indentures/Deeds and to delivery of copies thereof and hereby undertakes for the safe custody thereof damage by fire hurricane storm tempest or other inevitable accident excepted; or |
| _____ | b. | has in its possession and will deliver to the Purchaser the original title Indentures/Deeds forming the chain of title to the Land; or |
| _____ | c. | has in its possession and will deliver to the Purchaser the original title Indentures/Deeds forming the chain of title to the Land, except the Indentures/Deeds listed in the attached document for which Affidavits of Loss will be delivered to the Purchaser; or |
| _____ | d. | has in its possession and will deliver to the Purchaser the original title Indentures/Deeds forming the chain of title to the Land, except the Indentures/Deeds listed in the attached document, which Indentures/Deeds have been lodged for recordation with the Registrar General of The Bahamas and have not yet been returned to the Company, Corporation and/or the Partnership; however, as evidence of lodgment, a copy of the cover letter listing the unreturned Indentures/Deeds and bearing the Registrar General's stamp acknowledging receipt of the unreturned Indentures/Deeds is attached hereto; or |
| _____ | e. | acknowledges the right of the Purchaser at the expense of the Purchaser to the production of all original title Indentures/Deeds and to delivery of copies thereof and hereby undertakes for the safe custody thereof damage by fire hurricane storm tempest or other inevitable accident excepted. |

14. Forwarding Address:-  _____

   _____

   Phone number:-  _____

   E-mail:-  _____

**This Affidavit is made for the purpose of inducing First American Title Insurance Company or its duly authorized agent to issue its Title insurance Policy insuring the Title to the Land.**

   By:-_____
   
                                             Signature

   _____
   
                                             Print Name/Title

SWORN TO before me,
the day and year aforesaid.

                  _____
                        Notary Public
                           (Seal)
                  My commission expires:-_____

ii

## SECOND AMENDMENT TO PURCHASE AGREEMENT

THIS SECOND AMENDMENT TO PURCHASE AGREEMENT ("Amendment") is made and entered into this _17th_ day of November, 2009 by and between **SPB DEVELOPMENT COMPANY LIMITED**, a Bahamian Corporation ("Vendor"); and **SWIMMING POOL BEACH LTD.**, a Bahamian Corporation ("Purchaser").

## RECITALS

A.     Vendor and Sandy Segall, Trustee ("Segall") entered into a certain purchase agreement dated April 17, 2009, which purchase agreement was amended by a certain Assignment of and Amendment to Purchase Agreement dated September 10, 2009 (the "First Amendment") (as so amended by the First Amendment, the "Purchase Agreement") providing for the purchase and sale of approximately 90 acres of unimproved land located between the Atlantic Ocean and The Queen's Highway in Clarence Town, Long Island, Bahamas (the "Property").

B.     Pursuant to the First Amendment, Segall did assign, and Purchaser did assume all right, title, interest and obligations of Segall under the Purchase Agreement.

C.     Vendor and Purchaser desire to further amend the Purchase Agreement upon the terms and conditions hereinafter set forth.

## AGREEMENTS

NOW, THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.     Recitals/Defined Terms.  The Recitals are incorporated herein by reference.  All capitalized terms not otherwise defined in this Amendment shall have the meanings assigned such terms in the Purchase Agreement.

2.     Extension of Permit Period.  Subject to further extension pursuant to paragraph 5 below, the Permit Period shall be, and it hereby is extended so as to now expire on February 5, 2010.

3.     Completion Date.  The Completion Date shall be, and it hereby is amended so as to now be that date which is ten (10) days after the Permit is issued; provided, however, unless the Purchaser shall agree that the Completion Date may occur prior to February 15, 2010, in no event shall the Completion Date be before February 15, 2010.

4.     Deposit.  Paragraph 5 of the First Amendment shall remain in full force and effect in accordance with its terms and conditions.  In addition thereto, as to $100,000.00 of the Deposit heretofore made of $155,000.00, Purchaser shall, and hereby does assume the risk that the Permit

will not be issued; accordingly, $100,000.00 of said Deposit shall be, and hereby is made non-refundable to Purchaser even if the Permit is not issued. Upon delivery to Vendor's Bahamian counsel, Mr. Kenred M.A. Dorsett of a copy of the Order of the United States District Court for the District of Minnesota approving the sale of the Property, Vendor's Bahamian counsel shall be, and hereby is authorized and instructed to pay $100,000.00 of the Deposit directly to Vendor.

5.  _Further Extension of Permit Period._  Purchaser shall have the right to extend the expiration date of the Permit Period one month only from February 5, 2010 to March 5, 2010 by serving written notice of such extension (the "Extension Notice") on Vendor's registered office and Vendor's Attorney in accordance with the provisions of the Purchase Agreement no later than January 31, 2010, time being of the essence. By giving such Extension Notice, Purchaser shall be deemed to have agreed that the remaining $55,000.00 of the Deposit heretofore made of $155,000.00 shall also be non-refundable to Purchaser even if the Permit is not issued.

6.  _Effect._  Except as amended hereby, the Purchase Agreement shall remain unmodified and in full force and effect.

7.  _Counterparts._  This Amendment may be executed in any number of counterparts each of which shall be deemed an original, but all of which when taken together shall constitute one and the same instrument. Each counterpart may be delivered by facsimile or e-mail transmission.

IN WITNESS WHEREOF, the parties have caused this Amendment to be executed and delivered as of the date first above written.

VENDOR:

**SPB DEVELOPMENT COMPANY LIMITED**

By: _Thomas S. Hay_
Thomas S. Hay, Vice President

PURCHASER:

**SWIMMING POOL BEACH LTD.**

By: _____
Its: _____