# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United States of America,

    Plaintiff,

 v.

Thomas Joseph Petters; Petters Company,
Inc., a/k/a PCI; Petters Group Worldwide, LLC;
Deanna Coleman, a/k/a Deanna Munson;
Robert White;
James Wehmhoff;
Larry Reynolds, and/or dba Nationwide International
Resources, aka NIR;
Michael Catain and/or dba Enchanted
Family Buying Company;
Frank E. Vennes, Jr., and/or dba Metro Gem
Finance, Metro Gem, Inc., Grace Offerings
of Florida, LLC, Metro Property Financing,
LLC, 38 E. Robinson, LLC, 55 E. Pine, LLC,
Orlando Rental Pool, LLC, 100 Pine Street
Property, LLC, Orange Street Tower, LLC,
Cornerstone Rental Pool, LLC, 2 South
Orange Avenue, LLC, Hope Commons, LLC,
Metro Gold, Inc.,

    Defendants,

Douglas A. Kelley,

    Receiver,

Gary Hansen,

    Receiver.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 08-5348 ADM/JSM

---

Steven E. Wolter, Esq., Kelley Wolter & Scott, P.A., Minneapolis, MN, on behalf of Receiver Douglas A. Kelley.

Jennifer S. Wilson, Esq., Kelly & Berens, P.A., Minneapolis, MN, on behalf of Ritchie Special Credit Investments, Ltd., Rhone Holdings II., Ltd., Yorkville Investment I, L.L.C., Ritchie Capital Structure Arbitrage Trading, Ltd., and Ritchie Capital Management L.L.C.

Assistant United States Attorneys Gregory G. Brooker and Surya Saxena, Minneapolis, MN, on behalf of Plaintiff United States of America.

_____

## I. INTRODUCTION

This Order concerns four requests [Docket Nos. 1201, 1214, 1218, and 1222] by Receiver Douglas A. Kelley ("Receiver Kelley") to authorize interim payment for legal and accounting services provided to the receivership. The first request [Docket No. 1201] relates to the January 2010 fees and costs of forensic accountants Pricewaterhouse Coopers LLP ("PwC"). The Response [Docket No. 1209] of Plaintiff United States of America ("the Government") and the Objection [Docket No. 1207] of Ritchie Special Credit Investments, Ltd., Rhone Holdings II., Ltd., Yorkville Investment I, L.L.C., Ritchie Capital Structure Arbitrage Trading, Ltd., and Ritchie Capital Management L.L.C. (collectively "Ritchie") are summarized in the Court's July 6, 2010 Order [Docket No. 1235 ] at 1-2. This request was orally argued on July 1, 2010, and taken under advisement pending the filing by PwC of an affidavit [Docket No. 1239] attesting to the value of PwC's services to the receivership and PwC's projected future services and fees. Id. at 4.

The remaining three requests [Docket Nos. 1214, 1218, and 1222] were orally argued on July 7, 2010. The Government's Response [Docket No. 1236] to the Motions states the Government is satisfied with the level of specificity Receiver Kelley has provided regarding the tasks, services and work for which compensation is being requested and therefore does not oppose the fee petitions.

Ritchie's Objection [Docket No.1233] renews Ritchie's previously asserted objections to: (1) the fee approval procedures established for this receivership; (2) Receiver Kelley's delay in

seeking compensation for himself and his agents; and (3) Receiver Kelley's use, if any, of funds from corporate or individual receivership accounts to pay for services performed on behalf of individuals whose receivership funds have been depleted. Ritchie also objects to the fees incurred by the receivership in investigating potential avoidance actions ("clawback actions") to recover from net winners[1] of the Ponzi scheme carried out by Defendant Petters. Ritchie contends the clawback actions will benefit the bankruptcy estates of Petters Company, Inc. ("PCI") and other Petters related entities (collectively, the "Bankruptcy Debtors") placed into bankruptcy by Receiver Kelley, and will not benefit the receivership. Ritchie also questions whether the proceeds from the clawback actions would be sufficient to compensate the receivership for the expense incurred in investigating the actions. The Court required the Receiver to file a supplemental brief ("Receiver's Response") [Docket No. 1245] to address issues raised by Ritchie at the July 7, 2010 hearing, and allowed Ritchie to file a Supplemental Memorandum [Docket No. 1255] in response. The Court bases its ruling on the arguments of counsel and all pleadings filed in this matter.

