# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,

                    Plaintiff,

            v.                                              **MEMORANDUM OPINION
                                                           AND ORDER**
                                                           Civil No. 08-5348 ADM/JSM

Thomas Joseph Petters; Petters Company,
Inc., a/k/a PCI; Petters Group Worldwide, LLC;
Deanna Coleman, a/k/a Deanna Munson;
Robert White;
James Wehmhoff;
Larry Reynolds, and/or dba Nationwide International
Resources, aka NIR;
Michael Catain and/or dba Enchanted
Family Buying Company;
Frank E. Vennes, Jr., and/or dba Metro Gem
Finance, Metro Gem, Inc., Grace Offerings
of Florida, LLC, Metro Property Financing,
LLC, 38 E. Robinson, LLC, 55 E. Pine, LLC,
Orlando Rental Pool, LLC, 100 Pine Street
Property, LLC, Orange Street Tower, LLC,
Cornerstone Rental Pool, LLC, 2 South
Orange Avenue, LLC, Hope Commons, LLC,
Metro Gold, Inc.,

                    Defendants,

Douglas A. Kelley,

                    Receiver,

Gary Hansen,

                    Receiver.

_____

Steven E. Wolter, Esq., Kelley Wolter & Scott, P.A., Minneapolis, MN, on behalf of Receiver
Douglas A. Kelley.

Jennifer S. Wilson, Esq., Kelly & Berens, P.A., Minneapolis, MN, on behalf of Ritchie Special
Credit Investments, Ltd., Rhone Holdings II., Ltd., Yorkville Investment I, L.L.C., Ritchie
Capital Structure Arbitrage Trading, Ltd., and Ritchie Capital Management L.L.C.

Assistant United States Attorney Surya Saxena, Minneapolis, MN, on behalf of Plaintiff United States of America.

---

## I.  INTRODUCTION

On August 3, 2010 the Court heard oral argument on the requests [Docket Nos. 1256, 1260, and 1265] of Receiver Douglas A. Kelley ("Receiver Kelley") to authorize interim payments for legal and accounting services provided to the receivership.

Plaintiff United States of America ("the Government") filed a Response [Docket No. 1277] stating its lack of opposition to the Motions.  The Government is satisfied with the level of transparency achieved by Receiver Kelley's public filing of redacted billing statements underlying the fee requests.  The Government also considers the work performed by Receiver Kelley and his retained professionals to be necessary and justified given the complexity of the work and the benefit realized by the receivership estate.

Ritchie Special Credit Investments, Ltd., Rhone Holdings II., Ltd., Yorkville Investment I, L.L.C., Ritchie Capital Structure Arbitrage Trading, Ltd., and Ritchie Capital Management L.L.C. (collectively "Ritchie") filed an Objection ("Ritchie Objection") [Docket No. 1295] to the Motions.  Ritchie contends: (1) fees generated by Receiver Kelley and his counsel Lindquist & Vennum PLLP ("Lindquist & Vennum") relating to forfeiture, restitution, remission, and a coordination plan should be denied as unnecessary because Receiver Kelley is not authorized to take a position on how the receivership assets should be distributed; (2) fees charged by Lindquist & Vennum relating to a motion to amend the receivership order should be denied because the motion did not appear to have been for the benefit of the receivership and was never filed; and (3) fees charged by PricewaterhouseCoopers ("PwC") should be reduced for instances

where tasks performed by accountants that could have been done by paraprofessionals at a lower hourly rate; for excessive charges for meetings; and for services that are more properly billed in the related bankruptcy cases.  Ritchie also argues Kelley, Wolter & Scott, P.A. should be required to submit task based billing statements instead of a block billing formatted statement.

## II.  BACKGROUND

The background of this civil receivership case, including the Court's procedures for approving fee applications charged to the receivership estate, is set forth in the Court's Memorandum Opinion and Order of September 1, 2009 [Docket No. 536] and is incorporated by reference.[1]

## III.  DISCUSSION

### A.  Kelley, Wolter & Scott, P.A.

Ritchie objects to services performed by Kelley, Wolter & Scott, P.A. relating to forfeiture, restitution, a receivership wind down plan, and a coordination plan encompassing the bankruptcy, receivership, and criminal cases.  Ritchie argues Receiver Kelley lacks the authority to advocate for how restitution should be awarded or how receivership assets should be distributed.  Receiver Kelley's authority over receivership assets includes the power to "sue for, collect, receive, take into possession, hold, liquidate or sell and manage all assets of Defendants[.]"  See 2d Am. Order for Prelim. Inj., Appointment of Receiver, and Other Equitable Relief [Docket No. 127].  The Coordination Agreement ultimately reached between Receiver

---

[1] Fee applications for services provided to the receivership estate must also comply with the procedures outlined in a Joint Report submitted by the Receiver and the Government.  See Mem. Opinion & Order, March 5, 2010 [Docket No. 956] at 6 (adopting fee proposal in Joint Report [Docket No. 945] at 2-3).

Kelley, the Government, and the bankruptcy trustees for Polaroid Corporation, Petters Company, Inc., and Petters Group Worldwide, LLC ("PGW") seeks to avoid "competing litigation [that] would result in the overall diminishment of the recovery for victims and creditors alike and [cause] undue delay in the distribution of assets[.]" Uphoff Aff. [Docket No. 1351] Ex. A ("Coordination Agreement") at 3.[2] The Coordination Agreement establishes a wind down plan for the receivership by identifying which categories of assets will be administered through the receivership, which will be distributed through the bankruptcy estates, and which will be administered through the forfeiture and remission process. Id. at 4-10. The Coordination Agreement does not contain a distribution schedule. The services described in the billing statements and the substance of the resulting Coordination Agreement do not reflect a position of advocacy taken by Receiver Kelley, but instead evince efforts by Receiver Kelley to conserve receivership assets and wind down the receivership estate. These activities fall squarely within Receiver Kelley's authority to manage receivership assets, and the services were necessary and beneficial to the receivership estate. Therefore, this portion of Ritchie's objection is overruled.

