United States of America,

    Plaintiff,

 v.

Thomas Joseph Petters; Petters Company,
Inc., a/k/a PCI; Petters Group Worldwide, LLC;
Deanna Coleman, a/k/a Deanna Munson;
Robert White;
James Wehmhoff;
Larry Reynolds, and/or dba Nationwide International
Resources, aka NIR;
Michael Catain and/or dba Enchanted
Family Buying Company;
Frank E. Vennes, Jr., and/or dba Metro Gem
Finance, Metro Gem, Inc., Grace Offerings
of Florida, LLC, Metro Property Financing,
LLC, 38 E. Robinson, LLC, 55 E. Pine, LLC,
Orlando Rental Pool, LLC, 100 Pine Street
Property, LLC, Orange Street Tower, LLC,
Cornerstone Rental Pool, LLC, 2 South
Orange Avenue, LLC, Hope Commons, LLC,
Metro Gold, Inc.,

    Defendants,

Douglas A. Kelley,

    Receiver,

Gary Hansen,

    Receiver.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 08-5348 ADM/JSM

---

James A. Lodoen, Esq., Lindquist & Vennum, P.L.L.P., Minneapolis, MN, and Steven E. Wolter, Esq., Kelley Wolter & Scott, P.A., Minneapolis, MN, on behalf of Receiver Douglas A. Kelley.

Thomas H. Boyd, Esq., and Michael A. Rosow, Esq., Winthrop & Weinstine, P.A., Minneapolis, MN, on behalf of Asset Based Resource Group, L.L.C., as successor servicer to Acorn Capital Group, L.L.C.

Gregory G. Brooker and Surya Saxena, Assistant United States Attorneys, Minneapolis, MN, on behalf of Plaintiff United States of America.

_____

## I.  INTRODUCTION

On September 8, 2010, the Court heard oral argument on the Motion [Docket No. 1272] by Asset Based Resource Group, L.L.C., as successor servicer to Acorn Capital Group, L.L.C.'s ("Acorn") to terminate the existing receivership as to Petters Aircraft Leasing, LLC ("PAL") or, alternatively, to appoint an independent receiver.  The parties requested and were granted an opportunity to submit supplemental briefing [Docket Nos. 1529, 1530, and 1533].  The matter was taken under advisement on October 7, 2010.

Plaintiff United States of America ("the Government") objects to the Motion.  See Pl.'s Mem. of Law in Opp. [Docket No. 1439].  The Government argues PAL must remain in the existing receivership to ensure PAL's assets are marshaled and preserved until they can be equitably distributed to good faith creditors, with any remaining assets remitted to Ponzi scheme victims.  The Government further argues Receiver Douglas A. Kelley's ("Receiver Kelley" or "Kelley") control over multiple receivership entities does not result in a conflict of interest at this time and is necessary to provide a comprehensive perspective of the receivership assets. Receiver Kelley also objects to Acorn's Motion and joins in the Government's arguments opposing the Motion.  See Receiver's Obj. to Mot. [Docket No. 1448].

Based on the arguments of counsel and all the files, records and proceedings herein, and for the reasons set forth below, the Court denies the Motion.

## II.  BACKGROUND

The Government commenced a receivership under 18 U.S.C. § 1345 to restrain the assets

of the named Defendants, as well as any affiliates, subsidiaries, divisions, successors, or assigns that are owned 100% or controlled by them. The Defendants were accused of committing mail fraud, wire fraud, and banking law violations by operating a massive Ponzi scheme involving over three billion dollars. See Rice Aff. [Docket No. 5] at 1-2, 20. The asset freeze was imposed to preserve the Defendants' assets for restitution[1] and forfeiture if the related criminal actions resulted in convictions. In the months following the filing of this case, all but one of the individual Defendants who were charged with a crime[2] pleaded guilty to the charges against them. The sole exception was Defendant Thomas Joseph Petters ("Defendant Petters"), who was convicted in December 2009, after a jury found him guilty of all twenty counts relating to the fraudulent scheme. He was sentenced to fifty years in prison and is appealing his conviction and sentence. In September 2010, corporate Defendants Petters Company, Inc. ("PCI") and Petters Group Worldwide LLC ("PGW") entered pleas of guilty to the charges against them.

