# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

v.

Thomas Joseph Petters; Petters Company,
Inc., a/k/a PCI; Petters Group Worldwide, LLC;
Deanna Coleman, a/k/a Deanna Munson;
Robert White; James Wehmhoff; Larry
Reynolds and/or d/b/a Nationwide International
Resources, a/k/a NIR; Michael Catain and/or d/b/a
Enchanted Family Buying Company;
Frank E. Vennes, Jr., and/or d/b/a Metro Gem
Finance, Metro Gem, Inc., Grace Offerings
of Florida, LLC, Metro Property Financing,
LLC, 38 E. Robinson, LLC, 55 E. Pine, LLC,
Orlando Rental Pool, LLC, 100 Pine Street
Property, LLC, Orange Street Tower, LLC,
Cornerstone Rental Pool, LLC, 2 South
Orange Avenue, LLC, Hope Commons, LLC,
Metro Gold, Inc.;

**MEMORANDUM OPINION AND ORDER**
Civil No. 08-5348 ADM/JSM

        Defendants,

Douglas A. Kelley,

        Receiver,

Gary Hansen,

        Receiver,

_____

Arlo H. Vande Vegte, Esq., Arlo H. Vande Vegte, P.A., Plymouth, MN, on behalf of Antoinette Reynolds.

Surya Saxena, Assistant United States Attorney, Minneapolis, MN, on behalf of Plaintiff.

Steven E. Wolter, Esq., Kelley, Wolter & Scott, P.A., Minneapolis, MN on behalf of Receiver Douglas A. Kelley.

_____

## I. INTRODUCTION

Before the Court is Antoinette Reynolds' ("A. Reynolds") request [Docket No. 1474] for payment of monthly living expenses from assets subject to a receivership and asset freeze imposed under 18 U.S.C. § 1345. The asset freeze includes all real and personal property belonging to Defendant Larry Reynolds ("Defendant Reynolds"), whom A. Reynolds describes as her former spouse.

Plaintiff United States of America ("the Government") has filed two Responses [Docket Nos. 1538, 1581] opposing the request. The Government argues that the frozen assets are subject to forfeiture in Defendant Reynolds' criminal case and that A. Reynolds has not shown she would suffer harm or prejudice if she does not receive living expense payments until her property interests can be adjudicated in an ancillary forfeiture proceeding.

Receiver Douglas A. Kelley ("Receiver Kelley") has also filed a Response [Docket No. 1582] in opposition, arguing: 1) the requested living expenses are excessive, and 2) any award of living expenses should be preconditioned on A. Reynolds' relinquishing receivership property, including a gold watch and art valued at more than $10,000.

## II. BACKGROUND

### A. Assets Restrained

The assets are subject to a stipulated receivership and asset freeze established in October 2008 due to Defendant Reynolds' involvement in a large-scale Ponzi scheme. See 2d Am. Order for Entry of Prelim. Inj., Appointment of Receiver, and Other Equitable Relief, Dec. 8, 2008 [Docket No. 127]. Shortly after the receivership and asset freeze were imposed, Defendant Reynolds pleaded guilty to conspiracy to commit money laundering in violation of 18 U.S.C. §

1956(h). United States v. Reynolds, 08-cr-320 (RHK) (D. Minn.) ("Criminal Case") Plea Agreement, Oct. 16, 2008 [Criminal Case Docket No. 6]. Defendant Reynolds admitted to laundering approximately $12 billion in order to conceal and continue the fraudulent scheme. Felony Information, Oct. 16, 2008 [Criminal Case Docket No. 1] at 2-3. He obtained more than $6 million for his role in the scheme. Id. at 3. As of October 2010, the balance in Defendant Reynolds' receivership account was approximately $1,030,345. Twelfth Status Report of Receiver Douglas A. Kelley [Docket No. 1536] at 6.

### B. Living Expense Payments Approved

In December 2008, the Court authorized Receiver Kelley to pay Defendant Reynolds' monthly living expenses from frozen assets. See Order, Dec. 16, 2008 [Docket No. 151] at 3 (releasing "living expenses to the individual defendants . . . to the extent funds for such expenses are available or until otherwise ordered by the Court"); Kelley Aff. [Docket No. 136] Attach. G. The Court also authorized Receiver Kelley to make payments from the frozen funds to preserve receivership assets, which included homes and luxury automobiles owned by Defendant Reynolds. Id.

