# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,

                Plaintiff,

       v.

Thomas Joseph Petters; Petters Company,
Inc., a/k/a PCI; Petters Group Worldwide, LLC;
Deanna Coleman, a/k/a Deanna Munson;
Robert White; James Wehmhoff; Larry
Reynolds and/or d/b/a Nationwide International
Resources, a/k/a NIR; Michael Catain and/or d/b/a
Enchanted Family Buying Company;
Frank E. Vennes, Jr., and/or d/b/a Metro Gem
Finance, Metro Gem, Inc., Grace Offerings
of Florida, LLC, Metro Property Financing,
LLC, 38 E. Robinson, LLC, 55 E. Pine, LLC,
Orlando Rental Pool, LLC, 100 Pine Street
Property, LLC, Orange Street Tower, LLC,
Cornerstone Rental Pool, LLC, 2 South
Orange Avenue, LLC, Hope Commons, LLC,
Metro Gold, Inc.;

                Defendants,

Douglas A. Kelley,

                Receiver,

Gary Hansen,

                Receiver,

Barry E. Mukamal, Liquidating Trustee of
Palm Beach Finance Partners, L.P. and
Palm Beach Finance II, L.P.;

                Applicant Intervenor.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 08-5348 ADM/JSM

---

James L. Volling, Esq., Faegre & Benson LLP, Minneapolis, MN, on behalf of Defendants Frank
E. Vennes, Jr.; Metro Gem Finance; Metro Gem, Inc.; Grace Offerings of Florida, LLC; Metro
Property Financing, LLC; 38 E. Robinson, LLC; 55 E. Pine, LLC; Orlando Rental Pool, LLC;

100 Pine Street Property, LLC; Orange Street Tower, LLC; Cornerstone Rental Pool, LLC; 2 South Orange Avenue, LLC; Mandan Properties, LLC; Century Apartments, LLC; Youngstown Holdings, LLC; Metro Development Properties, LLC; Grace Offerings of St. Paul, LLC; Project Riverwatch, LLC; Friends of Hope Academy, LLC; Plando, LLC; Art Group, LLC; and Metro Gold, Inc.

Gary Hansen, Esq. and Ranelle Leier, Esq., Oppenheimer Wolff & Donnelly LLP, on behalf of Receiver Gary Hansen.

Gregory G. Brooker, Esq., and Surya Saxena, Esq., Assistant United States Attorneys, Minneapolis, MN, on behalf of Plaintiff.

James A. Lodoen, Esq., and Daryle Uphoff, Esq., Lindquist & Vennum, PLLP, Minneapolis, MN, and Douglas A. Kelley, Esq., Kelley and Wolter, P.A., Minneapolis, MN, on behalf of Douglas A. Kelley, Chapter 11 Trustee for Petters Company, Inc.

Jonathan Feldman, Esq., Meland Russin & Budwick, P.A., Miami, FL, and Daniel N. Lovejoy, Esq., Parker Rosen LLC, Minneapolis, MN, on behalf of Barry E. Mukamal, Chapter 11 Trustee for Palm Beach Finance Partners, L.P. and Palm Beach Finance II, L.P.

Carolyn G. Anderson, Esq., and Brian C. Gudmundson, Esq., Zimmerman Reed, PLLP, on behalf of AI Plus; Glen and Sue Silker; Silker Investments; Timothy J. Finley; IOC Distribution; Jeffrey Siemon; and Mark T. Wyder Family Trust.

---

## I. INTRODUCTION

On December 17, 2010, the undersigned United States District Judge heard oral argument on the Joint Motion [Docket No. 1652] of the Vennes Defendants[1] and Receiver Gary Hansen ("Receiver Hansen") to approve a plan (the "Asset Distribution Plan" or the "Plan") to distribute receivership assets of the Vennes Defendants. The Court also heard oral argument on the motion

---

[1] The Vennes Defendants are Defendants Frank E. Vennes, Jr.; Metro Gem Finance; Metro Gem, Inc.; Grace Offerings of Florida, LLC; Metro Property Financing, LLC; 38 E. Robinson, LLC; 55 E. Pine, LLC; Orlando Rental Pool, LLC; 100 Pine Street Property, LLC; Orange Street Tower, LLC; Cornerstone Rental Pool, LLC; 2 South Orange Avenue, LLC; Mandan Properties, LLC; Century Apartments, LLC; Youngstown Holdings, LLC; Metro Development Properties, LLC; Grace Offerings of St. Paul, LLC; Project Riverwatch, LLC; Friends of Hope Academy, LLC; Plando, LLC; Art Group, LLC; and Metro Gold, Inc.

[Docket No. 1589] by Barry Mukamal, the Chapter 11 Bankruptcy Trustee for Palm Beach Finance Partners, L.P. and Palm Beach Finance II, L.P. (the "Palm Beach Trustee") to intervene for the limited purpose of objecting to the Plan.

The Asset Distribution Plan proposes to distribute substantially all of the assets currently held in the Vennes receivership to certain of the Vennes Defendants' creditors and investors (the "Vennes Creditors"). With the exception of three banks that extended traditional loans to the Vennes Defendants, the Vennes Creditors are individuals and investment groups who were a source of investment funds to the Vennes Defendants in what was later discovered to be a complex Ponzi scheme orchestrated by Defendant Thomas Petters ("Defendant Petters").[2] When the scheme collapsed, many of the Vennes Creditors suffered large financial losses.

The Asset Distribution Plan is strongly supported by Plaintiff United States of America (the "Government") and a number of Vennes Creditors. The Plan is opposed by Douglas A. Kelley, the Chapter 11 Bankruptcy Trustee for Petters Company, Inc. (the "PCI Trustee") and the Palm Beach Trustee. See Docket Nos. 1695, 1698.[3]

---

[2] Petters and his associates induced investors into purportedly financing the purchase of consumer electronic goods from wholesalers, to be resold to large retailers as inventory. In fact, the electronic equipment did not exist. Petters used investments from later investors to repay earlier investors their principal, plus an amount Petters and his associates represented as profit from the transaction ("false profits"). The payments were funneled through PCI and a number of other shell corporations created by Petters and his associates for the purpose of concealing and perpetuating the scheme.

[3] The PCI and Palm Beach Trustee also opposed an earlier version of the Asset Distribution Plan that did not receive the full support of the Government and Receiver Hansen. See Docket No. 1603 (PCI Trustee Objection); Docket No. 1599 (Palm Beach Trustee Objection). These earlier objections were joined by Ritchie Special Credit Investments, Ltd., Rhone Holdings II. Ltd., Yorkville Investment I, L.L.C., Ritchie Capital Structure Arbitrage Trading, Ltd., and Ritchie Capital Management, L.L.C. ("Ritchie"). See Docket No. 1614. Ritchie did not file or join with an objection to the present motion to approve a modified version

## II.  BACKGROUND

### A.    Asset Freeze and Receiverships

On October 2, 2008, the Government commenced this case under the Fraud Injunction

Statute, 18 U.S.C. § 1345, to freeze the assets of the named defendants, as well as any affiliates,

subsidiaries, divisions, successors, or assigns that are 100% owned or controlled by them.

