**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

United States of America,

        Plaintiff,

  v.

Thomas Joseph Petters; Petters Company,
Inc., a/k/a PCI; Petters Group Worldwide, LLC;
Deanna Coleman, a/k/a Deanna Munson;
Robert White; James Wehmhoff; Larry
Reynolds and/or d/b/a Nationwide International
Resources, a/k/a NIR; Michael Catain and/or d/b/a
Enchanted Family Buying Company;
Frank E. Vennes, Jr., and/or d/b/a Metro Gem
Finance, Metro Gem, Inc., Grace Offerings
of Florida, LLC, Metro Property Financing,
LLC, 38 E. Robinson, LLC, 55 E. Pine, LLC,
Orlando Rental Pool, LLC, 100 Pine Street
Property, LLC, Orange Street Tower, LLC,
Cornerstone Rental Pool, LLC, 2 South
Orange Avenue, LLC, Hope Commons, LLC, and
Metro Gold, Inc.;

        Defendants,

Douglas A. Kelley,

        Receiver,

Gary Hansen,

        Liquidating Trustee.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 08-5348 ADM/JSM

___

Christine N. Lindblad, Esq., David B. Galle, Esq., Marie L. van Uitert, Esq., and Michelle R. Schjodt, Esq., Oppenheimer Wolff & Donnelly LLP, Minneapolis, MN, on behalf of Crown Bank.

Mark D. Larsen, Esq., Daryle L. Uphoff, Esq., James A. Lodoen, Esq., Kirstin D. Kanski, Esq., and Adam C. Ballinger, Esq., Lindquist & Vennum PLLP, Minneapolis, MN, on behalf of Receiver Douglas A. Kelley.

James S. Alexander, Esq., Assistant United States Attorney, Minneapolis, MN, on behalf of

Plaintiff United States of America.

_____

## I. INTRODUCTION

On June 7, 2013, the undersigned United States District Judge heard oral argument on Crown Bank's Motion to Intervene for a Limited Purpose to Modify or Lift the Stay to Permit Crown Bank to Enforce its Rights Against Thomas Petters [Docket No. 2486]. Crown Bank requests permission to intervene and obtain relief from the litigation stay in this receivership case so that it may foreclose on a mortgage on property located at 15823 50th Avenue North, Plymouth, Minnesota (the "Plymouth Property") and recover net sales proceeds held in escrow from the sale of property located at 320 Elk Circle, Keystone, Colorado (the "Keystone Property"). Crown Bank argues it is entitled to relief because it holds valid security interests in the Properties and the security interests have been judicially determined not to be subject to forfeiture in the criminal case of United States v. Petters, 08-364 RHK/AJB (D. Minn.) ("Criminal Case").

Receiver Douglas A. Kelley (the "Receiver") opposes the Motion, and Plaintiff United States of America (the "Government") joins in the Receiver's opposition. The Receiver and Government argue the Motion is premature because Crown Bank's security interests are potentially avoidable by the Receiver as fraudulent transfers, and thus the stay of actions against Receivership assets should remain in effect against Crown Bank until the Receiver's fraudulent transfer claim has been resolved. For the reasons set forth below, Crown Bank's Motion is denied.

## II. BACKGROUND

Crown Bank loaned money to Defendant Thomas J. Petters from 2002 to 2008 through an unsecured line of credit that was renewed annually. United States v. Petters, Crim. No. 08-364, 2013 WL 269028, at *2 (D. Minn. Jan. 24, 2013). The credit line was renewed on September 9, 2008, at which time the balance due was $2,250,000. Id. Approximately two weeks later, on September 24, 2008, law enforcement officials raided the headquarters of Petters Group Worldwide, Inc. ("PGW"), a company owned by Petters, on suspicion of a multi-billion dollar fraud. Id. News of the raid caused Crown Bank to become concerned that its line of credit was unsecured and that others might make a claim to Petters' personal assets. Id. The day after the raid, an executive from Crown Bank traveled to PGW and obtained from Petters a deed of trust and mortgage on the Plymouth and Keystone Properties, respectively, to secure the line of credit. Id. at *3.

On October 2, 2008, the Government filed this civil action under the Fraud Injunction Statute, 18 U.S.C. § 1345, to freeze and preserve assets owned by Petters and others in the event that contemporaneously-filed criminal actions resulted in convictions. See Compl. [Docket No. 1]. The Defendants stipulated to a receivership over all of their assets, and the Receiver was appointed to "sue for, collect, receive, take in possession, hold, liquidate, or sell and manage all assets of Defendants . . . ." Second Am. Order for Entry of Prelim. Inj., Appointment of Receiver, Other Equitable Relief [Docket No. 127] ("Receivership Order") at 13. The Receivership Order includes a stay enjoining creditors from, among other things, "enforcing any lien on any asset of Defendants, taking or attempting to take possession, custody or control of any asset of Defendants; or attempting to foreclose, forfeit, alter, or terminate any interest in any

asset of Defendants . . . ." Id. at 19.

