# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

    v.

Thomas Joseph Petters; Petters Company,
Inc., a/k/a PCI; Petters Group Worldwide, LLC;
Deanna Coleman, a/k/a Deanna Munson;
Robert White; James Wehmhoff; Larry
Reynolds and/or d/b/a Nationwide International
Resources, a/k/a NIR; Michael Catain and/or d/b/a
Enchanted Family Buying Company;
Frank E. Vennes, Jr., and/or d/b/a Metro Gem
Finance, Metro Gem, Inc., Grace Offerings
of Florida, LLC, Metro Property Financing,
LLC, 38 E. Robinson, LLC, 55 E. Pine, LLC,
Orlando Rental Pool, LLC, 100 Pine Street
Property, LLC, Orange Street Tower, LLC,
Cornerstone Rental Pool, LLC, 2 South
Orange Avenue, LLC, Hope Commons, LLC, and
Metro Gold, Inc.;

        Defendants,

Douglas A. Kelley,

        Receiver,

Gary Hansen,

        Liquidating Trustee.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 08-5348 ADM/JSM

_____

Nancy Gertner, Esq., Cambridge, MA, and Patrick H. O'Neill, Jr., Esq., Larson King, LLP, St.
Paul, MN, on behalf of Yorkville Investment I, L.L.C.

George H. Singer, Esq., Lindquist & Vennum LLP, Minneapolis, MN, on behalf of Receiver
Douglas A. Kelley.

Adam A. Gillette, Esq., Fruth, Jamison & Elsass, PLLC, Minneapolis, MN, on behalf of Chapter 7 Trustee John R. Stoebner, Chapter 11 Trustee Douglas A. Kelley, and Chapter 7 Trustee Randall L. Seaver.

James S. Alexander, Esq., Assistant United States Attorney, Minneapolis, MN, on behalf of Plaintiff United States of America.

---

## I.  INTRODUCTION

On August 4, 2015, the undersigned United States District Judge heard oral argument on the Motion to Intervene [Docket No. 2710] and Motion for Relief from Litigation Stay Against Thomas J. Petters [Docket No. 2714] filed by Ritchie Capital Management, L.L.C.; Ritchie Special Credit Investments, Ltd.; Rhone Holdings II, Ltd.; and Ritchie Capital Management Ltd.'s (collectively, "Ritchie"); the Motion for Relief from Litigation Stay Against Thomas J. Petters and Motion to Intervene  [Docket No. 2757] filed by Yorkville Investment I, L.L.C. ("Yorkville"); and the Motion to Intervene [Docket No. 2766] filed by John R. Stoebner, in his capacity as the Chapter 7 Trustee of Polaroid Corporation, et al., Douglas A. Kelley, in his capacity as the Chapter 11 Trustee of Petters Company Inc., et al., and Randall L. Seaver, in his capacity as the Chapter 7 Trustee of Petters Capital, LLC (collectively, the "Trustees").

Ritchie and Yorkville (collectively, the "Ritchie Parties") seek to intervene for the limited purpose of allowing relief from the litigation stay in this receivership case to enable them to obtain a default judgment against Receivership Defendant Thomas J. Petters ("Petters").

Receiver Douglas A. Kelley (the "Receiver") and Plaintiff United States of America (the "Government") oppose the Ritchie Parties' requests to lift the litigation stay.  The requests to lift the stay are also opposed by the Trustees of the bankruptcy estates for Polaroid Corporation ("Polaroid"), Petters Company Inc. ("PCI"), and Petters Capital, LLC ("Petters Capital"), entities

that had been directly or indirectly owned by Petters.  The Trustees seek to intervene for the

limited purpose of objecting to the Ritchie Parties' motions to lift the stay.  The Ritchie Parties

oppose the Trustees' request to intervene.