## II. BACKGROUND

The background of this civil receivership case, including the Court's procedures for approving fee applications charged to the receivership estate, is set forth in the Court's Memorandum Opinion and Order of September 1, 2009 [Docket No. 536] and is incorporated by reference.[2] Additional background concerning PwC's role in the receivership case is useful for

---

[1] "Net winners" are investors in the Ponzi scheme who received more cash than their total principal investment. See Martens Aff. [Docket No. 1239] ¶ 77.

[2] Fee applications for services provided to the receivership estate must also comply with the procedures outlined in a Joint Report submitted by the Receiver and the Government. See

the purposes of this Order,.

Receiver Kelley retained PwC in November, 2008, approximately a month after the receivership was established, to provide forensic accounting services to assist in the unraveling of the fraudulent scheme orchestrated by Defendant Petters. Martens Aff. [Document No. 1239] at ¶¶ 2, 4. Pursuant to this undertaking, PwC "untangled and summarized" a massive amount of transactional data that has since been used by the Receiver, Government, criminal defense team, IRS, and FBI.[3] Id. ¶ 79. Services performed by PwC included gathering the equivalent of approximately 215,000 bankers' boxes of hard copy data and electronically stored information and loading the data into a centralized database for processing, id. ¶¶ 25, 45-46; creating an inventory of bank accounts used by Petters related entities, individual defendants, and other relevant parties, id. ¶ 38; analyzing the flow of funds between investors and various Petters entities, id. ¶¶ 20-25, 58-71; preserving additional IT assets for potential future discovery requests, id. ¶ 25; conducting background checks and public records searches regarding various individuals and entities, id. ¶¶ 55-57; and performing tax services for Petters related entities and individuals under the receivership. Id. ¶¶ 72-75. The forensic accounting identified $780.3 million in potential clawback actions against net winners of the Ponzi scheme, and at least $9.7 million in potentially recoverable contributions to various universities. Id. ¶ 77. Receiver

---

Mem. Opinion & Order, March 5, 2010 [Docket No. 956] at 6 (adopting fee proposal in Joint Report [Docket No. 945] at 2-3).

[3] The Government has been separately invoiced for their use of data collected and organized by PwC. Martens Aff. ¶ 54. Additionally, charges for Defendant Petters' defense team's use of PwC services and data are clearly delineated in the PwC billing statements. Receiver Kelley's counsel informed the Court at a July 27, 2010 hearing that a directors and officers insurance policy will reimburse the receivership for payment of up to $169,000 in PwC fees and costs incurred by Petters' defense.

Kelley seeks approval of fees for these services and those of other professionals performing work on behalf of the receivership.

## III.  DISCUSSION

### A.     Benefit to the Receivership Estate

Ritchie argues that most of the services performed by PwC do not benefit the receivership but instead benefit the Bankruptcy Debtors.  Receiver Kelley responds that he retained PwC to provide forensic work on behalf of all 100-plus entities owned directly or indirectly by Defendant Petters, and that the analyzed transactions typically involved multiple entities through which funds passed.  Thus, Receiver Kelley argues PwC's services provided a benefit the receivership as well as the Bankruptcy Debtors.

The Court finds the comprehensive and complex forensic audit performed by PwC benefitted the receivership estate by:  (1) enabling Receiver Kelley to responsibly perform his duties as receiver, (2) identifying transfers which have been recovered by Receiver Kelley for the benefit of the receivership, and (3) identifying potential clawback actions which may be brought by Receiver Kelley.  The Receivership Order requires Receiver Kelley to take control of all assets belonging to the Defendants or under the Defendants' control, and authorizes him to "sue for, collect, receive, [and] take in possession" the Defendants' assets.  Receivership Order at 13.  Receiver Kelley retained PwC to assist him in carrying out these duties.  The services performed by PwC, including the tracing and unwinding of over 80,000 bank transactions through which over $91 billion flowed between Petters entities and third parties, see Martens Aff. ¶ 7, have equipped Receiver Kelley with a comprehensive overview and understanding of the numerous receivership entities and assets as well as the interrelationship and transactional

flow between receivership entities.  This overview is necessary for Receiver Kelley to make informed decisions and take the proper actions in collecting, maintaining, controlling, and suing for receivership assets.

The receivership has also benefitted from PwC's identification of transactions which may be avoided for the benefit of the receivership estate.  To date, Receiver Kelley has recovered for the benefit of the receivership nearly $8 million in settled claims based on transactions identified by PwC.  See Order Approving Settlement [Docket No. 1292] (approving settlement payment of $900,000 to receivership); Order Approving Settlement [Docket No. 1150] (approving settlement payment of $5,000,000 to receivership); Order Approving Settlement [Docket No. 1149] (approving settlement payment of $2,000,000 to receivership).  The receivership stands to further benefit from PwC's identification of potential clawback actions against "net winners" of the Ponzi scheme, as some of the actions may be pursued on behalf of receivership entities.  Accordingly, the Court will approve fees for PwC services that were reasonable and necessary in conducting the forensic accounting.