Ritchie also objects to the block billing format used by Kelley, Wolter & Scott and urges the Court to require the firm to specify the amount of time spent on each individual task billed. The Government joins this portion of Ritchie's Objection. Because this request provides additional transparency at a minimal cost to the receivership, the Court will require Kelley, Wolter & Scott, P.A. to submit task based billing statements that specify to the extent reasonably practicable the amount of time spent on each itemized task. The task based billing format will be

---

[2] A motion to approve the Coordination Agreement is scheduled for oral argument in a joint hearing before the District and Bankruptcy Courts on September 14, 2010. See Am. Notice of Hr'g [Docket No. 1370].

required for all services performed after the date of this Order.

### B. Lindquist & Vennum

The Court finds that, with the exception of $495 that was inadvertently billed to the receivership instead of the related bankruptcy cases, all services billed by Lindquist & Vennum were reasonable, necessary, and beneficial to the receivership. Ritchie's objection to fees relating to the Coordination Agreement is overruled for the reasons stated above. Ritchie also objects to fees relating to a motion that was never filed. At the hearing, Receiver Kelley's counsel represented that the purpose of the motion was to clarify Receiver Kelley's authority under the Receivership Order to initiate clawback litigation. The motion was abandoned upon determining that clawback actions would instead be filed in the related bankruptcy cases. Lindquist & Vennum's good faith pursuit of a legal course of action that was ultimately abandoned will be compensated.

### C. PwC

Ritchie argues PwC's fees must be reduced for services provided by accountants that could have been performed by paraprofessionals at a lower hourly rate. However, the Court is not persuaded that paraprofessionals are equipped with the proper knowledge and training to adequately perform the tasks identified by Ritchie.

The Court will also overrule the portion of Ritchie's objection relating to the number of hours billed for meetings. While the amount of time charged for meetings and telephone conferences is significant, the enormous volume of data involved in PwC's forensic audit requires a large staff, which in turn necessitates coordination and communication among PwC personnel. The meetings identified in Ritchie's objection do not involve large groups of staff,

and most of the meetings are less than an hour in length.  Therefore, this portion of Ritchie's objection is overruled.

Ritchie also identifies two categories of PwC services it argues should be billed in the related bankruptcy cases.  The first service category, relating to PGW tax filings, is properly billed to the receivership based on the potential liability of the receivership and of Receiver Kelley personally for unmet tax obligations of PGW.  The second service category, titled "Bankruptcy Requirements and Obligations," relates to the preparation of PwC's billing statements.  Consistent with the Court's practice of routinely denying services billed in this category, compensation is disallowed in the amount of $23,774.50.

PwC's requested fees are further reduced as follows: a deduction of $5,380 is made for instances where managers or senior associates performed tasks similar to those performed by junior associates;[3] meal expense entries exceeding $25 per person are reduced by a total of $128; and charges to retrieve court documents, review court filings, and research a legal concept are disallowed in the amount of $673.50.  Finally, a reduction of $46,800 is made for numerous billing entries related to data loading, data processing, and quality control.  The tasks appear to duplicate the extensive and costly services already being performed by Stratify to create a centralized electronic discovery database.  For example, PwC billing entries such as "[l]oad . . . replacement bank transactions into database," "[r]econcile and verify latest bank transaction data loaded into database," and "[r]eview contribution analysis and perform quality check," appear to

---

[3] The hourly rates charged by senior level staff to conduct Stratify searches, prepare documents for delivery to Stratify, Inc. ("Stratify"), update a Map file, and perform voicemail backup analyses will be reduced to the rate of the junior associate performing similar or identical tasks.

overlap with Stratify's per-gigabyte charges for loading over 1358 gigabytes of data into the

Stratify Legal Discovery software, Whetstone Aff. [Docket No. 1248] ¶ 13, and for "data

processing and conceptually organizing . . .; data exception handling and quality control

inspection; . . . quality control and site inspections to ensure proper data migration; . . . creating

production set specifications, managing production branding and load file conversions, and

conducting quality control inspections prior to delivery of the production media." Id. ¶ 14.

Accordingly, PwC's services relating to data loading, processing, and quality control will not be

compensated.

## IV.  CONCLUSION

Based on Receiver Kelley's recommendations, the pleadings included herein, and the

invoices submitted for the Court's *in camera* review,  **IT IS HEREBY ORDERED** that:

1.    Receiver Kelley's motion is **GRANTED** as to Docket No. 1256 and **GRANTED**

   **IN PART** and **DENIED IN PART** as to Docket Nos. 1260 and 1265.  Receiver

   Kelley is authorized to make payments as follows:

        a.  Kelley, Wolter & Scott, P.A.            $206,417.26

        b.  Lindquist & Vennum, PLLP              $81,858.71

        c.  PricewaterhouseCoopers LLP            $654,761.25

2.    Kelley, Wolter & Scott, P.A. shall provide task based billing statements for all

   services performed after the date of this Order.

3.    Receiver Kelley is directed to seek reimbursement of the foregoing sum to the

   extent possible under applicable insurance policies, including directors and

   officers liability policies maintained by Petters Company Inc., Petters Group

Worldwide, LLC or any other related entity.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  August 31, 2010.