The enjoined assets are subject to a receivership directed by Receiver Kelley.[3] See Second Am. Order for Entry of Prelim. Inj., Appointment of Receiver, and Other Equitable

---

[1] A request for a restitution order was denied in the criminal proceedings because the burden restitution would have imposed on the court outweighed the benefit victims would have realized on their restitution claims. See United States v. Petters, 08-364 RHK/AJB (D. Minn.) ("Petters Criminal Case"), Order, June 3, 2010 [Petters Criminal Case Docket No. 459]. Instead, victims were allowed a recovery through the bankruptcy process or the remission of forfeited assets under 28 C.F.R. § 9.8. Id. at 9-11. A Coordination Agreement to facilitate this process was approved on September 14, 2010. See Order Approving Coordination Agreement [Docket No. 1466], Sept. 13, 2010; Uphoff Aff. [Docket No. 1351] Ex. A (Coordination Agreement).

[2] Defendant Frank E. Vennes, Jr. ("Defendant Vennes") has not been charged with a crime.

[3] A separate receivership was created for the assets of Defendant Vennes. See Order for Entry of Prelim. Inj., Appointment of Receiver, and Other Equitable Relief, Oct. 16, 2008 [Docket No. 59]. The Vennes receivership is not the subject of the present motion.

Relief ("the Receivership Order"), Dec. 8, 2008 [Docket No. 127] at 13. The Receivership Order imposes a stay of litigation against the Defendants and the receivership assets. Id. at 19-20. The scope of the receivership includes, *inter alia*, all entities 100% owned or controlled by Defendant Petters. Receiver Kelley is required to "sue for [and] collect . . . all assets of the Defendants and other persons or entities whose interests are now held by or under the direction, custody, or control of Defendants." Receivership Order at 12-13. At least sixty entities were 100% owned or controlled by Defendant Petters. See Fornwald Aff. [Docket No. 1275] Ex. A (providing organizational chart of Petters entities). To assist Receiver Kelley, a forensic accounting firm was retained to untangle the voluminous transactional history among the numerous Petters entities and their creditors and investors. See Martens Aff. [Docket No. 1391] (describing duties performed by forensic accountants). The forensic analysis is anticipated to be completed by December 31, 2010. Id. at 5.

In the wake of the collapse of the Ponzi scheme, a number of Defendant Petters' wholly owned corporations or their subsidiaries filed for bankruptcy protection. See Fornwald Aff., Ex. A. PCI and PGW, both wholly owned by Defendant Petters, are currently in Chapter 11 bankruptcy. The bankruptcy court appointed Kelley to serve as the trustee for these estates because the former management was removed when the Petters receivership was established. Petters Aviation, LLC ("Petters Aviation") and its wholly owned subsidiary a MN Airlines, LLC, dba Sun Country ("Sun Country") also filed for Chapter 11 bankruptcy. The management of those entities remains intact, and those estates operate as debtors in possession. Sun Country recently emerged from bankruptcy upon confirmation of its Chapter 11 plan. A Chapter 11 plan has not been confirmed in the Petters Aviation bankruptcy case.

PAL is a wholly owned subsidiary of Petters Aviation. Petters Aviation is 100% owned by Thomas Petters, Inc. ("TPI"), which in turn was wholly owned by Defendant Petters. See Id. PAL is not in bankruptcy. PAL's assets consist primarily of 1) $3 million in cash proceeds from the Court-approved sale of two aircraft, and 2) approximately one third of the stock in the newly reorganized Sun Country. Receiver's Obj. [Docket No. 1448] at 4. PAL's estimated creditor list contains five creditors, with Acorn and PCI appearing as the two largest creditors. Kelley Aff. [Docket No. 1449] Ex. B. PAL's estimated obligations to Acorn total over $25 million for loan proceeds and accrued interest. Id. PAL's obligations to PCI are estimated at approximately $2.6 million for an advance and interest. Id. Together, the amounts potentially owed to Acorn and PCI comprise approximately 95% of PAL's estimated obligations to creditors. Id.