### C. Living Expense Payments Discontinued

Receiver Kelley paid the Court-authorized living expense and asset preservation payments until May 2010, when a dispute arose between Receiver Kelley and the Reynoldses regarding a divorce decree filed by the Reynoldses in California state court. Defendant Reynolds was attempting to transfer the vast majority of his assets to A. Reynolds as a property settlement in the divorce decree. As a result, on August 13, 2010, he was found in contempt for violating the court-ordered asset freeze, was taken into custody, and the release conditions in his

criminal case were revoked. Mem. Opinion and Order, Aug. 16, 2010 [Docket No. 1345] at 6-7; Minute Entry [Criminal Case Docket No. 45]. Defendant Reynolds is currently serving a 130 month prison sentence. See Sentencing J., Sept. 15, 2010 [Criminal Case Docket No. 53] at 2.

### D. Requested Payments

In September 2010, A. Reynolds filed the present Motion, seeking *inter alia* an order compelling Receiver Kelley to resume payments for: 1) monthly homestead preservation expenses including the mortgage payments, utilities, and arrears (the "homestead preservation expenses"); 2) her monthly health insurance premiums; and 3) her monthly living expenses. Prior to the October 15, 2010 hearing on the Motion, Receiver Kelley resumed paying homestead preservation expenses and reimbursed A. Reynolds for homestead preservation expenses paid by her during the time Receiver Kelley was not making payments. See Vande Vegte Supplemental Aff. [Docket No. 1537] at 1. Thus, the payment requests in A. Reynolds' Motion are now limited to the monthly living expenses and the health insurance premiums. Id.

Following the hearing, the Court granted A. Reynolds' request for monthly health insurance premiums and ordered her to submit an affidavit detailing her living expenses. See Order, Oct. 19, 2010 [Docket No. 1545] at 3.[1] In response, A. Reynolds filed a Supplemental Affidavit [Docket No. 1554] requesting payments of $1,829 for personal living expenses that are in addition to the homestead preservation expenses and health insurance premiums currently

---

[1] The October 19, 2010 Order also denied A. Reynolds' requests for permission to intervene and for an accounting of receivership assets. The October 19 Order held under advisement the Government's request to compel A. Reynolds to cooperate in cancelling the property settlement provision of the Divorce Decree. This request has since been resolved by a Stipulation [Docket No. 1633, Ex. 1] between the Government and A. Reynolds in which A. Reynolds has agreed to stay the property settlement provision of the divorce decree pending the outcome or resolution of the forfeiture proceedings in Defendant Reynolds' Criminal Case.

being paid from receivership assets.

### E. Forfeiture Proceedings

Following Defendant Reynolds' sentencing in September 2010, the Government initiated forfeiture proceedings in his criminal case pursuant to 18 U.S.C. § 982, the criminal forfeiture statute applicable to money laundering violations. The Government contends that all of the assets frozen in Defendant Reynolds' receivership account are forfeitable under § 982(a)(1) as property involved in or traceable to Defendant Reynolds' crime, or as substitute property under 21 U.S.C. § 853(p).[2]

To date, two preliminary orders of forfeiture have been issued. The first requires Defendant Reynolds to forfeit "all property, real or personal, involved in or traceable to the money-laundering conspiracy" and enters a personal money judgment against him for $3,522,880,614. Prelim. Order of Forfeiture, Sept. 9, 2010 [Criminal Case Docket No. 48] at ¶¶ 2, 3. The second identifies specific homes, automobiles, and a bank account to be forfeited. 2d Prelim. Order of Forfeiture, Oct. 15, 2010 [Criminal Case Docket No. 66] at 1-2.

A. Reynolds has filed a Petition [Criminal Case Docket No. 69] in the criminal forfeiture proceedings to adjudicate her asserted one-half community property interest in certain receivership assets that the Government intends to forfeit. See generally 21 U.S.C. § 853(n) (allowing a third party with an asserted interest in forfeitable property to adjudicate the validity of that interest through an ancillary proceeding); Fed. R. Crim. P. 32.2(c). The Government and A. Reynolds have stipulated to a deferral of the ancillary proceeding until no later than March 1, 2011. Stipulation [Criminal Case Docket No. 71] at 1. In the meantime, the Government will

---

[2] The forfeiture provisions of 21 U.S.C. § 853 are incorporated by 18 U.S.C. § 982(b)(1).

complete the process of moving for preliminary orders of forfeiture related to the specific property referenced in the Petition.  Id.