Compl. [Docket No. 1].  The defendants were accused of committing mail fraud, wire fraud, and

banking law violations by perpetrating what was later proven to be a multi-billion dollar Ponzi

scheme.  See Rice Aff. [Docket No. 5] at 1-2, 20.  To preserve the assets for restitution and

forfeiture in the event related criminal actions resulted in conviction, the Court issued an *ex*

*parte* temporary restraining order ("TRO") freezing all assets belonging to the defendants on

October 3, 2008.  TRO [Docket No. 6].  Within two weeks of the entry of the TRO, all

defendants had stipulated to the entry of a preliminary injunction and appointment of a receiver

to assume control of their assets.  See Stip. for Entry of Prelim. Inj., Appointment of Receiver,

and Other Equitable Relief, Oct. 15, 2008 [Docket No. 54]; Stip. for Entry of Prelim. Inj.,

Appointment of Receiver, and Other Equitable Relief, Oct. 16, 2008 [Docket No. 58].

Two separate receiverships were established.  The first receivership, (the "Petters

receivership") included all assets of the named defendants and entities 100% owned or

controlled by them, with the exception of the assets belonging to the Vennes Defendants.  See

Order for Entry of Prelim. Inj., Appointment of Receiver, and Other Equitable Relief, Oct. 6,

2008 [Docket No. 12]; Order for Entry of Prelim. Inj., Appointment of Receiver, and Other

Equitable Relief, Oct. 12, 2008 [Docket No. 43].  Douglas A. Kelley was appointed as receiver

of the Asset Distribution Plan and did not appear at the hearing on the motion.

4

for the Petters receivership.  Id.  Following the Chaper 11 bankruptcy filings of PCI and Petters

Group Worldwide ("PGW"), Kelley was also appointed as the Chapter 11 trustee for those

entities.  In re Petters Company, Inc., 08-bk-45257 GFK (Bankr. D. Minn.) [Bankruptcy Docket

No. 153].        The second receivership, which the Asset Distribution Plan seeks to liquidate and

dissolve, was established October 16, 2008 and includes all assets of the Vennes Defendants (the

"Vennes receivership").  See Order for Entry of Prelim. Inj., Appointment of Receiver, and

Other Equitable Relief, Oct. 16, 2008 [Docket No. 59].  The Vennes receivership is directed by

Receiver Hansen.

A stay of litigation is currently in place for both receiverships.  See Docket Nos. 127,

944.

**B.        Criminal Convictions and Victim Recovery**

Ultimately, all defendants except the Vennes Defendants were charged and convicted for

crimes arising from the Ponzi scheme.  A personal money judgment and preliminary order of

forfeiture in the amount of $3,522,880,614 has been entered against each of the convicted

individual defendants with the exception of Defendant Wehmhoff.  Defendant Vennes has not

been charged with any crime relating to the Petters fraud.

Restitution was not ordered in the Petters criminal proceedings, because the burden

restitution would have imposed on the court outweighed the benefit victims would have realized

on their restitution claims.  See United States v. Petters, 08-364 RHK/AJB (D. Minn.) ("Petters

Criminal Case"), Order, June 3, 2010 [Petters Criminal Case Docket No. 459].  Instead, victims

are to receive a recovery through the bankruptcy process or through the remission of forfeited

assets under 28 C.F.R. § 9.8.  Id. at 9-11.  A Coordination Agreement to facilitate this process

was approved on September 14, 2010.  See Order Approving Coordination Agreement [Docket

No. 1466], Sept. 13, 2010; Uphoff Aff. [Docket No. 1351] Ex. A (Coordination Agreement).

Under the Coordination Agreement, the individual criminal defendants' assets, currently being

held in the Petters receivership, will be forfeited by the government. The Government will then

initiate a remission process through which victims will be allowed to submit claims. The

Government has agreed not to forfeit the assets held in the bankruptcy estates of PCI and PGW.

Those assets will be distributed to the victims and creditors of PCI and PGW in the bankruptcy

proceedings. Under the distribution protocol, the Vennes Creditors would be entitled to a small

share in the remission process but no recovery in bankruptcy proceedings, because the Vennes

Creditors are creditors of the Vennes Defendants and not of PCI or PGW.

## C.     Clawback Litigation by PCI Trustee

The PCI Trustee has filed over 200 adversary proceedings in the PCI bankruptcy

proceedings seeking to avoid preferential or fraudulent transfers made by PCI to third parties

(the "clawback actions"). A substantial number of the clawback actions seek to recoup assets

from investors who profited from the Ponzi scheme ("net winners"), so the assets may be

redistributed to investors who suffered losses under the scheme ("net losers").[4] One of the

clawback actions filed by the PCI Trustee is directed against Defendant Vennes and two of his

entities, Metro Gem, Inc. ("MGI"), and Metro Gem LLC ("MGL"). The action seeks to recover

over $2 billion in allegedly fraudulent transfers and preferential payments made by PCI to

---

[4] In calculating whether an investor was a net winner or a net loser, the PCI Trustee compares the total amount an investor invested in the scheme with the total amount of payments the investor received over the lifetime of the investment. For example, if an investor invested a total of $1,000,000 in notes and received a total of $200,000 in payments, the investor would be considered a net loser in the amount of $800,000. Conversely, if the investor invested a total of $1,000,000 in notes and received a total of $1,200,000 in payments, the investor would be a net winner in the amount of $200,000.

Defendant Vennes, MGI and MGL during the Petters Ponzi scheme. This sum includes over $2 billion in principal payments, approximately $91 million in false profits, and $113 million in commissions. According to the PCI Trustee, the Vennes Defendants were the second or third largest net winners from the Ponzi scheme.

**D.     The Asset Distribution Plan**

The Asset Distribution Plan is the product of two years of negotiations with the Government, Receiver Hansen, and other parties, and proposes to distribute assets and dissolve the Vennes receivership as explained below.

**1.     Distribution of Substantially All Receivership Assets**

The Asset Distribution Plan will distribute all of the Vennes Defendants' assets except Defendant Vennes's 1) personal effects, 2) automobile, 3) living expenses of $62,400 for one year, 4) future claims or entitlements to assets as a result of the Petters fraud or of unrelated business activities, and 5) assets held in a trust account by Defendant Vennes's counsel to be used for the Vennes Defendants' legal representation. Upon completion of the legal representation, any assets remaining in Vennes's counsel's trust account will be distributed under the Plan. Def.'s Mem. of Law in Supp. of Joint Mot. [Docket No. 1654] Ex. 3 (Vennes Revised Sworn Statement) at ¶ 4(e).

The Asset Distribution Plan lists the specific receivership assets to be distributed under the Plan. The Plan also entitles the Vennes Creditors to recover any later discovered assets determined to have been owned by the Vennes Defendants and not disclosed in the Asset Distribution Plan. Id. ¶ 7.