Petters was found guilty by a jury in December 2009 of orchestrating a massive Ponzi scheme and was sentenced to fifty years in prison and a personal money judgment of $3,522,880,614.10. See Sentencing J., April 8, 2010 [Criminal Case Docket No. 400]. Judge Richard H. Kyle, who presided over the Criminal Case, declined to order restitution because the need for restitution was outweighed by the significant burden it would impose on the Court. See United States v. Petters, Crim. No. 08-364, 2010 WL 2291486, at *3-5 (D. Minn. June 3, 2010). Instead, victims were to obtain recovery through the bankruptcy process[1] or the remission of forfeited assets. Id. at *4-5.

In March 2010, a Preliminary Order of Forfeiture that included the Plymouth Property and Keystone Property sale proceeds was entered in the Criminal Case.[2] See Prelim. Order Forfeiture, March 26, 2010 [Criminal Case Docket No. 395]. Thereafter, Crown Bank filed petitions pursuant to 21 U.S.C. § 853(n), seeking to have the Plymouth and Keystone Properties removed from the Preliminary Order of Forfeiture. See Verified Pet. Crown Bank (Keystone Property), Oct. 20, 2011 [Criminal Case Docket No. 503]; Verified Pet. Crown Bank (Plymouth Property), October 20, 2011 [Criminal Case Docket No. 505]. Crown Bank argued its security interests in the Plymouth and Keystone Properties should be excluded from forfeiture because it had acquired its interests as a bona fide purchaser for value.

---

[1] In the wake of the Ponzi scheme collapse, several Petters-owned entities, including PGW, Petters Company, Inc., and Polaroid Corporation, Inc., filed for bankruptcy protection.

[2] This Court approved the Receiver's sale of the Keystone Property in March 2009 for $1,510,000. See Order, March 11, 2009 [Docket No. 214]. The net sale proceeds of $1,408,737 are currently held in escrow. See id. ¶ 6.

On January 24, 2013, after submission of cross-motions for summary judgment by the Government and Crown Bank, Judge Kyle amended the Preliminary Order of Forfeiture to exclude Crown Bank's interests in the Keystone and Plymouth Properties. Petters, 2013 WL 269028, at *7. Judge Kyle held that Crown Bank has shown by a preponderance of the evidence "that it was reasonably without cause to believe that the [Properties were] subject to forfeiture when it acquired its interests therein." Id. at *7 (internal quotation marks omitted).

Thereafter, Crown Bank asked the Receiver and Government to release from the Receivership the Plymouth Property and the sale proceeds from the Keystone Property. The Receiver and Government refused, arguing Crown Bank's security interests in the Properties remain subject to challenge by the Receiver as fraudulent transfers under the Minnesota Uniform Fraudulent Transfer Act ("MUFTA"), Minn. Stat. § 513.44. In response, Crown Bank filed this Motion to lift or modify the stay of actions against Receivership assets.

At the time this Motion was orally argued, the period for appealing Judge Kyle's ruling in the forfeiture proceedings had not yet expired, and the Receiver had not filed a fraudulent transfer action against Crown Bank. Since that time, the appeal period in the forfeiture proceedings expired without an appeal by the Government. On July 3, 2013, the Receiver filed a fraudulent transfer suit (the "Fraudulent Transfer Claim") against Crown Bank. See Kelley v. Crown Bank, Civ. No. 13-1745 RHK/SER (D. Minn). The Fraudulent Transfer Claim is currently pending before Judge Kyle. See id.

Petters has not performed on the Crown Bank line of credit since his incarceration in October 2008. Aff. Kevin Howk [Docket No. 2489] ("Howk Aff.") ¶ 9. The amount of principal and outstanding interest owing on the loan as of April 30, 2013 is $3,003,629.92, with

5

per diem interest of $463.63 thereafter.  Id. ¶ 7.  The net proceeds held in escrow from the sale of the Keystone Property total $1,408,737.  The Plymouth Property is currently listed for sale by the U.S. Marshal for $514,900.  Id. ¶ 11, Ex. E.  Taxes have not been paid on the Plymouth Property since it was seized in 2008, resulting in a total of $48,566.74 in delinquent taxes and interest owed as of May 1, 2013.  Aff. Tyler K. Olson [Docket No. 2488] ¶¶ 2-5.