For the reasons set forth below, Ritchie's Motion to Intervene is granted, Ritchie's

Motion for Relief from the Litigation Stay is denied, Yorkville's Motion is granted with respect

to the request to intervene and denied with respect to the request to lift the litigation stay, and the

Trustees' Motion to Intervene is granted.

## II.  BACKGROUND

### A.  Ritchie Parties Suffer Losses in Petters' Ponzi Scheme

From February through May 2008, the Ritchie Parties made a series of loans totaling

$189 million to PCI and Petters Group Worldwide, LLC ("PGW"), entities owned by Petters.

See Promissory Notes [Docket No. 2716, Attach. 2] Exs. A-E.  Like many of Petters' investors

and creditors, the Ritchie Parties suffered severe losses when it was discovered in September

2008 that Petters was operating a $3.8 billion Ponzi scheme.[1]

### B.  Receivership and Bankruptcy Estates Created

On October 2, 2008, contemporaneous with the criminal fraud action, the Government

filed this civil action under the Fraud Injunction Statute, 18 U.S.C. § 1345, to freeze and

preserve assets owned by Petters and others.  See Compl. [Docket No. 1].  The named

defendants stipulated to a receivership over all of their assets, and the Receiver was appointed to

---

[1] As part of his scheme, Petters induced investors to provide funds to purportedly finance purchases of electronic consumer goods from wholesalers for resale to large retailers.  These electronic goods did not exist.  Petters used the investments from later investors to repay earlier investors their principal, plus an amount Petters represented as profit from the transaction.

"sue for, collect, receive, take in possession, hold, liquidate, or sell and manage all assets of Defendants . . . ." Second Am. Order for Entry of Prelim. Inj., Appointment of Receiver, Other Equitable Relief [Docket No. 127] ("Receivership Order") at 13. The Receivership Order includes a stay enjoining creditors from, among other things, "enforcing any lien on any asset of Defendants, taking or attempting to take possession, custody or control of any asset of Defendants; or attempting to foreclose, forfeit, alter, or terminate any interest in any asset of Defendants . . . ." Id. at 19.

The Receiver placed insolvent PCI and PGW into bankruptcy and was appointed Trustee of those bankruptcy estates. See In re Petters Co., Inc., No. 08-45257 (Bankr. D. Minn.) ("PCI/PGW Bankruptcy Case"). Among the many other businesses owned directly or indirectly by Petters were Polaroid and Petters Capital, entities now also in bankruptcy. John R. Stoebner serves as the Chapter 7 trustee for Polaroid, while Randall L. Seaver serves as the Chapter 7 trustee for Petters Capital. See In re Polaroid Corp., No. 08-46617 (Bankr. D. Minn.) ("Polaroid Bankruptcy Case"); In re Petters Capital, LLC, No. 09-43847 (Bankr. D. Minn.) ("Petters Capital Bankruptcy Case").

## C.  Petters Convicted

Petters was found guilty by a jury in December 2009 and was sentenced to fifty years in prison. See United States v. Petters, No. 08-364 (D. Minn.) ("Criminal Case"), Sentencing J., April 8, 2010 [Criminal Case Docket No. 400]. Petters' sentence also included a personal money judgment of $3,522,880,614.10. Id. Judge Richard H. Kyle, who presided over the criminal case, declined to order restitution and held that Petters' victims may seek recovery through the remission of forfeited assets and the bankruptcy process. See  United States v.

4

Petters, No. 08-364, 2010 WL 2291486, at *3-5 (D. Minn. June 3, 2010).