**B.      Approved Fees**

The Court's *in camera* review of the billing statements underlying the fee petitions of Kelley, Wolter & Scott, P.A., and Lindquist & Vennum, LLP ("Lindquist & Vennum") results in a finding that, with the exception of two billing entries by Lindquist & Vennum, the services and expenses billed were reasonable and necessary.  Lindquist & Vennum's fees are reduced by $675 for services billed on February 4, 2010 that appear to relate to claims in the PCI bankruptcy case, and are also reduced by $75 for services billed on February 10, 2010 that do not provide a clear benefit to the receivership estate.

The fees requested for PwC will be reduced by $20,300 in January and $8,000 in February, 2010 for the attendance of multiple PwC personnel at Receiver meetings and interviews with Petters entities' employees; unnecessarily large inter-company meetings; and the use of overly qualified staff to perform lower level tasks.[4] Compensation is also disallowed in the amount of $43,691 for January and $35,911 for February, 2010 for time spent preparing the billing statements. Meal expense entries exceeding $25 per person are reduced by a total of $120.66 for January and $25 for February, 2010. User license fees for the Stratify database created by PwC are reduced by $816 per month in January and February, 2010 because sixteen PwC employees were included in the number of user licenses purchased by the receivership. Data hosting expenses of $5,734.80 in January and data hosting and processing expenses of $8,186.06 in February, 2010 for the Stratify database are denied as unreasonable based on the amount already expended to create the database.[5] Finally, charges to retrieve court documents and review court filings are disallowed in the amounts of $561 in January and $2,757.50 in February, 2010 because the Receiver is adequately represented by counsel.

---

[4] The PwC billing statement contains several billing entries for managers or senior associates who performed services that were identical to tasks performed by junior level associates. For example, a senior associate charging $340 per hour and a lower level associate charging $260 per hour both billed for a task described as "[d]evelop custodian by date statistical analysis report of Stratify emails and user files." Similarly, managers and senior associates charged their standard rates to perform Stratify searches that were identical or similar to searches performed by junior associates at lower rates. In such instances, the hourly rate charged by the manager or senior associate will be reduced to that of the junior associate performing similar or identical tasks.

[5] The Receiver has filed a motion [Docket No. 1246] to reconsider payment of data processing expenses. The motion was argued on July 27, 2010 and remains under advisement. Until the Court rules on the motion to reconsider, requests for payment of data processing will continue to be denied.

### C. Additional Information Required

The affidavit attesting to the value of PwC's services provides sufficient information for the Court to determine the reasonableness of the PwC fee petitions currently before it. However, the Court will require PwC to provide a supplemental affidavit that provides further detail concerning the projected timeframe and nature of PwC future services. The projection in the recent affidavit anticipates that approximately $765,000 per month in PwC fees and expenses will be incurred by performing work "for the Receiver and Trustees," but does specify how the work and corresponding fees will be apportioned among the receivership and the bankruptcy cases. See Martens Aff., Ex. A. Additionally, the timeframe for future services does not state whether PwC anticipates providing services to the receivership after 2010. A supplemental affidavit is required to clarify these ambiguities.

### IV. CONCLUSION

Based on Receiver Kelley's recommendations, the pleadings included herein, and the invoices submitted for the Court's *in camera* review, **IT IS HEREBY ORDERED** that:

A. Receiver Kelley's motion is **GRANTED** as to Docket No. 1214 and **GRANTED IN PART** and **DENIED IN PART** as to Docket Nos. 1201, 1218, and 1222.

Receiver Kelley is authorized to make payments as follows:

1. Kelley Wolter & Scott, P.A.      $268,402.46

2. Lindquist & Vennum, PLLP      $108,016.55

3. Pricewaterhouse Coopers LLP      $1,188,661.42[6]

---

[6] This amount represents the total fees approved for PwC services provided in January and February, 2010.

B. On or before August 25, 2010, PwC shall submit a supplemental affidavit attesting to the delineation of anticipated future services to the receivership and bankruptcy estates, and providing a more detailed timeline for the duration and completion PwC's services to the receivership.

C. Receiver Kelley is directed to seek reimbursement of the foregoing sum to the extent possible under applicable insurance policies, including directors and officers liability policies maintained by Petters Company Inc., Petters Group Worldwide, LLC or any other related entity.

BY THE COURT:


    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: August 11, 2010.