## III. DISCUSSION

**A.    Request to Terminate Receivership as to PAL**

Acorn argues PAL should be excluded from the receivership because PAL did not participate in the Ponzi scheme, PAL's assets have not been traced to the fraud, and PAL's assets are ripe for liquidation and distribution to creditors.

**1.    Harm to PAL**

First, Acorn argues PAL's inclusion in the receivership is not justified, because PAL was not harmed by Defendant Petters' fraud and does not need Receiver Kelley's protection. This argument fails to recognize that the purpose of the receivership is to protect good faith creditors and victims by preventing dissipation of the Defendants' assets and the assets of entities 100% owned or controlled by them. At its root, PAL was owned by Defendant Petters. Thus, PAL's assets are properly included in the receivership to preserve their value until an equitable

distribution can be made to good faith creditors and victims.

### 2. Tracing Requirements

Second, Acorn urges that PAL's assets cannot be included in the receivership because they are not traceable to the fraud.

#### a. PAL's Assets are Traceable to the Fraud.

PAL's assets, which include approximately one third of the stock in the reorganized MN Airlines, LLC (a/k/a Sun Country), are traceable to the fraudulent scheme. Kelley's counsel has represented to the bankruptcy court that Sun Country "benefitted from the fraud because that provided the ongoing funding for the Sun Country airlines for an extended period of time." Fornwald Aff., Ex. E at 4. Counsel further represented that "money [from Defendant Petters' fraud] came into the aviation cases. Money wasn't taken back out in any material way." Id., Ex. E at 6. As such, PAL's assets include the fruits of the fraud.

#### b. PAL's Assets are Property of Reasonably Equivalent Value.

Not only are PAL's assets treaceable to the fraud, they serve as "property of reasonably equivalent value" to property obtained as the result of the Defendants' banking law violations. These violations perpetuated a fraudulent scheme through which the Defendants obtained over $3 billion in fraudulent proceeds. The statutory text of 18 U.S.C. § 1345(a)(2)(B) expressly authorizes a court to restrain property of equivalent value to property obtained by or traceable to a banking law violation. The provision reads:

> (2) If a person is alienating or disposing of property . . . obtained as
> a result of a banking law violation . . . or property which is traceable
> to such violation, the Attorney General may commence a civil action
> in any Federal court--
>
> . . .

> (B) for a restraining order to--
>
>> (i) prohibit any person from withdrawing, transferring, removing, dissipating or disposing of any such property *or property of equivalent value*; and
>
>> (ii) appoint a temporary receiver to administer such restraining order.

18 U.S.C. § 1345(a)(2) (emphasis added). See also United States v. Fang, 937 F. Supp. 1186, 1195 (D. Md. 1996) ("[Subparagraph (a)(2)(B) of § 1345] was added to specifically provide that, in banking fraud situations, the Attorney General may obtain an injunction to freeze accounts or their equivalent value."); United States v. Sriram, 147 F. Supp. 2d 914, 947 (N.D. Ill. 2001) (noting the language of 18 U.S.C. § 1345(a)(2)(B)(i) allows a court to freeze property of equivalent value if traceable property is unavailable). The language allowing a court to restrain property of equivalent value does not appear by accident. Subsection (a)(2)(B) was added by Congress in 1990 to enhance the Justice Department's ability to protect property and assets from being dissipated and to expand the remedies available under 18 U.S.C. § 1345. H.R. REP. NO. 101-681(I), at 184(1990), reprinted in 1990 U.S.C.C.A.N. 6472, 6584.

The Petters receivership and asset freeze was established because the Defendants were alienating and disposing of over $3 billion in property obtained as a result of banking law violations. PAL's assets represent property of equivalent value to that obtained through the Defendants' banking law violations. As such, PAL is properly included in the receivership.