### III.  DISCUSSION

The premise for A. Reynolds' request for living expense payments is her assertion of a one-half marital property interest in some of the assets frozen in Defendant Reynolds' receivership estate.  She argues the pre-forfeiture restraint of property allegedly belonging to her violates her Fifth Amendment protection from being deprived of the property without due process.

Generally, "[a] § 853(n) ancillary proceeding is the only avenue by which a third-party claimant may seek to assert an interest in property that has been included in an indictment [or information] alleging that the property is subject to forfeiture."  United States v. Puig, 419 F.3d 700, 703 (8th Cir. 2005) (noting that 21 U.S.C. § 853(k) bars intervention in criminal proceedings or the commencement of an action against the United States except as provided for in an ancillary proceeding under § 853(n)).  Id.  However, early in this case the Court recognized that an exception to the general rule may be warranted where the delay between the entry of the property restraint and the criminal trial "threatens to deprive a third party of its due process right to have a 'meaningful hearing at a meaningful time.'"  Mem. Opinion and Order, June 23, 2009 [Docket No. 396] at 8 (quoting United States v. Bissell, 866 F.2d 1343, 1353 (11th Cir. 1989)).

The due process test of Barker v. Wingo, 407 U.S. 514 (1972) "provides an appropriate framework for determining whether the delay [between the seizure of property and the commencement of a forfeiture trial] violate[s] the due process right to be heard at a meaningful time."  United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in United States Currency, 461 U.S. 555, 564 (1983).  See also Bissell, 866 F.2d at 1352-54; United States

v. Arboleda-Hurtado, 790 F. Supp. 1140, 1142-43 (S.D. Fla. 1992) (same). "The Barker test requires the weighing of four factors: [t]he length of the delay in the criminal proceedings; the reason for the delay; the property claimant's assertion of his [or her] right to a hearing; and the prejudice to the claimant." Arboleda-Hurtado, 790 F. Supp. at 1142. The factors serve as "guides in balancing the interests of the claimant and the Government to assess whether the basic due process requirement of fairness has been satisfied in a particular case." United States v. $8,850, 461 U.S. at 565.

Applying the Barker factors to the present circumstances leads to the conclusion that A. Reynolds' due process rights are not violated by the continued restraint of Defendant Reynolds' receivership assets pending the commencement of the ancillary proceeding.

First, the two-year delay from the entry of the asset restraint and the commencement of the forfeiture proceedings is significant. However, the effects of the delay have been alleviated by A. Reynolds' not being wholly deprived of the property to which she claims an interest. Specifically, receivership funds were used to pay A. Reynolds' living expenses until May 2010, her health insurance premiums continue to be paid from receivership funds, and she continues to reside in an asset of the receivership, the West Hollywood, California home. Moreover, the remainder of the delay will be short-lived, as the ancillary proceeding relating to A. Reynolds' asserted interests will begin within the next three months.

Second, the two-year delay was caused by the substantial time and resources required to trace the assets involved in the enormous and complex Ponzi scheme. Forensic accountants retained by Receiver Kelley have worked intensely for approximately two years to untangle the scheme and do not anticipate completing their analysis until the end of this year. See Martens Aff. [Docket No. 1391] at 3-6 (projecting December 31, 2010 completion date for forensic

7

accounting services). Thus, the delay was not caused by any lack of diligence by the Government and is justified under the circumstances.

Third, A. Reynolds was provided with a right to be heard on her requested relief at a hearing held October 15, 2010. See Order, Oct. 19, 2010 at 2. Following the hearing, a portion of her requested relief was granted. Id. at 3 (granting request for payment of monthly health insurance premiums).

Finally, A. Reynolds does not state that she will suffer harm or prejudice if the requested living expense funds remain frozen while her asserted property interests are adjudicated in the ancillary proceeding. She appears to have been meeting the cost of her living expenses since May 2010, and apparently paid homestead preservation expenses during the four to five month period that Receiver Kelley ceased paying these expenses.[3] See Vande Vegte Supplemental Aff. ¶ 2. She also appears to remain in possession of the gold watch and art belonging to the receivership, despite Receiver Kelley's request for custody of those items.

---

[3] Receiver Kelley later reimbursed A. Reynolds for the homestead preservation expenses paid by A. Reynolds during this period. Vande Vegte Supplemental Aff. ¶ 2.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that A. Reynolds' Motion [Docket No. 1474] is **DENIED** to the extent it seeks payment of living expenses beyond health insurance premiums.

BY THE COURT:


     s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  December 6, 2010.