**2.     Recipients under Asset Distribution Plan**

The Vennes Creditors to receive distributions under the Plan are divided into two groups,

referred to as the "Group A" and "Group B" creditors.

### a.      Group A Creditors

Group A is comprised of three banks whose loans are secured by assets or a personal guarantee from Defendant Vennes, and one individual creditor, Matthew D. Miller ("Miller"), who also holds a personal guarantee from Defendant Vennes. Miller is included as a Group A creditor because he has agreed to take possession of a burdensome piece of real estate that would be difficult for the Class B pool of creditors to manage. The total debt held by the Group A Creditors is $17,526,419.18. Each Group A creditor will receive specific assets assigned to them in the Plan. The assets assigned to the Group A creditors have an estimated value of $11,448,921.40. Group A creditors are estimated to recover 65% to 74% on their losses.

### b.      Group B Creditors

The Group B creditors are 31 individuals or entities who invested with the Vennes Defendants and were net losers over the lifetime of their investments. The Group B creditors will share pro rata from the assets devoted to the Group B Creditor pool, with the exception of seven Group B creditors who will receive a flat sum of $75,000 due to hardship or extreme circumstances.[5] Two Group B creditors hold a personal guarantee from Defendant Vennes and will receive a higher pro rata share of the Group B asset pool than those without a personal

---

[5] The Group B Creditors qualifying as hardship cases may not have been net losers over the entire lifetime of their investments with the Vennes Defendants, but nevertheless suffered severe financial losses when the Ponzi scheme collapsed. See, e.g., Def.'s Mem. of Law in Supp. of Joint Mot., Ex. 1 (Ross Decl.) (describing financial loss resulting from Petters Ponzi scheme). At least two of the Group B Creditors qualifying for hardship exceptions under the Plan testified at the trial leading to Defendant Petters' conviction.

guarantee.  The debt held among Group B creditors totals $42,913,280.88.[6]  The assets assigned

to the Group B creditor pool (the "Group B Assets") have an estimated value of $16,382,726.67.

The Group B creditors holding personal guarantees are anticipated to recover approximately

50% of their net losses.  Group B creditors without a personal guarantee are estimated to recover

approximately 35%.  The difference in treatment among the Group B creditors is viewed as fair

by Receiver Hansen and the Government based on the differing circumstances of the groups of

creditors.

<strong>c.        Net Winners Receive No Distribution</strong>

Individuals or entities who invested with the Vennes Defendants and received more in

payments than the amounts they invested over the lifetime of their investments will not receive a

distribution under the Asset Distribution Plan.

**3.        Liquidating Trustee**

The Plan provides that Receiver Hansen, with the pro bono assistance of Carolyn Glass

Anderson, Esq.,[7] will arrange for the sale or disposition of the Group B Assets.  The expenses

associated with the sale or disposition of the Group B Assets will be paid from the sale proceeds

or from the Vennes receivership accounts.

**4.        Discharge of Debt Owed by Vennes Defendants to Vennes Creditors**

Each Vennes Creditor receiving a distribution under the Plan has signed a Consent and

---

[6] Each Vennes Creditor's final amount-of-loss calculation and resulting pro-rata share of
recovery under the Asset Distribution Plan will be subject to reasonable verification by Receiver
Hansen.  See generally Cockson Decl. [Docket No. 1726] Ex. 1 (Consent and Release
Agreements).  Disputes arising from Receiver Hansen's verification will be resolved by the
Court.  Id.

[7] Attorney Anderson represents several of the Vennes Creditors.

Release Agreement which provides that, upon the transfer of the agreed-upon share of assets to the Vennes Creditor, the Vennes Creditor and Vennes Defendant will mutually release each other from claims, debt, and other forms of obligation described in the Consent and Release Agreement.[8][9] See generally Cockson Decl., Ex. 1.

### 5. Bar on PCI Trustee's Recovery from Distributed Assets

As part of the Joint Motion, the Vennes Defendants request an order that would bar the PCI Trustee from using assets identified in the Asset Distribution Plan to satisfy any judgment secured in the bankruptcy clawback action against the Vennes Defendants.

### 6. Dissolution of the Vennes Receivership

Because the Plan disposes of all assets in the Vennes receivership, the Vennes Defendants request the Court to dissolve the Vennes receivership upon approval of the Asset Distribution Plan. Upon dissolution of the Vennes receivership, Receiver Hansen would become the Liquidating Trustee charged with executing the terms of the Asset Distribution Plan. The Liquidating Trustee would remain under the supervision of the Court until the Asset Distribution Plan is fully accomplished.

### E. Support for the Plan

---

[8] A Consent and Release Agreement was executed by Roy Boeser, who the Court assumes is the same person as the individual identified in the Asset Distribution Plan and Cockson Declaration as *Ray* Boeser. Additionally, only the odd numbered pages of Boeser's Consent and Release Agreement were filed with the Court. See Cockson Decl., Ex. 1 at 38-43. Counsel for the Vennes Defendants shall file Boeser's full Consent and Release Agreement within 30 days of the date of this Order.

[9] A Consent and Release Agreement was also executed by Norma Vennes. See Cockson Decl., Ex. 1 at 333-38. As a net winner, Norma Vennes is not a participant to the Asset Distribution Plan. Therefore, the Court declines to rule on the validity of the Consent and Release Agreement between Norma Vennes and the Vennes Defendants.

### 1. Government

The Government has filed a response [Docket No. 1691] supporting this Motion. The Government argues the Vennes Creditors will not be afforded a recovery in the PCI and PGW bankruptcy cases. Thus, the Asset Distribution Plan would serve as the only meaningful avenue of recovery for the Vennes Creditors, described by the Government as the most vulnerable investors in the Petters Ponzi scheme.

The Government contends the Plan allows for a transparent, equitable, and orderly distribution of the Vennes assets. According to the Government, transparency is achieved because the Plan details the assets and rights being retained by Defendant Vennes and provides Vennes Creditors with an appropriate length of time to decide whether they wish to participate in the Plan. Equity is served because the Plan provides payments only to Vennes Creditors who were net losers over the lifetime of their investments with the Vennes Defendants or to Vennes Creditors suffering hardship or extreme circumstances. Additionally, Receiver Hansen's participation in calculating final loss amounts and supervision over the liquidation of the Vennes Defendants' assets ensures a fair and orderly distribution process. Finally, the Government argues that the Asset Distribution Plan achieves the Government's overriding goal in this action, which is to preserve assets for compensation to victims of the fraudulent scheme.

### 2. Receiver Hansen

Receiver Hansen filed a memorandum [Docket No. 1666] in support of the Joint Motion. Receiver Hansen views the Asset Distribution Plan as fair, equitable, and consistent with the objectives of a receivership under 18 U.S.C. § 1345 because the Plan prevents further erosion of receivership assets and distributes the majority of those assets to victims of the Petters Ponzi scheme.