### III.  DISCUSSION

#### A.  Intervention

The Receiver and Government do not specifically address Crown Bank's request to intervene, and Crown Bank will be allowed to intervene for the limited purpose of seeking relief from the litigation stay.

#### B.  Relief From Stay

In determining whether to grant relief from the stay in a receivership case, a court considers the following factors: "(1) whether refusing to lift the stay genuinely preserves the status quo or whether the [movant] will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the [movant's] underlying claim."  S.E.C. v. Wencke, 742 F.2d 1230, 1231 (9th Cir. 1984).  Crown Bank argues the Wencke factors favor granting relief from the stay, and that the Receiver's after-the-fact filing of the Fraudulent Transfer Claim is not a sufficient basis to defeat Crown Bank's Motion.

##### 1. Status Quo or Substantial Injury

Crown Bank argues the stay no longer preserves the status quo because it prevents Crown Bank from exercising its right to protect assets that Judge Kyle has already determined the

6

Government does not have the right to forfeit. Crown Bank also contends it will suffer substantial injury if it is unable to proceed, because past due taxes, including penalties and interest of approximately $14,000, continue to accrue against the Plymouth Property and reduce its value.

The status quo is best maintained by continuing the litigation stay so that Receivership property is not alienated before the Receiver's Fraudulent Transfer Claim has been resolved by Judge Kyle.

Until that claim is resolved, it is in the best interest of all parties to sell the Plymouth Property and place the sale proceeds into escrow to prevent the continued accrual of taxes and to avoid any additional diminishment in its value. At oral argument, the parties informed the Court that they had attempted to sell the Plymouth Property, but the sale process became stalled by a disagreement over whether the listing price should be reduced. The parties are encouraged to seek the assistance of an independent third party such as a realtor, appraiser, or magistrate judge to resolve the dispute over the listing price and keep the sale process moving forward. No party to this litigation benefits from the reduction in the Property's value.

**2. Stage of the Receivership**

Crown Bank contends the Receivership has reached a point where it should be allowed to recover and foreclose on its security interests because: (1) the Properties were taken into the Receivership more than four years ago; (2) the Properties have since been transferred from the Receivership to the U.S. Marshal (Plymouth Property) and to an escrow account (Keystone Property); and (3) the forfeiture action has been resolved in Crown Bank's favor. Crown Bank further argues the Receiver's filing of a Fraudulent Transfer Claim at this stage does not justify

continuing the stay against Crown Bank, because the Fraudulent Transfer Claim is essentially the same as the Government's forfeiture claim, and the Receiver chose not to participate in the lengthy forfeiture proceedings.

The Receiver responds that Judge Kyle did not order the Properties to be surrendered to Crown Bank in the forfeiture proceedings, and they therefore remain property of the Receivership estate. The Receiver also contends the Fraudulent Transfer Claim differs from the Government's forfeiture action because the standard for establishing the "bona fide purchaser" defense under 21 U.S.C. § 853(n)(6) is different than the "good faith purchaser" defense under MUFTA. More specifically, the Receiver argues the relevant inquiry in the forfeiture proceedings was whether Crown Bank had reasonable cause to believe the property was subject to forfeiture at the time it acquired its interests, whereas the relevant inquiry under MUFTA is whether Crown Bank was on notice of Petters' insolvency or fraud and attempted to obtain an advantage to the detriment of Petters' other creditors.

The parties' arguments as to the whether the Receiver's Fraudulent Transfer Claim is identical to or distinct from the forfeiture claim are matters for Judge Kyle to decide in the Fraudulent Transfer Claim and will not be evaluated here.[3] This Court has not issued an order releasing the Properties from the Receivership estate—they remain subject to the Receivership Order. Lifting the stay to permit Crown Bank to enforce its rights in the Properties is premature while those rights are being actively challenged by the Receiver.

---

[3] On July 25, 2013, Crown Bank filed a motion to dismiss the Fraudulent Transfer Claim with prejudice. See Kelley v. Crown Bank, Civ. No. 13-1745 RHK/SER [Fraudulent Transfer Claim Docket No. 6]. The motion is scheduled for argument before Judge Kyle on October 11, 2013. Id.

### 3. Merits of Underlying Claim

As stated earlier, the merits of Crown Bank and the Receiver's claims to the Properties will be determined by Judge Kyle in the pending Fraudulent Transfer Claim. Pending that determination, the stay will remain in place. Denial of Crown Bank's Motion is without prejudice, however, and Crown Bank may renew its request at a future date as the circumstances warrant.

### IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Crown Bank's Motion to Intervene for a Limited Purpose to Modify or Lift the Stay to Permit Crown Bank to Enforce its Rights Against Thomas Petters [Docket No. 2486] is **DENIED**.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: July 26, 2013