**D.  Government, Receiver, and Trustees Coordinate Recovery for Victims**

In August 2010, the Government, Receiver, and Trustees for the PCI and Polaroid bankruptcy estates entered into a Coordination Agreement to resolve their competing claims to property that was subject to forfeiture and that belonged to the Receivership and bankruptcy estates.  See Uphoff Decl. [Docket No. 1351] Ex. A ("Coordination Agreement").  The parties to the Coordination Agreement recognized that a "significant overlap of identity" existed among the creditors and victims of the Receivership and bankruptcy estates, and that competing litigation would diminish the recovery for victims and creditors, and would unduly delay the distribution of assets.  Id. at 3.  The Coordination Agreement establishes a general plan for the Government, Receiver, and Trustees to coordinate their efforts to recover and distribute property belonging to the Receivership and bankruptcy estates.  Id. at 4–10.  The goal of the collective process established under the Coordination Agreement is to maximize recovery to victims and creditors of the fraudulent scheme, minimize Receivership and bankruptcy expenses, and provide for the fair and orderly distribution of recoveries to victims and creditors through bankruptcy and remission.  See id. at 3–10.

**E.  Receiver and Trustees' Claims against JPMorgan Chase & Co.**

On December 29, 2010, the Receiver commenced litigation against JPMorgan Chase & Co. ("JPMC").  See Kelley v. J.P. Morgan Chase & Co., No. 10-cv-4999 (D. Minn.) Compl. [Docket No. 1].  The litigation includes a claim for the recovery of funds that had been held in personal investment accounts that Petters had with JPMC.  Id. ¶ 17.  The investment accounts had been pledged by Petters as collateral for an increase in a credit line for PGW.  Id. ¶ 16.  On

September 30, 2008, approximately on week after federal agents executed a search warrant on

Petters' offices, JPMC began liquidating more than $20 million from Petters' investment

accounts.  Id. ¶ 17.  The Receiver seeks to recover these funds for the benefit of the Receivership

estate.  Id.

      In addition to the Receiver's action against JPMC, the Trustees have jointly filed

adversary proceedings against JPMC in bankruptcy court in the PCI/PGW, Polaroid, and Petters

Capital Bankruptcy Cases.  See Kelley, Trustee v. JPMorgan Chase & Co., Case Nos. 10-4443,

10-4445, 10-4446 (Bankr. D. Minn).  The Trustees seek to recover more than $250 million that

JPMC received in connection with Petters' acquisition of Polaroid in 2005.  The adversary

proceedings were filed jointly because each bankruptcy estate has potential claims to the funds

transferred to JPMC.  The Trustees allege that all of the funds Petters used to purchase Polaroid

were derived from the Ponzi scheme or Ponzi scheme investors.  The Trustees also seek to

recover funds transferred to JPMC in connection with the repayment of $185 million in loans

that JPMC made to Polaroid immediately after the acquisition.  In addition to the joint adversary

proceedings, the PCI/PGW Trustee has brought a separate adversary proceeding against JPMC,

seeking to recover $300,000 in allegedly preferential transfers that JPMC received in connection

with the credit line JPMC issued to PGW.  See Kelley, Trustee v. JPMorgan Chase & Co., No.

10-4446 (Bankr. D. Minn).

      Some of the claims in the Trustees' actions against JPMC are also at issue in the

Receiver's action.  As a result, the parties to the Receiver's action have stipulated to a stay of

that action pending resolution of the Trustee's litigation in bankruptcy court.

**F. Ritchie Parties' Claims Against JPMC and Other Third Parties**

The Ritchie Parties have also filed a suit against JPMC. See Ritchie Capital Mgmt., L.L.C. v. JPMorgan Chase & Co., No. 14-cv-4786 (D. Minn.). The action is one of seven lawsuits that the Ritchie Parties have filed against third parties whom the Ritchie Parties allege share responsibility for losses the Ritchie Parties sustained as a result of their loans to Petters.[2] Among the allegations in each of the seven actions, the Ritchie Parties allege claims for aiding and abetting fraudulent inducement and civil conspiracy to commit fraudulent inducement.