Cases cited by Acorn for the proposition that restrained assets must be traceable to the fruits of the fraud and not simply of equivalent value are distinguishable from the present factual context. First, most of Acorn's cited cases did not involve violations that triggered subsection

7

(a)(2)(B); the assets in those cases were frozen under subsections (a)(1)[4] and (b)[5] of § 1345 which, unlike subsection (a)(2)(B), do not expressly provide for the restraint of "property of equivalent value." See United States v. Brown, 988 F.2d 658, 663 (6th Cir. 1993) (imposing an asset freeze under 18 U.S.C. § 1345(a)(1) and (b) for non-banking law violations); United States v. Quadro Corp., 916 F. Supp. 613, 619 (E.D. Tex. 1996) (relying on § 1345 for authority to freeze assets related to an alleged fraud in non-banking cases); United States v. Payment Processing Ctr, LLC, 435 F. Supp. 2d 462, 465-66 (E.D. Pa. 2006) (freezing assets under §

---

[4] Subsection (a)(1) provides, in relevant part:

(a)(1) If a person is--

(A) violating or about to violate this chapter or section 287, 371 . . . or 1001 of this title;

(B) committing or about to commit a banking law violation . . . ; or

(C) committing or about to commit a Federal health care offense;

the Attorney General may commence a civil action in any Federal court to enjoin such violation.

18 U.S.C. § 1345(a)(1).

[5] Subsection (b) provides, in relevant part:

(b) The court shall proceed as soon as practicable to the hearing and determination of such an action, and may, at any time before final determination, enter such a restraining order or prohibition, or take such other action, as is warranted to prevent a continuing and substantial injury to the United States or to any person or class of persons for whose protection the action is brought. . . .

18 U.S.C. § 1345(b).

1345(a)(1) and (b); United States v. Jones, 652 F. Supp. 1559, 1560 (S.D.N.Y. 1986) (interpreting a pre-1990 version of § 1345 that did not yet include subsection (a)(2)(B)). The lone case cited by Acorn that did involve an asset freeze imposed under subsection (a)(2)(B) held that assets may be frozen in an amount equal to the fraud, but the scope of the asset freeze cannot exceed the amount of the fraud by including included trebled damages and civil penalties. See Sriram, 147 F. Supp. 2d at 947 ("[T]he statutory language [of 18 U.S.C. § 1345(a)(2)(B)(i)] states that what may be frozen is 'property which is traceable' to the predicate violation, or if that property is unavailable, property 'of equivalent value.'").

In short, PAL's assets are properly included in the receivership as property that is 1) traceable to or 2) of equivalent value to the $3 billion obtained by the Defendants as a result of banking law violations.

### 3. Ripeness for Distribution

Acorn's assertion that PAL should exit the receivership because PAL's assets are ripe for distribution is also unavailing. PAL is not distinguishable from myriad other receivership entities whose assets remain subject to the receivership until the fraudulent scheme is unraveled and good faith creditors and victims can be verified. The forensic accountants continue to trace the flow of fraudulent funds among numerous interrelated Petters entities to determine how each may have benefitted or been harmed by the long running fraudulent scheme. Removing PAL from the receivership would also lift the stay of litigation currently in place for PAL and its assets, making PAL vulnerable to litigation that would further dissipate its assets. Acorn's argument that there is no reason to assume that litigation will ensue is doubtful given the litigious history of PAL's creditors in these proceedings. Moreover, the stay of litigation is

intended to protect receivership assets from unanticipated litigation as well as litigation that is known or certain. For these and other reasons, it is neither equitable nor economical to elevate PAL's alleged creditors over those of other receivership entities or to allow PAL's assets to dissipate through a piecemeal liquidation outside the protections of the receivership.

**B.    Request to Appoint Separate Receiver**

Acorn further urges that if PAL continues to remain in the receivership, a separate receiver must be appointed to oversee PAL due to Receiver Kelley's allegedly disabling conflicts. Specifically, Acorn contends that it is prejudiced because Kelley, as trustee for PCI, is asserting a claim against PAL while, as receiver for PAL, he is "supposed to be protecting Acorn's interests as a creditor." Mem. of Law in Supp. of Mot. to Terminate Receiver [Docket No. 1530] at 12. Acorn contends that allowing PCI's claim prejudices Acorn because it dilutes the amount Acorn would receive upon a distribution of PAL's assets.