### 3. Vennes Creditors

All Vennes Creditors were mailed a copy of the Asset Distribution Plan, and each has consented to their treatment under the Plan by executing a Consent and Release Agreement.  <u>See generally</u> Cockson Decl.

Additionally, Vennes Creditors Petra Financial Advisors, Inc.; James Jagodzinski and the David D. Koentopf Revocable Trust; and the Faith-Community Investors[10] have filed responses [Docket Nos. 1701, 1702, and 1703] supporting the Joint Motion.  At the hearing, counsel for the Faith-Community Investors characterized the Asset Distribution Plan as a unique solution to a difficult problem, and argued approval of the Plan will provide relief to individuals who suffered severe losses, including loss of their homes, life savings, and financial security during their elderly years.

## F. Opposition to the Plan

### 1. PCI Trustee

The PCI Trustee objects to the Plan because it deprives him of a pro rata share of the Vennes receivership assets assuming he prevails in the bankruptcy clawback action against the Vennes Defendants.  The PCI Trustee urges that allowing the Vennes Defendants to insulate their assets from the PCI Trustee before the clawback action is litigated on its merits "would sanction a result diametrically opposed to the result sought by the [PCI] Trustee in his approximately 200 avoidance lawsuits commenced in the Bankruptcy Court."  Trustee's Mem. in Opp. to Joint Mot. [Docket No. 95] at 3.  The PCI Trustee proposes that his claim against the Vennes Defendants for false profits be included for pro rata distribution under the Asset

---

[10] The Faith-Community Investors are AI Plus; Glen and Sue Silker; Silker Investments; Timothy J. Finley; IOC Distribution; Jeffrey Siemon; and Mark T. Wyder Family Trust.

Distribution Plan.  Alternatively, the PCI Trustee proposes that his pro rata share of the assets be reserved in escrow pending resolution of the clawback litigation.

        **2.**        **Palm Beach Trustee**

        The Palm Beach Liquidating Trustee has filed a motion [Docket No. 1589] to intervene for the limited purpose of appearing as an interested party at the hearing on the Motion.  At the hearing, the Court took the motion to intervene under advisement but allowed the Palm Beach Liquidating Trustee to state his opposition to the Motion.

        The Palm Beach Trustee describes the Palm Beach entities as two hedge funds that invested with entities affiliated with Defendant Petters.  The investments were later revealed to have contributed to Defendant Petters' Ponzi scheme.  The Palm Beach entities filed for Chapter 11 bankruptcy in November 2009, and confirmed a liquidation plan designating the Palm Beach Trustee as the plan's Liquidating Trustee.

        The Palm Beach Trustee asserts that, while a financial review of the Palm Beach entities' books and records remains ongoing, the bankruptcy estates of the Palm Beach entities may have litigation claims against Defendants Vennes and MGI, who were investors in the Palm Beach entities.  The Palm Beach Trustee intervention is appropriate because the Palm Beach entities' potential claims are impacted if the Asset Distribution Plan is approved.

        In opposing the Asset Distribution Plan, the Palm Beach Trustee argues the Plan serves the function of a bankruptcy filing for the Vennes Defendants because their assets will be liquidated and debts discharged.  The Palm Beach Trustee contends that due process requires a claims process similar to that found in bankruptcy so that all interested parties may participate in any distribution.

        The Palm Beach Trustee further urges that if a claims process is not established, the

receivership should be dissolved because the purpose of the receivership is no longer served. The Palm Beach Trustee argues the Vennes receivership was created for the purpose of paying restitution to third parties, and because restitution has not been ordered here, the Vennes receivership should be dissolved. The Palm Beach Trustee suggests that if a claims process is not established here, then the bankruptcy forum, while admittedly a less efficient and more costly alternative, would provide a more transparent process for distributing the Vennes Defendants' assets.

## III. DISCUSSION

### A.    Motion to Intervene

The Palm Beach Trustee seeks to intervene for the limited purpose of opposing the motion to approve the Asset Distribution Plan.

Under the Federal Rules of Civil Procedure, a movant may, upon timely application, intervene in an action as a matter of right if the movant establishes that (1) it has a cognizable interest in the subject matter of the litigation; (2) the interest may be impaired as a result of the litigation; and (3) the interest is not adequately protected by the existing parties to the litigation. Fed. R. Civ. P. 24(a)(2); Mille Lacs Band of Chippewa Indians v. Minnesota, 989 F.2d 994, 997 (8th Cir. 1993).

Here, the Palm Beach Trustee's cognizable, though tenuous, interests are the potential litigation claims against the Vennes Defendants. Approval of the Asset Distribution Plan would impact the Palm Beach Trustee's ability to recover on a judgment in the event he asserts a claim and prevails in the litigation. The Palm Beach Trustee's interests are not adequately protected by the parties to this litigation. Accordingly, the Court will grant the Palm Beach Trustee's motion to intervene for the limited purpose requested, and consider the arguments raised by the

Palm Beach Trustee at the hearing.

**B.      Joint Motion to Approve Asset Distribution Plan**

The Vennes Defendants and Receiver Hansen request the Court to approve the Asset

Distribution Plan.  Approval of the Plan would dissolve the Vennes receivership that had been

created under § 1345 at the request of the Government and upon stipulation from Defendant

Vennes.

**1.      Legal Standard:  Equitable Discretion**

"The district court has broad powers and wide discretion to determine relief in an equity

receivership."  SEC v. Elliott, 953 F.2d 1560, 1566 (11th Cir. 1992).  This broad discretion

"derives from the inherent powers of an equity court to fashion relief."  Id.  "[W]ithin that broad

authority lies the power to approve a plan of distribution proposed by a federal receiver."  SEC

v. Byers, 637 F. Supp. 2d 166, 174 (S.D.N.Y. 2009).  See also SEC v. Credit Bancorp, Ltd., No.

99 CIV. 11395 RWS, 2000 WL 1752979 (S.D.N.Y. Nov. 29, 2000), *28 (approving distribution

plan in equity receivership); SEC v. Wang, 944 F.2d 80, 88 (2d Cir. 1991) (same); SEC v. HKW

Trading LLC,  No. 8:05-cv-1076-T-24-TBM, 2009 WL 2499146 (M.D. Fla. Aug. 14, 2009), *6

(same).

In determining whether to adopt a plan that distributes receivership assets to investors

victimized by a Ponzi scheme, courts are governed by "the fundamental principal" that the plan

"should be equitable and fair, with similarly-situated investors treated alike."  Credit Bancorp,

2000 WL 1752979, at *28 (citations omitted).  See also Elliott, 953 F.2d at 1570 (stating

creditors who occupy the same legal positions in a Ponzi scheme must be treated alike, because

"equality is equity") (quoting Cunningham v. Brown, 265 U.S. 1, 13 (1924)).  "What is equitable

and fair will depend on the circumstances.  Thus, courts have approved different types of plans

in different situations." Credit Bancorp, 2000 WL 1752979, at *28 (citations omitted).  See also

SEC v. Enter. Trust Co., No. 08 C 1260, 2008 WL 4534154, at *3 (N.D. Ill. Oct. 7, 2008)

("There are no hard rules governing a district court's decisions in manners like these.  The

standard is whether a distribution is equitable and fair in the eyes of a reasonable judge.").