The Ritchie Parties' suit against JPMC was filed in January 2014 and seeks to recover from JPMC the funds that the Ritchie Parties advanced to PCI. See generally Jorissen Decl. [Docket No. 2775] Ex. C (Complaint in Ritchie Capital Mgmt., L.L.C. v. JPMorgan Chase & Co., No. 14-cv-4786 (D. Minn.)). The Ritchie Parties allege that their funds were used to repay JPMC for the Polaroid loan. See id. ¶¶ 5, 7–11, 177. They also allege that the assets in Petters' investment account that were liquidated by JPMC on or after September 30, 2008 were assets that the Ritchie Parties had loaned to Petters. See id. ¶¶ 291, 295, 298, 302.

The Ritchie Parties' suit against JPMC was originally filed in New York state court,

---

[2] The Ritchie Parties' other actions, most of which have been dismissed or stayed, include: Ritchie Capital Mgmt., L.L.C. v. Costco Wholesale Corp., No. 14-cv-4819 (S.D.N.Y.) (pending); Ritchie Capital Mgmt., L.L.C. v. U.S. Bank, N.A., No. 15-2092 (D. Minn.) (dismissed based on statute of limitations and failure to state a claim); Ritchie Capital Mgmt., L.L.C. v. Gen. Elec. Capital Corp., No. 14-cv-8623 (S.D.N.Y.) (dismissed for failure to state claim); Ritchie Capital Mgmt., L.L.C. v. Fredrickson & Byron, P.A., No. 1-14-2067, 2015 WL 1445681 (Ill. Ct. App. March 27, 2015) (affirming dismissal of complaint); Ritchie Capital Mgmt., L.L.C. v. Opportunity Finance, L.L.C., No. 27-CV-13-17424, 2015 WL 787747 (Minn. Dist. Ct. Jan 15, 2015) (holding complaint subject to automatic stay under Bankruptcy Code because claims alleged by Ritchie are derivative of claims alleged by PCI Bankruptcy Trustee); Ritchie Capital Mgmt., L.L.C. v. BMO Harris Bank, N.A., No. 15-cv-1876 (D. Minn.) (pending).

removed to federal court, and then transferred *sua sponte* to this district, where it was assigned to

the Honorable Donovan W. Frank.  JPMC moved to refer the action to bankruptcy court based

on the ongoing Petters-related bankruptcy proceedings, and the Trustees moved to intervene for

the purpose of joining JPMC's motion.  Judge Frank granted the Trustees' request to intervene,

holding that "[t]he Trustees have a direct, substantial, and legally protectable interest in the

claims being asserted and litigated by [the Ritchie Parties] because the parties are at least

partially seeking recovery of the same funds. . . .  It may be that the funds JPMorgan received

will be recovered by one party at the expense of another."  Ritchie Capital Mgmt., L.L.C. v.

JPMorgan Chase &Co., Civ. No. 14-4786 (D. Minn.) [Docket No. 157] ("DWF Order").  Judge

Frank also referred the case to bankruptcy court based on the "interest in uniform administration

of all matters that implicate the Petters related bankruptcies."  Id. at 14.  The case remains

pending in the bankruptcy court of this district.

**G.  Ritchie Parties' Lawsuit Against Petters**

        In addition to the Ritchie Parties' litigation against third parties, the Ritchie Parties

served, but did not file, a complaint against Petters on September 18, 2014 in Minnesota state

court, asserting claims for fraudulent inducement and breach of contract (the "Petters Action").

The complaint was served to toll the statute of limitations.

**H.  Lift Stay Motion**

        The Ritchie Parties now move for relief from the litigation stay in the Receivership for

the purpose of obtaining a default judgment against Petters in the Petters Action.  The Ritchie

Parties contend they will not use the judgment to obtain Receivership assets.  Instead, they seek

the judgment only to establish essential elements of the Ritchie Parties' claims against third

parties for aiding and abetting Petters' fraud.  The Ritchie Parties contend that proving these causes of action require them to establish that Petters fraudulently induced the Ritchie Parties to make the loans, and then further prove that the third party defendants materially assisted with that fraud.  Thus, the Ritchie Parties argue that a default judgment establishing that Petters fraudulently induced the Ritchie Parties is essential to their claims against third parties. Additionally, the Ritchie Parties' lawsuits against some of the third parties include fraudulent transfer claims.  The Ritchie Parties contend that to prove those claims they must establish that they were creditors of Petters when the transfers were made.  Therefore, the Ritchie Parties argue that a default judgment against Petters is necessary to establish the elements of these claims. The Ritchie Parties further argue that because they would use a default judgment against Petters solely for the purpose of pursuing claims against third parties, the Receivership will not be impacted.