The issue of whether Kelley may serve as the single fiduciary steward to multiple Petters entities with cross-running claims is not novel to these proceedings. Recently, the Eighth Circuit affirmed the decision in the PCI bankruptcy case that Kelley's roles as receiver and as trustee for the PCI and PGW bankruptcy estates do not presently result in prejudice that would justify a separate fiduciary. See Ritchie Special Credit Invs., Ltd. v. U.S. Trustee, No. 09-3271, 2010 WL 3431833, *5-6 (8th Cir. Sept. 2, 2010).

In determining whether a single fiduciary serving multiple estates will prejudice creditors, the Eighth Circuit adopted the approach taken in In re BH & P Inc., 949 F.2d 1300 (3d

Cir. 1991).[6] See Ritchie, 2010 WL 3431833, at *6. The court in BH & P held that the inquiry requires a case-by-case evaluation of the facts and circumstances. In making such an evaluation,

> [T]he court should consider the full panoply of events and elements. The nature and extent of the conflict must be assayed, along with the likelihood that a potential conflict might turn into an actual one. An effort should be made to measure the influence the putative conflict may have in subsequent decisionmaking. Perceptions are important; how the matter likely appears to creditors and to other parties in legitimate interest should be taken into account.
>
> What counts is that the matter not be left either to hindsight or the unfettered desires of the parties involved, but that the [court] be given an immediate opportunity to make an intelligent appraisal of the situation and to apply [its] experience, common sense, and knowledge of the particular proceeding to the request. . . .

BH & P, 949 F.2d at 1312-13 (quoting In re Martin, 817 F.2d 175 at 182 (1st Cir. 1987)) (internal alterations omitted). Intercompany claims do not automatically require the appointment of a separate fiduciary. Id. at 1312 (noting that the advantages of joint administration by a single fiduciary weigh against a rule "that interdebtor claims mandate disqualification of the trustee in every instance.").

Applying its knowledge, experience and common sense to these unique proceedings, the Court finds the interests of all creditors and victims are best served by the economy, efficiency, and comprehensive oversight achieved through a single fiduciary, and that these interests outweigh Acorn's current assertions of prejudice. This case results from a complex fraudulent

---

[6] Although BH & P involved a challenge to a bankruptcy trustee's serving multiple bankruptcy estates, as opposed to the dual roles of receiver and trustee now at issue, the considerations of economy and efficiency apply with equal force here.

11

scheme which lasted more than a decade and affected numerous interrelated Petters entities through which fraudulent funds flowed. The circumstances require a single receiver to achieve a comprehensive understanding of what transpired and how to best administer the receivership estates. Appointing a separate receiver solely on the basis of intercompany claims has the potential to result in dozens of receivers litigating over a pool of assets that is sadly insufficient to compensate creditors and victims for their losses. As such, allegations of conflict stemming from intercompany claims are better resolved by less drastic and costly alternatives than the appointment of an additional receiver. For example, special counsel may be retained to represent a receivership entity in claims disputes where Kelley is also the receiver or trustee for the opposing entity.

The nature and extent of the conflict alleged by Acorn has not ripened to a degree which would warrant even an alternative remedy. The claimed prejudice asserted by Acorn presumably results from 1) an estimated creditor list that includes PCI as a potential creditor of PAL, and 2) the listing on PCI's bankruptcy schedules of an intercompany note owed from PAL to PCI. See Supplemental Mem. of Law [Docket No. 1530] at 8. However, the listing of these potential debts does not constitute a present demand by Kelley against PAL on behalf of PCI. In fact, Acorn describes Receiver Kelley as having "apparent uncertainty regarding what, if any, amounts are owed by Aircraft Leasing to PCI." Id. at 9. Given the unripe, if not uncertain, nature of the alleged conflicts, Acorn's assertions of prejudice do not warrant any of the requested relief at this time.

## IV.  CONCLUSION

For these reasons, **IT IS HEREBY ORDERED** that Acorn's Motion [Docket No. 1272] to terminate the receivership as to PAL or alternatively, to appoint an independent receiver is **DENIED.**

BY THE COURT:


     s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  November 16, 2010.