Additional relevant considerations for determining whether to approve a plan of

distribution in an equity receivership are:  (1) whether the distribution satisfies the goals of the

receivership, SEC v. Vescor Capital Corp., 599 F.3d 1189, 1194 (10th Cir. 2010); (2) whether

the receiver and the plaintiff support the plan,  Byers, 637 F. Supp. 2d at 175; (3) whether the

plan provides a realistic or logical approach to dividing the receivership assets,  SEC v. Forex

Asset Mgmt. LLC, 242 F.3d 325, 331 (5th Cir. 2001); Credit Bancorp, 2000 WL 1752979, at

*41; and (4) whether the distribution provides relief in a timely manner.  Credit Bancorp, 2000

WL 1752979, at *28.

> **2.      Analysis**

>> **a.      Fair and Equitable Treatment**

>>> **i.      Among Vennes Creditors**

The Government and Receiver Hansen both contend the Asset Distribution Plan treats

similarly situated Vennes Creditors equally.  Significantly, all Vennes Creditors have manifested

their acceptance of the Plan by executing Consent and Release Agreements.  Therefore, the

Court concludes the Asset Distribution Plan treats the Vennes Defendants' "acknowledged"

creditors equitably.

>>> **ii.      Between Vennes Creditors and Other Victims of the Petters**

**Ponzi Scheme**[11]

The Asset Distribution Plan also provides some measure of equity between the Vennes Creditors and other victims of the Petters Ponzi scheme by allowing for a partial recovery for the Vennes Creditors, who are among the victims most severely impacted by the Petters Ponzi scheme.  Without the Asset Distribution Plan, the Vennes Creditors' sole possibility of any meaningful recovery would be through the remission process, because they are not entitled to share in the bankruptcy distribution of PCI's assets.  The remission process is anticipated to provide almost no recovery to the Vennes Creditors, because their claims are overshadowed by those of large institutional investors who will also be participating in that process.

Under these unique circumstances, it is fair and equitable to allow a portion of the Vennes receivership assets to be insulated from the PCI Trustee's clawback action.  If the PCI Trustee ultimately were to be granted a judgment in the bankruptcy clawback litigation which could be satisfied by the assets from the Vennes receivership, such assets would be permanently removed from the reach of the Vennes Creditors who, again, would not be entitled to distribution of the assets in the bankruptcy proceedings.  Such a result would be unfair to the Vennes Creditors who have suffered financial losses from the same Ponzi scheme that caused losses to PCI's investors.

Notably, the Asset Distribution Plan serves the same general objective as the PCI Trustee's clawback litigation because it equalizes the Petters Ponzi scheme's winners and losers

---

[11] The Vennes receivership is separate from but related to the Petters receivership and the PCI bankruptcy estate.  This complication adds an additional dimension to the analysis of whether the distribution scheme is fair and equitable.  On one hand, the Vennes receivership has always been distinct from the Petters receivership, with each having different receivers, different assets, and different creditors.  On the other hand, the victimized investors in both receiverships have suffered financial loss as the result of the same massive Ponzi scheme.

by recovering from net winners (here, allegedly, the Vennes Defendants) and distributing such recoveries to net losers (here, the Vennes Creditors).[12]  Here, the equalization can be achieved economically and efficiently because 1) the Vennes Defendants have consented to the redistribution, thus avoiding the expense and delays of litigation, and 2) the assets to be distributed are already under the Court's supervised control, thus ensuring that the Asset Distribution Plan is carried out according to its Court-approved terms.[13]

Insulating the entirety of the Vennes receivership assets, however, has the potential to allow the Vennes Creditors to recoup a substantially higher percentage of their losses than the PCI Creditors will receive.  Under the Asset Distribution Plan the Vennes Creditors could receive an estimated 35-50% recovery on their losses, while the PCI Creditors are estimated to receive a 5-10% return.  Differing circumstances between the Vennes Creditors and PCI Creditors justifies some difference in the rate of recovery between the two creditor groups.  The Court also recognizes the rate of recovery for the Vennes Creditors will likely to be lower than that estimated in the Asset Distribution Plan.[14]  Nevertheless, neither the Vennes Defendants nor the Government has persuasively articulated why nearly all of the Vennes receivership assets

_____

[12] The Court recognizes that the class of investors receiving the redistributions under the Plan (the Vennes Creditors) differs from the class of investors that would receive the redistributions in the clawback litigation (the PCI creditors).  However, this result is equitable for the reasons previously discussed.

[13] This fact distinguishes the Vennes receivership assets from those of other bankruptcy clawback defendants whose assets are not subject to an equity receivership, and the Court's equitable oversight of these assets serves as an additional reason for addressing the clawback action against the Vennes Defendants differently than the other approximately 200 actions filed by the PCI Trustee.

[14] Receiver Hansen views the values assigned to the assets in the Asset Distribution Plan to be "substantially too high," and does not believe the valuation is likely to reflect the actual recovery by the Vennes Creditors.  Receiver Hansen's Mem. of Law in Supp. of Joint Mot. [Docket No. 1666] n.3.

should be shielded from the PCI Trustee and instead distributed to the Vennes Creditors when such a result allows the Vennes Creditors a recovery that is significantly larger than PCI Creditors will receive.

A more equitable approach to achieving a logical, expeditious, and meaningful remedy to the Vennes Creditors while satisfying the equitable guideline of treating similarly situated claimants equally is one that allows for the immediate distribution of the Vennes receivership assets to the Vennes Creditors, but postpones a portion of the distribution until resolution of the PCI Trustees' clawback action.[15]  This solution provides "the greatest number of investors with the greatest recovery possible without inequitably rewarding some investors at the expense of others."  Byers, 637 F. Supp. 2d at 182.

### iii.  Between Vennes Creditors and Palm Beach Trustee

The Vennes Creditors are not similarly situated to the Palm Beach entities with respect to the Vennes receivership.  Unlike the Group A Creditors, the Palm Beach entities do not hold a security interest or personal guarantee from the Vennes Defendants.  Additionally, unlike the Group B Creditors, the Palm Beach entities are not investors with the Vennes Defendants.[16] Instead, some of the *Vennes Defendants* were investors in the *Palm Beach entities*.  See

---

[15] The Vennes Defendants argue that no other PCI clawback defendant is restricted from distributing assets pending the outcome of the PCI clawback litigation, and therefore the Vennes Defendants should not be prevented from voluntarily dispersing all of their assets through the Asset Distribution Plan.  Conversely, however, Court approval of the non-deferred distributions would assure the Vennes Defendants that those distributed assets are safe from the reach of the PCI clawback litigation, an assurance not provided to other PCI clawback defendants.