The Receiver and Government oppose the Ritchie Parties' request to lift the stay.  They argue that the Ritchie Parties' stated purpose in lifting the stay will interfere with receivership claims and assets because the Ritchie Parties are seeking to recover the same funds from JPMC as those sought by the Receiver and the Trustees.  The Receiver and Government argue that the interfering litigation, and the concomitant increased expense of monitoring the Ritchie Parties' efforts to secure the Receiver's sources of recovery for themselves, will negatively impact the Receivership.  Additionally, the Receiver and Government contend that the purpose behind the Ritchie Parties' request to lift the stay undermines the Receivership goals of maximizing the recovery of assets for distribution to victims of the Petters fraud scheme in a fair and orderly process.

9

The Trustees similarly argue that the Ritchie Parties' lawsuit against JPMC interferes with their claims against JPMC in the bankruptcy proceedings. The Trustees contend that the Ritchie Parties are attempting to bypass the collective process established in the Receivership and bankruptcy cases, and to obtain recovery for the Ritchie Parties' sole benefit to the exclusion of all other victims and creditors.

## III. DISCUSSION

### A. Intervention

#### 1. The Ritchie Parties

No party has opposed the Ritchie Parties' requests to intervene for the purpose of lifting the litigation stay, and this Court has granted similar, unopposed requests in the past. See, e.g., Docket Nos. 143, 1762, 2187, 2532, 2598. Therefore, the Ritchie Parties will be allowed to intervene for the limited purpose of seeking relief from the litigation stay.

#### 2. Bankruptcy Trustees

The Trustees move to intervene as a matter of right under Federal Rule of Civil Procedure 24(a)(2) and for permissive intervention under Federal Rule of Civil Procedure 24(b). The Trustees argue that they are entitled to intervene because Ritchie's Parties' proceedings against Petters have a potentially adverse effect on the bankruptcy proceedings. The Ritchie Parties oppose the Trustees' intervention, arguing the Trustees' interests will not be impaired because they can enforce their rights in bankruptcy court.

A party seeking intervention as a matter of right under Rule 24(a)(2) must establish that: "(1) it has a recognized interest in the subject matter of the litigation; (2) the interest might be impaired by the disposition of the case; and (3) the interest will not be adequately protected by

the existing parties." <u>S. D. ex rel Barnett v. U.S. Dep't of Interior</u>, 317 F.3d 783, 785 (8th Cir. 2003).[3]

All three elements are satisfied here.  First, the Trustees have a recognized interest in the subject matter of this litigation because the Ritchie Parties seek to use a judgment against Petters to pursue recovery of the same transfers that the Trustees are seeking to recover from JPMC. Second, the Trustees' interest in the JPMC transfers might be impaired by the disposition of the proceedings here because, as Judge Frank has held, "[i]t may be that the funds [JPMC] received will be recovered by one party at the expense of the other."  DWF Order at 16.  Third, the Trustees' interests are not adequately protected by other parties because the Trustees are the only parties who can represent the interests of their respective bankruptcy estates in these proceedings.  Accordingly, the Trustees will be allowed to intervene for the limited purposes stated in their Motions.