[16] The Palm Beach entities invested in PCI.  See Liquidating Trustee Barry E. Mukamal's Objection ("Mukamal Objection") [Docket No. 1599]  ¶¶ 1-2.  Thus, if the Palm Beach entities are determined to be net losers in the Petters Ponzi scheme, their proper avenue of recovery is through the PCI bankruptcy estate, not the Vennes receivership.

Mukamal Objection ¶ 7.  Thus, any cause of action the Palm Beach Trustee may ultimately determine he has against the Vennes Defendants would not be based on a claim that the Palm Beach entities were investors with the Vennes Defendants.  If a non-investor claim by the Palm Beach Trustee were to eventually materialize, equity does not require such claim to be included in the distribution of receivership funds preserved for Defendant Vennes' investors.  <u>See</u>, <u>e.g.</u>, <u>SEC v. Homeland Commcn's Corp.</u>, No. 07-80802 CIV, 2010 WL 2035326, *6 (D.S.D. Fla. May 24, 2010) (approving receivership distribution plan that did not provide payment to trade creditors because the receivership was intended to benefit and protect investors).

Moreover, the Asset Distribution Plan does not extinguish any claim the Palm Beach Trustee may determine he has after he completes his review of the Palm Beach entities' records and conducts his analysis.  Rather, the Plan merely precludes satisfying any judgment on the Palm Beach Trustee's as yet unknown claim with assets from the Vennes receivership.

The Court disagrees the contention that the lack of a bankruptcy-like claims process deprives the Palm Beach Trustee of due process.  "It is well-settled that a District Court has the authority, in implementing a distribution plan in a receivership case, to use summary proceedings to evaluate claims and claim priority, provided the parties have an opportunity to be heard to argue their claims."  <u>Byers</u>, 637 F. Supp. 2d at 184.  The court proceedings implemented to allow challenge to the distribution of the Vennes receivership assets satisfy due process by providing parties with ample notice and an opportunity to be heard.  The assets to be dispersed have been subject to a publicly filed receivership for over two years.  Third parties having an interest in the Vennes receivership assets have had a lengthy opportunity to monitor the receivership case through the public docket or to request electronic notices apprising them of the activity in the case.  Additionally, proper notice of the Joint Motion to Approve the Asset

Distribution Plan was provided under the Local Rules. <u>See</u> Local R. 7.1. The Asset Distribution Plan, included as an exhibit to the pleadings, specifically identifies assets to be distributed, the identity of the Plan recipients, and the assets and estimated recovery each recipient will receive. The parties objecting to the Plan had a full and fair opportunity to be heard at the December 17, 2010 hearing. Because "the parties have [had] an opportunity to be heard to argue their claims," due process has been satisfied. <u>Byers</u>, 637 F. Supp. 2d at 184.

The Court also rejects the Palm Beach Trustee's argument that the Vennes receivership should be dissolved and the Vennes Defendants' assets distributed in bankruptcy. The less flexible forum of bankruptcy court is disfavored in circumstances such as these where the economic damage has been caused by fraud, because "the bankruptcy court would have less flexibility in determining the most equitable approach to distribute assets to victims." <u>Id.</u> at 176. Instead, the "overriding goal . . . should be fairness to the defrauded investors." <u>Id.</u>

Finally, despite the Palm Beach Trustee's assertion to the contrary, the Court has the authority to approve the Asset Distribution Plan even though the Vennes Defendants have not been criminally charged or ordered to pay restitution. <u>See</u> 18 U.S.C. § 1345(b) (authorizing a court to take protective action "*at any time before final determination*" of an action under § 1345) (emphasis added).

### b.    Goals of the Vennes Receivership

The Asset Distribution Plan serves the purposes of this equity receivership. <u>See</u> <u>Vescor Capital Corp.</u>, 599 F.3d at 1194 (affirming district court's ruling in an equity receivership because such ruling comported with the goals of the receivership). The Vennes Receivership was established under § 1345, which authorizes the court to "take . . . action, as is warranted to prevent a continuing and substantial injury to the United States or to any person or class of

persons for whose protection the action is brought."  18 U.S.C. § 1345(b).  The objective of the

Vennes receivership was to protect the Vennes Defendants' investors who suffered losses as a

result of the Ponzi scheme.  The Asset Distribution Plan prevents a continuing injury to the

Vennes Creditors by providing them with a small recovery on their severe losses using assets

which were frozen for their protection.

The Plan's exclusion of the PCI and Palm Beach Trustees' claims from a pro rata

distribution of the Vennes receivership assets is consistent with the purpose for which the

Vennes receivership was established.  Including such claims in the distribution would frustrate

the goals of the Vennes receivership by tying up the vast majority of receivership assets in

lengthy and costly litigation and threatening to permanently remove those assets from the reach

of the Vennes Creditors.

### c.       Government and Receiver Support

The Government and Receiver Hansen's support for the Asset Distribution Plan also

weigh favorably toward approving the Plan.  When approving a distribution in an equity

receivership, it is proper for a district court to afford deference to the agency charged with

enforcing the laws, and to give weight to the receiver's judgment.  Byers, 637 F. Supp. 2d at 175.

Here, the Government is not only the plaintiff in this action and thus in a position to evaluate

whether the Plan properly serves the purposes of the asset freeze, but is also charged with

protecting the interest of the public as a whole.  Thus, the Court gives deference to the fact that

the Government, which is charged with protecting both the interests of the Vennes Creditors *and*

*the PCI Creditors* has, after two years of diligent negotiation with the Vennes Defendants, given

the Plan its full endorsement.  Additionally, the Court gives weight to the judgment of Receiver

Hansen, who was appointed by and serves as an arm of the Court in this case.

### d. Logical Solution

The Asset Distribution Plan affords relief to the Vennes Creditors in a logical and pragmatic fashion. A district court properly exercises its discretion by approving a distribution plan that provides a logical and realistic approach to dividing receivership assets. Forex Asset Mgmt., 242 F.3d at 331 (finding "the district court used its discretion in a logical way to divide the money" held in receivership) (citation and internal quotation marks omitted); Credit Bancorp, 2000 WL 1752979, at *41 (approving distribution plan as "not only equitable but also realistic in its approach").

Here, the assets in the Vennes receivership are poised for a court-supervised distribution to victims the Government sought to protect when commencing this action. The Plan removes assets from the Vennes Defendants, alleged by the PCI Trustee to be net winners under the Ponzi scheme, and redistributes them to the Vennes Creditors, who are net losers under the scheme. Thus, the Asset Distribution plan serves essentially the same purpose as the PCI Trustee's clawback litigation, without the attendant costs and delay of such litigation.