**B.  Relief From Stay**

A court's power to stay the litigation of actions that compete with a receivership estate "falls within the court's inherent power to prevent interference with the administration of th[e] estate."  <u>SEC v. Credit Bancorp., Ltd.</u>, 93 F. Supp. 2d 475, 477 (S.D.N.Y. 2000).  "The preservation of the receivership estate is paramount."  <u>S.E.C. v. Pittsford Capital Income Partners, L.L.C.</u>, No. 06-6353, 2007 WL 61096, at *2 (W.D.N.Y. Jan. 5, 2007).

**1.  <u>Wencke</u> Factors**

In determining whether to grant relief from the stay in a receivership case, a court

---

[3] A motion to intervene as a matter of right must also be timely.  Fed. R. Civ. P. 24(a). The timeliness of the Trustees' Motion to Intervene has not been challenged, and the Court finds that it is timely.

considers the following factors:  "(1) whether refusing to lift the stay genuinely preserves the

status quo or whether the [movant] will suffer substantial injury if not permitted to proceed; (2)

the time in the course of the receivership at which the motion for relief from the stay is made;

and (3) the merit of the [movant's] underlying claim."  S.E.C. v. Wencke, 742 F.2d 1230, 1231

(9th Cir. 1984) ("Wencke II") (citing S.E.C. v. Wencke, 622 F.2d 1363, 1373 (9th Cir. 1980)

("Wencke I")).  "The test simply requires the district court to balance the interests of the

Receiver and the moving party . . . .  [T]he interests of the Receiver are very broad and include

not only protection of the receivership *res*, but also protection of defrauded investors and

considerations of judicial economy."  United States v. Acorn Tech. Fund, L.P., 429 F.3d 438,

443 (3d Cir. 2005) (internal quotation marks omitted, alterations in original).

### a.  Status Quo or Substantial Injury

The Ritchie Parties argue that maintaining the stay will increase the expense and

litigation risk in their lawsuits against third parties.  The Ritchie Parties contend that without a

default judgment against Petters, they will be forced to incur significant time and expense in

assembling the evidence and preparing the arguments necessary to prove that Petters

fraudulently induced the loans from the Ritchie Parties.

The Court finds that the Ritchie Parties will suffer little, if any, prejudice by preserving

the stay.  The Ritchie Parties' loans are documented through promissory notes and should not be

difficult to prove.  Similarly, Petters' criminal conviction of a multi-billion dollar fraud scheme

is easily subject to proof.  See Ritchie Capital Mgmt., L.L.C. v. Stoebner, 779 F.3d 857, 859 (8th

Cir. 2015) ("The specifics of Petters's Ponzi scheme . . . have been described in detail in several

of this court's other opinions.").  Thus, the injury, if any, to the Ritchie Parties is not substantial.

12

The Ritchie Parties further argue that lifting the stay will not harm the Receivership in any way because:  (1) the Ritchie Parties will not use the default judgment against Petters to obtain Receivership assets, and (2) their lawsuit against JPMC does not interfere with the Receiver and Trustees' claims against JPMC.  The Ritchie Parties contend their suit against JPMC seeks the recovery of different transfers than those sought to be recovered by the Receiver and Trustees.  This argument lacks merit.  The Ritchie Parties' lawsuit against JPMC interferes with the Receiver's action because both seek to recover funds that JPMC seized from Petters' investment accounts on September 30, 2008.  See Kelley v. J.P. Morgan Chase & Co., No. 10-cv-4999 (D. Minn.) Compl. [Docket No. 1] ¶¶ 114, 119, 123 127 (seeking to recover "for the benefit of the Receivership . . . approximately $25 million in cash and securities that was held in Petters' investment accounts at JPMC" and liquidated by JPMC beginning September 30, 2008); Ritchie Capital Mgmt., L.L.C. v. J.P. Morgan Chase & Co., Case No. 14-cv-4786 (D. Minn.) (alleging "JPMorgan was . . . enriched, at Ritchie's expense, as a result of . . . the approximately $18 million of Petters' assets that JPMorgan obtained after September 30, 2008 by enforcing its security interests against Petters' assets.").  Thus, the Ritchie Parties are seeking to recover for themselves funds from JPMC which are the same funds the Receiver is seeking to recover for the benefit of all victims.  The same holds true for the Trustee's claims against JPMC.  As Judge Frank has already determined, the Ritchie Parties and the Trustees "are at least partially seeking recovery of the same funds."  DWF Order 16.