### e. Time

The Asset Distribution Plan affords relief to the Vennes Creditors on a timely basis. Time is a critical consideration in determining whether to distribute receivership assets, particularly where a fraudulent scheme has "caused severe hardship to many investors . . . who entrusted virtually all of their assets" to the scheme. Credit Bancorp, 2000 WL 1752979, at *28. Many of the Vennes Creditors are elderly or in dire financial straits. For these individuals, justice delayed will have been justice denied.[17]

_____

[17] For example, one Vennes Creditor and his wife lost substantially all of their retirement savings in the Petters Ponzi scheme and were forced to sell their home, car, and most of their

23

## f.  Resolution Under Unique Circumstances

After carefully weighing the equitable considerations and  unique opportunities
presented, the Court finds that the most equitable and pragmatic method for distributing the
Vennes receivership assets is to approve the Asset Distribution Plan as proposed, but defer
distribution of a portion of the assets[18] until the PCI Trustee's clawback action against the
Vennes Defendants has been resolved.  The deferred distributions will be subject to future
review by this Court.  This resolution: 1) treats victims of the Ponzi scheme equitably, 2)
satisfies the receivership goals of protecting the class of persons for whom the receiverships
were intended to protect, 3) receives strong support from the Government and Receiver Hansen,
4) preserves assets for victims by avoiding costly litigation, 5) affords relief on a timely basis,
and 6) provides for fair and objective administration through a Court-supervised Liquidating
Trustee.

Undoubtedly, the parties may be less than satisfied with this balance.  However, "[w]hen
funds are limited, hard choices must be made."  <u>Byers</u>, 637 F. Supp. 2d at 176 (quoting <u>Official
Comm. of Unsecured Creditors of WorldCom, Inc. v. SEC</u>, 467 F.3d 73, 84 (2d Cir. 2006)).  "An
equitable plan is not necessarily a plan that everyone will like."  <u>Credit Bancorp</u>, 2000 WL
1752979, at *29.  No plan is capable of erasing the financial and emotional pain caused by this
massive fraudulent scheme, but the Plan as approved makes an equitable attempt to ease the

---

furniture and move into a small apartment.  The couple's sole source of income consists of
Social Security payments.  Both suffer from serious medical conditions, and their financial
situation has forced them to forego needed prescriptions, dental care, and eyeglasses.  <u>See
generally</u> Ross Decl.

[18] The terms concerning the timing and amount of the deferred distributions are set forth
in numbered Paragraph 7, below.

devastation of some victims without doing so entirely at the expense of others.

## IV.  CONCLUSION

Based on all the files, records and proceedings herein, IT IS HEREBY ORDERED THAT:

1.      The Palm Beach Trustee's Motion to Intervene for the Limited Purpose of Being Heard [Docket No. 1589] is GRANTED.

2.      Having been heard on the Joint Motion to Approve the Asset Distribution Plan, the Palm Beach Trustee is terminated as an intervening party in this action.

3.      The Joint Motion to Approve the Asset Distribution Plan [Docket No. 1652] is GRANTED as follows;

4.      The final amount of loss calculation and resulting pro rata share of recovery for each participating Creditor under the Asset Distribution Plan will be subject to reasonable verification by Receiver Hansen, and any disputes arising from such verification will be determined by the Court.

5.      Within thirty (30) days of the date of this Order, all assets currently in the possession and/or under the control of the United States and Receiver Hansen and included in the Asset Distribution Plan will be placed or retained in the possession and under the control of Receiver Hansen for purposes of sale or other disposition and distribution to the Creditors consistent with the provisions of the Asset Distribution Plan.  As he deems appropriate, Receiver Hansen may utilize the pro bono services of Carolyn Glass Anderson, Esq. of the Zimmerman Reed law firm in the process of sale or other disposition and distribution of the assets pursuant to the Asset Distribution Plan.  The fees and expenses of Receiver Hansen and the expenses associated with sales or other dispositions of the assets included in the Asset Distribution Plan

and distributions of the proceeds thereof will be paid from the proceeds of such sales or other dispositions or from funds currently in the receivership accounts.

6.      Distributions of the proceeds of such sales or other dispositions of the assets will be made promptly after receipt of sufficient proceeds to justify a distribution to the Creditors, with the exception of the deferred distributions required under Paragraph 7, below.  In addition, Receiver Hansen may make interim distributions to Vennes Creditors for reasons of hardship and need in amounts not to exceed five-thousand dollars ($5,000).

7.      Twenty percent (20%) of the proceeds from the sale or distribution of each asset devoted to Group B creditors under the Asset Distribution Plan shall be deferred and subject to possible reconsideration by the Court pending the outcome of the adversary proceeding (Case No. 10-ap-04532) against the Vennes Defendants commenced by the PCI Trustee in In re Petters Co., Inc., Case No. 08-45257 GFK  (Bankr. D. Minn.) (the "Adversary Proceeding").  Twenty percent (20%) of the distribution of assets to each of Home Federal and Matthew Miller and twenty percent (20%) of the distribution of assets to Private Bank, other than assets or proceeds relating to the Foxpoint, Sykes Loop, and Third Street properties, shall also be deferred and subject to possible reconsideration as described in the preceding sentence.  If an asset distributed to a Group A Creditor must first be sold in order to provide sufficient funds or assets to establish the twenty percent deferral, the Liquidating Trustee shall retain a twenty percent interest in the net proceeds from the sale of the asset.  Upon resolution of the Adversary Proceeding, the PCI Trustee, Receiver Hansen, the Vennes Defendants, or a Vennes Creditor may file a motion seeking distribution of some or all of the deferred proceeds.  If the Adversary Proceeding has not been resolved on or before December 31, 2011, Receiver Hansen, the Vennes Defendants, or a Vennes Creditor may file a motion seeking distribution of some or all of the deferred proceeds.

8.    The remaining eighty percent (80%) of the proceeds from the sale or distribution of the assets identified in Paragraph 7, above, shall be distributed as provided under the Asset Distribution Plan.

9.    The Vennes Defendants will promptly execute all documents necessary to assign to applicable Creditors any rights to real estate and other assets being disposed of under the Asset Distribution Plan.

10.    The Vennes Defendants will promptly execute all documents necessary to assign to applicable Vennes Creditors any rights to receive proceeds based on claims against Petters Company, Inc., Palm Beach Finance II, LP, and Palm Beach Finance Partners, or related entities in the bankruptcy proceedings of those entities, but nothing contained in such assignments will be construed to be an assignment or allocation to those Vennes Creditors of any liabilities relating to the transactions which give rise to the bankruptcy claims, including, without limitation, clawback and other such claims asserted against the Vennes Defendants.

11.    Receiver Hansen will file quarterly reports with the Court regarding progress in carrying out the Asset Distribution Plan and accounting for all related expenses until all assets have been sold or otherwise disposed of and distributed in accordance with the Asset Distribution Plan.

12.    The Court will retain jurisdiction over this matter until December 31, 2011, or such earlier or later time as the Asset Distribution Plan is fully accomplished.

13.    Except as provided in Paragraph 23 below, the stay entered by the Court in this matter by Order dated February 18, 2010, will remain in place until December 31, 2011, or such earlier or later time as the Asset Distribution Plan is fully accomplished.