This interference threatens to harm the Receivership because "[i]t may be that funds JP Morgan received will be recovered by one party at the expense of the other as the proceedings move forward."  Id.  Moreover, increased Receivership costs will be needed to monitor the

13

Ritchie Parties' attempts to recover from the same sources as the Receiver.  The Ritchie Parties contend that its litigation against JPMC cannot interfere with the Receiver's claims because those claims are stayed.  However, the Receiver must still expend the resources attendant to monitoring the litigation to ensure that the Ritchie Parties' recovery is not at the expense of the Receiver's.

The Ritchie Parties additionally argue that the stay in the Receivership will not alleviate the interference caused by their litigation because they will proceed to litigate against JPMC whether or not they have a default judgment against Petters.  Thus, the Ritchie Parties argue that the proper way for the Receiver and Trustees to address concerns about interference is not to continue the stay here, but to instead seek a stay of Ritchie and Yorkville's suit against JPMC.  However, lifting the stay in the Receivership to allow the Ritchie Parties to seek a default judgment against Petters would disrupt the status quo by fueling the Ritchie Parties' litigation which threatens to deplete Receivership assets.  Lifting the stay at this time thus endangers the "fundamental purpose of establishing a Receivership," which is "to protect the estate property and ultimately return that property to the proper parties."  Pittsford Capital, 2007 WL 61096, at *2.

The Ritchie Parties further contend that the concerns related to the Ritchie Parties' lawsuit should not drive the Court's decision over whether to lift the stay, because it is only one of several actions that the Ritchie Parties has filed against third parties.  However, many of those actions have now been dismissed.  See infra note 2.

Taking into account all of the above considerations, the first Wencke factor weighs in favor of the Receiver because the litigation stay maintains the status quo, preserves Receivership

assets, and does not substantially harm the Ritchie Parties.

### b. Stage of the Receivership

The Ritchie Parties argue that this factor weighs in favor of lifting the litigation stay because the stay has been in place for nearly seven years and the Receiver has had sufficient time to marshal and untangle the receivership assets.  The Ritchie Parties contend that denial of relief from the litigation stay at this late stage in the Receivership would be tantamount to a permanent, rather than temporary, litigation stay and would deprive them of their ability to litigate against Petters.

"The second Wencke prong is inherently case-specific, and of course, merely one of three linked considerations."  Acorn Tech., 429 F.3d at 450.  There is no presumptive cut-off date after which a stay should be presumptively lifted, and courts focus on the stage, rather than the age, of the receivership when determining whether to lift the stay.  Id.  For example, the court's decision in Wencke II to lift the stay over a seven-year-old receivership was based on the fact that the receiver was prepared to distribute the estate assets, which indicated that no additional time was needed to disentangle the estate.  Wencke II at 1232.

Without question, the Receivership here is aging, having been established nearly seven years ago.  However, at no time has this large and extraordinarily complex Receivership been dormant.  Throughout the duration of the Receivership, the Receiver has been actively marshaling, managing, and monetizing Receivership assets as well as pursuing litigation to recover funds from Ponzi scheme recipients.  The Court monitors the Receiver's progress and activity through bi-monthly status reports filed by the Receiver.  As the status reports show, some issues remain unresolved, including in the Receiver's lawsuits against JPMC as well as