14.    Any Vennes Creditors who/which have not entered into a Consent and Release

Agreement previously tendered to them and thereby have not agreed to participate in the Asset

Distribution Plan prior to the date of this Order may still do so and opt in to the Plan within

thirty (30) days of the date of this Order. Any such Vennes Creditor failing to do so within that

thirty (30)-day time period will thereafter forfeit the right to participate in the Asset Distribution

Plan and will receive no benefits under the Plan, and their forfeited pro rata share of such

benefits will be provided to the other Creditors of the same type under the terms of the Asset

Distribution Plan.

15.     Any Vennes Creditor who/which has entered into a Consent and Release

Agreement and now wishes to rescind their Consent and Release Agreement may do so within

thirty (30) days of the date of this Order. Any such Vennes Creditor failing to do so within that

thirty (30)-day time period will thereafter be deemed to have consented to participation in the

Asset Distribution Plan under the terms of the Asset Distribution Plan and of this Order.

16.     The Vennes receivership established by the Court pursuant to 18 U.S.C. § 1345

and by Orders dated October 16, 2008, and February 18, 2010, will automatically terminate as of

the date of this Order, and Receiver Hansen will become the Liquidating Trustee and will remain

under the supervision of the Court until the Asset Distribution Plan is fully accomplished. To

the extent the pro bono services of Carolyn Glass Anderson, Esq. are utilized by the Liquidating

Trustee in accordance with this Order, she will become an Assistant Liquidating Trustee, and

Ms. Anderson will remain under the supervision of the Liquidating Trustee and the Court until

the Asset Distribution Plan is fully accomplished. Notwithstanding the termination of the

receivership, all Vennes Defendants other than Mr. Vennes individually will remain under the

control and direction of the Liquidating Trustee only for the limited purpose and to the extent

necessary to accomplish the required transfer or liquidation of the assets subject to the Asset

Distribution Plan and will be released from such limited control and direction when that required

transfer or liquidation is accomplished. The release will be accomplished by written notice

provided by the Liquidating Trustee and filed with the Court or upon the Court's earlier order

upon the motion of the Liquidating Trustee or Mr. Vennes.

17.     Pursuant to the inherent supervisory powers of the Court, the Liquidating Trustee

is directed, authorized, and given all necessary power to effectuate the Asset Distribution Plan

approved by this Order. The Liquidating Trustee will maintain accurate records of all receipts

obtained and expenditures made in carrying out the Asset Distribution Plan, and will use his best

efforts to utilize and maximize the assets of the Vennes Defendants as provided in the Asset

Distribution Plan and as ordered by this Court. In carrying out his responsibilities as Liquidating

Trustee, he will coordinate with representatives of the United States Attorney's Office and

counsel for the Vennes Defendants to ensure that the Asset Distribution Plan is accomplished

efficiently, effectively, and for the greatest possible benefit of the Vennes Creditors. The

Liquidating Trustee will have the power and authority to perform any other act necessary or

desirable to accomplish the foregoing, including but not limited to the selection, engagement,

and employment of any other professionals necessary to effectuate the Asset Distribution Plan.

The requirement of Receiver Hansen for a $100,000 bond filed with the Clerk of this Court as

provided in the Court's previous Orders will continue as a requirement for the Liquidating

Trustee until the Asset Distribution Plan is completed.

18.     The Liquidating Trustee and all personnel hired by the Liquidating Trustee are

entitled to reasonable compensation for the performance of duties pursuant to the Asset

Distribution Plan and for actual and out-of-pocket expenses incurred by them, from the proceeds

of the liquidated assets or the receivership accounts. The Liquidating Trustee shall apply to the

Court for prior approval of any payment of reasonable attorney fees or other professional fees or expenses incurred by the Liquidating Trustee or his hired personnel in performing the duties required under the Asset Distribution Plan. The application shall be supported by billing statements to be reviewed by the Court in camera. The $500 per hour billing rate limit and the prohibition on billing rate increases established in this case shall continue to apply to professional fees paid to the Liquidating Trustee and his retained personnel.

19.     Attorney fees or other professional fees or expenses incurred by the Liquidating Trustee or his hired personnel with respect to the assets or proceeds distributed to Group A Creditors and expenses incurred to maintain those assets shall be paid by the recipients of those assets or proceeds, either directly or by deduction from the proceeds that are distributed, at the discretion of the Liquidating Trustee. The $500 per hour billing rate limit and the prohibition on billing rate increases established in this case shall apply to professional fees identified in this Paragraph.

20.     Mr. Vennes and his affiliated entities, as well as all Vennes Creditors and all third parties (including financial institutions) holding assets of the Vennes Defendants that are included in the Asset Distribution Plan, are ordered and directed to cooperate fully with the Liquidating Trustee in his efforts to carry out the Asset Distribution Plan approved by this Order. As to third parties, this includes all obligations set out in Sections II.D through F of this Court's Orders dated October 16, 2008, and February 18, 2010.

21.     Mr. Vennes will receive from the Liquidating Trustee reasonable living expenses for one year totaling $62,400, which sum is consistent with the living expenses provided during the § 1345 Vennes receivership in this matter. Upon request, Mr. Vennes will assist in the efforts of the Liquidating Trustee in the sales or other dispositions of assets and the carrying out

of the Asset Distribution Plan.  Reasonable expenses incurred by Mr. Vennes in such efforts at the request of, and previously approved by, the Liquidating Trustee will be reimbursed to him.

22.     The Liquidating Trustee shall apply to the Court for prior approval of any payment of reasonable attorney fees or other professional fees or expenses incurred by the Vennes Defendants and sought to be paid from funds identified in the Asset Distribution Plan as being held in a trust account by Defendant Vennes's counsel.  The application shall be supported by billing statements to be reviewed by the Court in camera.  The $500 per hour billing rate limit and the prohibition on billing rate increases established in this case shall continue to apply to legal and professional fees that are paid from funds identified in the Asset Distribution Plan as being held in a trust account by Defendant Vennes's counsel.

23.     The Court hereby bars and prohibits the Receiver in the Petters receivership and the PCI Trustee from seeking to satisfy, directly or indirectly, any future judgment obtained against any of the Vennes Defendants, in any adversary action in the PCI bankruptcy or otherwise, from or with any of the assets designated for distribution to the Creditors under the Asset Distribution Plan that are not subject to the twenty percent (20%) deferral under Paragraph 7 of this Order.  However, nothing in this Order otherwise prevents or precludes the Receiver in the Petters receivership or the PCI Trustee from proceeding with such adversary actions against any of the Vennes Defendants, and the stay entered by the Court in this matter by Order dated February 18, 2010, will be lifted only for that purpose as of May 1, 2011.

IT IS SO ORDERED.


                                        BY THE COURT:


                                        _____s/Ann D. Montgomery_____
                                        ANN D. MONTGOMERY
                                        U.S. DISTRICT JUDGE

Dated:  January 25, 2011.