15

other entities and individuals.  See generally Forty-Second Status Report, Sept. 8, 2015 [Docket No. 2783].  Thus, although the Receiver's work is nearing completion, continuing the stay is necessary to protect and preserve Receivership assets until those issues are resolved.  See, S.E.C. v. Universal Fin., 760 F.2d 1034, 1039 (9th Cir. 1985) (holding unresolved factual and legal issues in four-year-old receivership justified continuation of stay); see also, Acorn, 429 F.3d 450 (continuing stay in three-year-old receivership because "the alleged fraud encompassed many individuals and companies."); Pittsford Capital, 2007 WL 61096, at *2 ("The preservation of the receivership estate is paramount.").  Moreover, nothing in the stay precludes the Ritchie Parties from taking the necessary actions to preserve the statute of limitations on its claims against Petters.  Thus, the stay does not permanently deprive the Ritchie Parties of their ability to pursue their claims against Petters.

### c.  Merits of Underlying Claim

In considering this prong, the Court assumes that the Ritchie Parties have a colorable claim against Petters.  However, the overall balance of the Wencke factors favors maintaining the litigation stay at this time.

### 2.  Comparison to Liquidating Trustee

In addition to their arguments under the Wencke standard, the Ritchie Parties contend that their request to lift the litigation stay is indistinguishable from the relief requested and granted to Barry E. Mukamal, Liquidating Trustee of the Palm Beach Finance Partners Liquidating Trust and the Palm Beach Finance II Liquidating Trust.  See Order, Feb. 25, 2014 [Docket No. 2598].  In February 2014, this Court granted Trustee Mukamal's unopposed motion seeking relief from the litigation stay for the purposes of obtaining a default judgment against

Receivership Defendants Michael Catain and Enchanted Family Buying Company.  Id.

Material distinctions exist between the Ritchie Parties and Trustee Mukamal.  Trustee

Mukamal was appointed under a Chapter 11 bankruptcy joint plan of liquidation that was

confirmed by the bankruptcy court for the Southern District of Florida.  See Ex. 1 Mem. Law

Supp. [Docket No. 2592] ¶ 6.  Funds recovered by Mukamal in his role as liquidating trustee will

be distributed to creditors in accordance with that court-approved liquidation plan.  The

bankruptcy cases remain open and the bankruptcy court retains jurisdiction over the liquidation

plan until the distribution process has been completed.  See In re Palm Beach Fin. Partners, L.P.,

No. 09-36379 (Bankr. S.D. Fla.) ("Palm Beach Bankruptcy") [Palm Beach Bankruptcy Docket

No. 444] ¶ 30.  Furthermore, Trustee Mukamal has committed not to interfere with the claims of

the Receiver or the Trustee, whereas the Ritchie Parties have not provided the same assurances.

Therefore, sufficient bases exist for treating the Ritchie Parties differently than Trustee

Mukamal.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1. Ritchie Capital Management, L.L.C.; Ritchie Special Credit Investments, Ltd.;
Rhone Holdings II. Ltd.; and Ritchie Capital Management Ltd.'s Motion to
Intervene [Docket No. 2710] is **GRANTED**;

2. Ritchie Capital Management, L.L.C.; Ritchie Special Credit Investments, Ltd.;
Rhone Holdings II. Ltd.; and Ritchie Capital Management Ltd.'s Motion for
Relief from Litigation Stay Against Thomas J. Petters [Docket No. 2714] is
**DENIED**;

3. Yorkville Investment I, L.L.C.'s Motion for Relief from Litigation Stay Against
Thomas J. Petters and Motion to Intervene  [Docket No. 2757] is **GRANTED IN
PART and DENIED IN PART** as follows:  the Motion is granted as to the

request to intervene and is denied as to the request for relief from the litigation stay; and

4.     John R. Stoebner, in his capacity as the Chapter 7 Trustee of Polaroid Corporation, et al., Douglas A. Kelley, in his capacity as the Chapter 11 Trustee of Petters Company Inc., et al., and Randall L. Seaver, in his capacity as the Chapter 7 Trustee of Petters Capital, LLC's Motion to Intervene [Docket No. 2766] is **GRANTED**.

BY THE COURT:


      s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  September 14, 2015.