United States of America,

          Plaintiff,

v.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 08-5348 ADM/TNL

Thomas Joseph Petters; Petters Company,
Inc., a/k/a PCI; Petters Group Worldwide, LLC;
Deanna Coleman, a/k/a Deanna Munson;
Robert White; James Wehmhoff; Larry
Reynolds and/or d/b/a Nationwide International
Resources, a/k/a NIR; Michael Catain and/or d/b/a
Enchanted Family Buying Company;
Frank E. Vennes, Jr., and/or d/b/a Metro Gem
Finance, Metro Gem, Inc., Grace Offerings
of Florida, LLC, Metro Property Financing,
LLC, 38 E. Robinson, LLC, 55 E. Pine, LLC,
Orlando Rental Pool, LLC, 100 Pine Street
Property, LLC, Orange Street Tower, LLC,
Cornerstone Rental Pool, LLC, 2 South
Orange Avenue, LLC, Hope Commons, LLC, and
Metro Gold, Inc.;

          Defendants,

Douglas A. Kelley,

          Receiver,

Gary Hansen,

          Liquidating Trustee.

_____

Patrick H. O'Neill, Jr., Esq., Larson King, LLP, St. Paul, MN, on behalf of Ritchie Capital Management, L.L.C.; Ritchie Special Credit Investments, Ltd.; Rhone Holdings II, Ltd.; Yorkville Investment I, L.L.C., and Ritchie Capital Management, Ltd.

James Lodoen, Esq., Lindquist & Vennum LLP, Minneapolis, MN, and Steven E. Wolter, Kelley, Wolter & Scott, P.A., Minneapolis, MN, on behalf of Receiver Douglas A. Kelley.

Gregory G. Brooker, Acting United States Attorney, and James S. Alexander, Assistant United States Attorney, Minneapolis, MN, on behalf of Plaintiff United States of America.

_____

## I.  INTRODUCTION

On September 7, 2017, the undersigned United States District Judge heard oral argument on intervenors Ritchie Capital Management, L.L.C.; Ritchie Special Credit Investments, Ltd.; Rhone Holdings II, Ltd.; Yorkville Investment I, L.L.C., and Ritchie Capital Management, Ltd.'s (collectively, "Ritchie") Motion to Terminate Receivership or, Alternatively, to Lift the Litigation Stay Against Thomas J. Petters [Docket No. 2897].  Receiver Douglas A. Kelley (the "Receiver") and Plaintiff United States of America (the "Government") oppose the Motion.  For the reasons set forth below, the Motion is denied.

## II.  BACKGROUND

### A.  Petters' Ponzi Scheme

This civil receivership case arises from a $3.8 billion Ponzi scheme orchestrated by Minnesota businessman Thomas J. Petters ("Petters").[1]  Ritchie is an investment fund that loaned over $100 million to Petters and his companies beginning in February 2008.  Like many other creditors of Petters and his entities, Ritchie suffered substantial losses when the Ponzi scheme collapsed in September 2008.

### B.  Receivership, Bankruptcy Estates Created

On October 2, 2008, the Government commenced this action pursuant to the Fraud

---

[1] As part of his scheme, Petters induced investors to provide funds to purportedly finance purchases of electronic consumer goods from wholesalers for resale to large retailers.  The purchase of the electronic goods was fiction.  Petters used the investments from later investors to repay earlier investors their principal, plus an amount Petters represented as profit from the transaction.

Injunction Act, 18 U.S.C. § 1345, to freeze the named defendants' assets and preserve them for victim restitution and forfeiture in the related criminal proceedings.  See Compl. [Docket No. 1]. The Government stipulated to the appointment of a receiver to manage the defendants' assets, and the Court appointed Douglas A. Kelley, Esq. as Receiver.[2]  See Second Am. Order Entry Prelim. Inj., Appointment Receiver, Other Equitable Relief ("the Receivership Order"), Dec. 8, 2008 [Docket No. 127] at 13.  The Receivership Order includes a stay of litigation against the named defendants and the Receivership assets.  Id. at 19-20.

On October 11, 2008, the Receiver placed two of Petters' corporations, Petters Company, Inc. ("PCI") and Petters Group Worldwide ("PGW"), and their related affiliates into Chapter 11 bankruptcy.  See In re Petters Co., Inc., No. 08-45257 (Bankr. D. Minn.) ("PCI/PGW Bankruptcy Case").  The Receiver was appointed as Trustee of those consolidated bankruptcy estates. Thereafter, two other Petters-related businesses, Polaroid Corporation and Petters Capital, LLC, also filed for bankruptcy protection.  See In re Polaroid Corp., No. 08-46617 (Bankr. D. Minn.) ("Polaroid Bankruptcy Case"); In re Petters Capital, LLC, No. 09-43847 (Bankr. D. Minn.) ("Petters Capital Bankruptcy Case").  Separate Trustees were appointed for those bankruptcy estates.

**C.  Petters Convicted, Forfeiture Ordered**

Petters was found guilty by a jury in December 2009 and was sentenced to fifty years in prison.  See United States v. Petters, No. 08-364 (D. Minn.) ("Criminal Case"), Sentencing J.,

---

[2] A separate receivership, with its own independent receiver, Gary Hansen, was created for the assets of named defendant Frank E. Vennes, Jr. and any entities he controlled.  Order Entry of Prelim. Inj., Appointment of Receiver, Other Equitable Relief, Oct. 16, 2008 [Docket No. 59].  The Vennes receivership has since been terminated and is not at issue here.

3

April 8, 2010 [Criminal Case Docket No. 400]. Petters' sentence included a forfeiture money judgment of $3,522,880,614.10. Sentencing J. at 6 (ordering forfeiture pursuant to Preliminary Forfeiture Order of Docket No. 395). Judge Richard H. Kyle, who presided over the criminal case, in declining to order restitution, held that Petters' victims may seek recovery through the remission of forfeited assets and the bankruptcy process. See United States v. Petters, No. 08-364, 2010 WL 2291486, at *3-5 (D. Minn. June 3, 2010).

**D. Receiver, Trustees and Government Coordinate Recovery Efforts**

In August 2010, the Government, Receiver, and Bankruptcy Trustees entered into a Coordination Agreement to resolve their competing claims to property that was subject to forfeiture and that belonged to the Receivership and bankruptcy estates. See Uphoff Decl. [Docket No. 1351] Ex. A ("Coordination Agreement"). The parties to the Coordination Agreement recognized that a "significant overlap of identity" existed among the creditors and victims of the Receivership and bankruptcy estates, and that pursuing their competing claims in litigation would diminish the recovery for victims and creditors, and would unduly delay the distribution of assets. Id. at 3. The Coordination Agreement is designed to maximize recovery to victims and creditors of the fraudulent scheme, minimize Receivership and bankruptcy expenses, and provide for the fair and orderly distribution of recoveries to victims and creditors through the bankruptcy and remission processes. See id. at 3–10.

To further this objective, the Coordination Agreement establishes a collective process by which the Government, Receiver, and Trustees will recover and distribute property of the Receivership and bankruptcy estates. Id. at 4–10. This process includes allocating responsibilities among the Receiver and Trustees for pursuing clawback actions to recover assets

4

transferred to third parties. In exchange for the coordinated recovery process, the Government agreed to forego forfeiture claims against third parties for the return of certain assets. Id. at 10.

The Coordination Agreement was approved by this Court on September 14, 2010, after a joint hearing with the Bankruptcy Court. Order, Sept. 14, 2010 [Docket No. 1466].

**E. Receiver, Trustees and Ritchie Commence Lawsuits Against JP Morgan Chase & Co.**

The Receiver and Bankruptcy Trustees have commenced clawback actions against JP Morgan Chase & Co. ("JPMC") to recover assets of the Receivership and bankruptcy estates that were allegedly transferred to JPMC. As discussed more fully below, Ritchie is also suing JPMC to recover assets that were transferred from Petters and his bankrupt entities to JPMC.

**1. Receiver**

On December 29, 2010, the Receiver commenced litigation against JPMC which includes a claim to recover funds that JPMC liquidated from Petters' personal investment accounts maintained at JPMC. See Kelley v. J.P. Morgan Chase & Co., No. 10-cv-4999 (D. Minn.) Compl. [Docket No. 1] ¶ 17. The investment accounts had been pledged by Petters as collateral for an increase in a credit line for PGW. Id. ¶ 16. On September 30, 2008, approximately one week after federal agents executed a search warrant on Petters' offices, JPMC began liquidating more than $20 million from Petters' investment accounts and applied the funds to the amount owed on the PGW line of credit. Id. ¶ 17. The Receiver seeks to avoid JPMC's security interest in Petters' investment accounts and to recover the funds JPMC received from those accounts. Id. ¶¶ 17, 23, 114, 119, 123, 127. Consistent with the Coordination Agreement, the Receiver stipulated to a stay of his lawsuit action against JPMC in district court pending the resolution of the Trustees' actions against JPMC in bankruptcy court. See Kelley v. J.P. Morgan Chase & Co.,

No. 10-4999 (D. Minn.), Order Approving Stip. Stay [Docket No. 27].

### 2. Bankruptcy Trustees

In addition to the Receiver's action against JPMC in federal district court, the Bankruptcy Trustees for the PCI/PGW, Polaroid, and Petters Capital bankruptcy estates commenced adversary proceedings against JPMC in bankruptcy court to avoid and recover certain transfers made by these debtors to JPMC. See Kelley, Trustee v. JPMorgan Chase & Co., Case Nos. 10-4443, 10-4445, 10-4446 (Bankr. D. Minn). The Trustees' actions against JPMC are among hundreds of adversary proceedings filed by the Bankruptcy Trustees in the Petters-related bankruptcy cases. The Bankruptcy Trustees' actions against JPMC are presently in active discovery after a motion to dismiss was denied on January 13, 2017. Kelley Decl. [Docket No. 2905] ¶ 4.

### 3. Ritchie

Ritchie has filed its own lawsuit against JPMC. See Ritchie Capital Mgmt., L.L.C. v. JPMorgan Chase & Co., No. 14-4786 (D. Minn.) ("Ritchie v. JPMC"). The suit against JPMC is one of at least nine lawsuits that Ritchie has filed against third parties whom Ritchie alleges share responsibility for losses that Ritchie sustained as a result of its loans to Petters.[3] In seven

---

[3] Ritchie's other actions, most which have been dismissed or stayed, include: Ritchie Capital Mgmt., L.L.C. v. Costco Wholesale Corp., No. 14-4819 (S.D.N.Y. Sept. 21, 2015) (dismissed for lack of personal jurisdiction), aff'd No. 15-3294 (2d Cir. Aug. 1, 2016); Ritchie Capital Mgmt., L.L.C. v. U.S. Bank, N.A., No. 15-2092, 2015 WL 4744528 (D. Minn. Aug. 11, 2015) (dismissed as time-barred and for failure to state a claim); Ritchie Capital Mgmt., L.L.C. v. Gen. Elec. Capital Corp., 121 F. Supp. 3d 321 (S.D.N.Y. 2015) (dismissed since claims are property of Petters-related bankruptcy estates and also for failure to state claim), aff'd, 821 F.3d 349 (2d Cir. 2016); Ritchie Capital Mgmt., L.L.C. v. Fredrikson & Byron, P.A., No. 1-14-2067, 2015 WL 1445681 (Ill. Ct. App. March 27, 2015) (affirming dismissal of time-barrred claims), appeal denied, 39 N.E.3d 1011 (Ill. 2015); Ritchie Capital Mgmt., L.L.C. v. Opportunity Fin., L.L.C., No. 27-13-17424, 2015 WL 787747 (Minn. Dist. Ct. Jan. 15, 2015) (holding complaint

of the actions, Ritchie asserts claims for aiding and abetting fraudulent inducement and civil conspiracy to commit fraudulent inducement.

Ritchie's lawsuit against JPMC, filed in January 2014, is based in part on JPMC's liquidation of Petters' investment accounts on September 30, 2008. See Ritchie v. JPMC, Second Am. Compl. [Docket No. 158] ¶¶ 429–453 (Counts 20 and 21). Ritchie contends that "[b]y seizing and liquidating Petters's investment accounts after news of the federal raid, JPMorgan stepped ahead of the fraud scheme's victims and creditors to recover the nearly $20 million that Petters Group Worldwide allegedly owed under the credit line." Id. ¶¶ 440, 452. Like the Receiver, Ritchie seeks to avoid JPMC's security interest in Petters' investment accounts and to recover amounts JPMC received from those accounts. Id. ¶¶ 441, 453.

Ritchie's suit, originally filed in New York state court, removed to federal court, and then transferred *sua sponte* to this district, was assigned to the Honorable Donovan W. Frank. JPMC moved to refer the action to bankruptcy court based on the ongoing Petters-related bankruptcy proceedings, and the Bankruptcy Trustees moved to intervene for the purpose of joining JPMC's motion. On July 2, 2015, Judge Frank granted the Bankruptcy Trustees' request to intervene, holding that "[t]he Trustees have a direct, substantial, and legally protectable interest in the claims being asserted and litigated by [Ritchie] because the parties are at least partially seeking recovery of the same funds. . . . It may be that the funds JPMorgan received will be recovered

---

subject to automatic stay under Bankruptcy Code because claims alleged by Ritchie are derivative of claims alleged by PCI Bankruptcy Trustee); Ritchie Capital Mgmt., L.L.C. v. Jeffries, 849 F. Supp. 2d 881 (D. Minn. 2012) (dismissed on abstention grounds because claims were duplicative of Petters-related bankruptcy proceedings); Ritchie Capital Mgmt., L.L.C. v. Coleman, No. 12-270, 2012 WL 1901300, at *1 (D. Minn. May 25, 2012) (same); Ritchie Capital Mgmt. v. BMO Harris Bank, N.A., 868 F.3d 661 (8th Cir. 2017) (affirming abstention because case is duplicative of a Petters-related bankruptcy adversary proceeding).

7

by one party at the expense of another." See Ritchie v. JPMC, Order, July 2, 2015 [Docket No. 157] at 16. Judge Frank also referred the case to bankruptcy court based on the "interest in uniform administration of all matters that implicate the Petters related bankruptcies." Id. at 14.

**F. Ritchie Seeks Relief from Litigation Stay Over Receivership in 2015**

In 2015, Ritchie moved for relief from the litigation stay over the Receivership for the purpose of obtaining a default judgment against Petters in Minnesota state court. Mot. Intervene [Docket No. 2757]. Ritchie argued that it would not execute the judgment against assets of the Receivership, but would instead use the judgment in Ritchie's actions against third parties to establish essential elements of its claims for aiding and abetting fraud. The Court denied Ritchie's request for relief from the stay because the Receiver's interests in maintaining the stay outweighed Ritchie's interest in lifting the stay.

**G. Bankruptcy Court Recommends Denial of Ritchie's Lawsuit Against JPMC**

On May 31, 2017, United States Bankruptcy Court Judge Kathleen H. Sandberg issued a Report and Recommendation ("R&R") in Ritchie's lawsuit against JPMC, which recommends dismissing all of Ritchie's claims. Ritchie v. JPMC, R&R [Docket No. 159], 2017 WL 2799878 (Bankr. D. Minn. May 31, 2017). Ritchie filed objections to the R&R, and Judge Frank heard oral argument on Richie's objections on September 12, 2017. See Ritchie v. JPMC, Min. Entry [Docket No. 172]. The matter remains under advisement.

**H. Present Motion**

Ritchie now moves to terminate the Receivership, arguing that (1) there is no valid reason to continue the Receivership, and (2) the existence of the Receivership is unnecessarily delaying Ritchie's right to recovery. Alternatively, Ritchie argues that if the Receivership is not

8

terminated, the litigation stay be lifted so Ritchie can pursue a default judgment against Petters in state court. Ritchie contends that the circumstances that previously prevented the Court from lifting the receivership stay in 2015 have now changed to a degree that the Court must lift the stay so that Ritchie is no longer denied its day in court.

The Receiver and the Government oppose Ritchie's motion. The Receiver argues that the reasons for the Receivership remain in force, and that maintaining the stay is necessary to maintain the status quo and to protect the Receivership from the harm of Ritchie's continued litigation. The Government argues that termination of the Receivership would threaten the equitable distribution of Receivership assets, and that lifting the stay would provide Ritchie with an unfair advantage over other creditors and victims of Petters' fraud.

### III. DISCUSSION

**A. Motion to Terminate Receivership**

Ritchie argues that there is no longer a purpose for the Receivership because the Government has obtained a forfeiture money judgment against Petters, and Petters has no remaining cognizable interests in property that could justify continuing the Receivership.

Ritchie's argument that the Receivership is no longer necessary overlooks the Receivership's core purpose of protecting estate property and facilitating an equitable distribution of funds to victims. "The fundamental purpose" of an equitable receivership is "to protect the estate property and ultimately return that property to the proper parties." SEC v. Pittsford Capital Income Partners, LLC, No. 06-6353, 2007 WL 61096, at *2 (W.D.N.Y. Jan. 5, 2007). The receiver's role is to safeguard disputed assets, administer receivership property, and assist with a final, equitable distribution of receivership assets. Liberte Capital Grp., LLC v.

9

Capwill, 462 F.3d 543, 551 (6th Cir. 2007).

Ritchie's efforts to recover the same funds for itself that the Receiver is attempting to recover for all victims and creditors exemplifies why the Receivership remains necessary. Terminating the Receivership at this time, before the Receiver has obtained recoveries on pending clawback actions, threatens the equitable and orderly clawback process established in the Coordination Agreement and provides an unfair advantage to Ritchie and other creditors who can afford to hire separate counsel to prosecute claims.[4]

Additionally, substantial assets within the Receivership remain to be liquidated or administered, including a yet-to-be finalized settlement of $500,000 from an LLC interest held by the Receivership, and $21 million in various cash accounts. Kelley Decl. ¶¶ 2–3, 5. Potential tax claims against the Receivership must also be resolved before the Receivership is terminated. Thus, the reasons for the Receivership continue to exist.

Ritchie also argues that any benefit of continuing the Receivership is outweighed by the harm caused to Ritchie by being deprived of its right to pursue a state court judgment against Petters for fraud. Ritchie insists that although it could prevail in its third-party lawsuits without the state court judgment against Petters, Ritchie's burden, expense, and risk in litigating the issue of Petters' fraud in each suit would increase substantially without a default judgment. However, the benefit of preserving Receivership assets for equitable distribution to all creditors and

---

[4] Ritchie argues that the Receiver lacks standing under the Minnesota Uniform Fraudulent Transfer Act, Minn. Stat. § 513.41 et seq. ("MUFTA"), to bring clawback actions that Petters could not bring himself. Ritchie has filed a motion to intervene in the Receiver's case against JPMC for the purpose of challenging the Receiver's standing. The motion is scheduled for oral argument before Magistrate Judge Hildy Bowbeer in October 2017. See Kelley v. J.P. Morgan, No. 10-4999 (D. Minn.), Text Only Order [Docket No. 35]. Meanwhile, the Receiver continues to have an active clawback action against JPMC on behalf of the Receivership.

victims is more significant than any increase in litigation costs that Ritchie might expend in its litigation against third parties.

**B. Motion for Relief From Stay**

Alternatively, Ritchie seeks relief from the litigation stay so that it can obtain a default judgment for fraud against Petters in state court. Ritchie requested the same relief in 2015. At that time, the Court denied Ritchie's request for relief from the stay because the Receiver's interests in maintaining the stay outweighed Ritchie's interest in lifting the stay. Ritchie argues that the stay should now be lifted because Ritchie should not be indefinitely deprived from suing Petters, who is not in bankruptcy. Ritchie further argues that the factors for determining whether to grant relief from the stay have now tipped in Ritchie's favor.

A court's power to stay the litigation of actions that compete with a receivership estate "falls within the court's inherent power to prevent interference with the administration of th[e] estate." SEC v. Credit Bancorp., Ltd., 93 F. Supp. 2d 475, 477 (S.D.N.Y. 2000). "[T]he preservation of the receivership estate is paramount." Pittsford, 2007 WL 61096, at *2. A litigation stay is "entirely appropriate" to enable the district court and receiver to "maintain maximum control over the assets" and prevent small groups of creditors from "removing assets from the receivership estate to the potential detriment of all." SEC v. Byers, 609 F.3d 87, 92–93 (2d Cir. 2010).

**1. Wencke Factors**

In determining whether to grant relief from the stay in a receivership case, a court considers the following factors: "(1) whether refusing to lift the stay genuinely preserves the status quo or whether the [movant] will suffer substantial injury if not permitted to proceed; (2)

the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the [movant's] underlying claim." S.E.C. v. Wencke, 742 F.2d 1230, 1231 (9th Cir. 1984) ("Wencke II") (citing S.E.C. v. Wencke, 622 F.2d 1363, 1373 (9th Cir. 1980) ("Wencke I")). "The test simply requires the district court to balance the interests of the Receiver and the moving party . . . . [T]he interests of the Receiver are very broad and include not only protection of the receivership *res*, but also protection of defrauded investors and considerations of judicial economy." United States v. Acorn Tech. Fund, L.P., 429 F.3d 438, 443 (3d Cir. 2005) (internal quotation marks omitted, alterations in original).

### a. Status Quo or Substantial Injury

Ritchie argues that the stay is causing substantial injury by preventing Ritchie from obtaining a default judgment against Petters for use in Ritchie's litigation against third parties. As discussed above, any injury to Ritchie is not substantial and is outweighed by the benefit of preserving Receivership assets for equitable distribution to all creditors and victims. Moreover, as this Court found in 2015, Ritchie will suffer little, if any, prejudice if the stay is preserved. Ritchie's loans are predicated on promissory notes and should not be difficult to document. Similarly, Petters' criminal conviction of a multi-billion dollar fraud scheme is easily subject to proof. See Ritchie Capital Mgmt., L.L.C. v. Stoebner, 779 F.3d 857, 859 (8th Cir. 2015) ("The specifics of Petters's Ponzi scheme . . . have been described in detail in several of this court's other opinions."). Thus, any injury to Ritchie caused by the stay is not substantial.

Additionally, the litigation stay preserves the status quo by preventing Ritchie from gaining traction in its effort to recover for itself what the Receiver is attempting to recover for all creditors and victims. Ritchie's lawsuit against JPMC interferes with the Receiver's action

because both seek to recover the same funds that JPMC seized from Petters' investment accounts on September 30, 2008. Compare Kelley v. J.P. Morgan Chase & Co., No. 10-cv-4999 (D. Minn.) Compl. [Docket No. 1] ¶¶ 114, 119, 123 127 (seeking to recover "for the benefit of the Receivership . . . approximately $25 million in cash and securities that was held in Petters' investment accounts at JPMC" and liquidated by JPMC beginning September 30, 2008); with Ritchie Capital Mgmt., L.L.C. v. J.P. Morgan Chase & Co., Case No. 14-4786 (D. Minn.) Second Am. Compl. ¶¶ 438, 440, 441 (alleging that on "or about September 30, 2008, JPMorgan seized and began to liquidate the approximately $25 million in securities then held in Petters's personal investment accounts . . . JPMorgan stepped ahead of the fraud scheme's victims and creditors to recover the nearly $20 million . . . [and] Ritchie is entitled to a judgment . . . against JPMorgan in an amount equal to the sum of the value of the March security interest and $6.5 million . . . .").

Ritchie's litigation against JPMC depletes Receivership assets because the Receiver is forced to incur costs to monitor the litigation and ensure that Ritchie's recovery is not at the expense of the Receivership. Lifting the stay at this time thus threatens the status quo and the "fundamental purpose of establishing a Receivership," which is "to protect the estate property and ultimately return that property to the proper parties." Pittsford, 2007 WL 61096, at *2.

The first Wencke factor weighs in favor of the Receiver because the litigation stay maintains the status quo, preserves Receivership assets, and does not substantially harm Ritchie.

### b. Stage of the Receivership

Ritchie argues that this factor weighs in favor of lifting the litigation stay because the stay has been in place for nearly nine years and the Receiver has had sufficient time to organize

and marshal the Receivership assets. Ritchie contends that even if the Receiver still has certain duties to perform, a continued stay lasting nearly nine years cannot be justified.

"The second <u>Wencke</u> prong is inherently case-specific, and of course, merely one of three linked considerations." <u>Acorn</u>, 429 F.3d at 450. There is no presumptive cut-off date after which a stay should be presumptively lifted, and courts focus on the stage, rather than the age, of the receivership when determining whether to lift the stay. <u>Id.</u> For example, the court's decision in <u>Wencke II</u> to lift the stay over a seven-year-old receivership was based on the fact that the receiver was prepared to distribute the estate assets, which indicated that no additional time was needed to disentangle the estate. <u>Wencke II</u> at 1232.

Although it has been two years since Ritchie last requested relief from the litigation stay, the Receiver continues to actively liquidate and administer Receivership assets and pursue litigation to recover funds from Ponzi scheme recipients. The age of the Receivership would be of much greater concern to the Court had there been stagnation or periods of dormancy in the Receivership. The pace of activity, as shown by even a cursory review of the docket, shows sustained effort by the Receiver to reach a conclusion to the litigation.

Though the Receiver's work is nearing completion, continuing the stay is necessary to protect and preserve Receivership assets until the issues and claims stemming from this far-reaching fraud are resolved. <u>See</u> <u>S.E.C. v. Universal Fin.</u>, 760 F.2d 1034, 1039 (9th Cir. 1985) (holding unresolved factual and legal issues in four-year-old receivership justified continuation of stay); <u>see also</u>, <u>Acorn</u>, 429 F.3d 450 (continuing stay in three-year-old receivership because "the alleged fraud encompassed many individuals and companies."); <u>Pittsford</u>, 2007 WL 61096, at *2 ("The preservation of the receivership estate is paramount."). Moreover, the stay does not

permanently deprive Ritchie of its ability to pursue their claims against Petters. This Wencke factor supports continuing the litigation stay.

### c. Merits of Underlying Claim

In considering this prong, the Court assumes that Ritchie has a colorable claim against Petters. However, the overall balance of the Wencke factors favors maintaining the litigation stay at this time.

### 2. Comparison to Liquidating Trustee

At the hearing on this Motion, Ritchie argued that its request to lift the litigation stay is indistinguishable from the relief requested and granted to Barry E. Mukamal ("Trustee Mukamal"), Liquidating Trustee of the Palm Beach Finance Partners Liquidating Trust and the Palm Beach Finance II Liquidating Trust. See Order, Feb. 25, 2014 [Docket No. 2598]. In 2014, this Court granted Trustee Mukamal's unopposed motion seeking relief from the litigation stay for the purposes of obtaining a default judgment against Receivership Defendants Michael Catain and Enchanted Family Buying Company. Id.

This argument was raised by Ritchie in its first motion for relief from the stay and was rejected by the Court at that time. The argument has not improved with age. As the Court explained in 2015, material distinctions exist between the Ritchie Parties and Trustee Mukamal. Trustee Mukamal was appointed under a Chapter 11 bankruptcy joint plan of liquidation that was confirmed by the bankruptcy court for the Southern District of Florida. See Ex. 1 Mem. Law Supp. [Docket No. 2592] ¶ 6. Funds recovered by Mukamal in his role as liquidating trustee will be distributed to creditors in accordance with that court-approved liquidation plan, and the bankruptcy court retains jurisdiction over the liquidation plan until the distribution

process has been completed.  See In re Palm Beach Fin. Partners, L.P., No. 09-36379 (Bankr. S.D. Fla.) ("Palm Beach Bankruptcy") [Palm Beach Bankruptcy Docket No. 444] ¶ 30. Furthermore, unlike Ritchie, Trustee Mukamal affirmatively committed not to interfere with the claims of the Receiver or the Trustee.  Therefore, sufficient bases exist for treating Ritchie differently than Trustee Mukamal.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that intervenors Ritchie Capital Management, L.L.C.; Ritchie Special Credit Investments, Ltd.; Rhone Holdings II, Ltd.; Yorkville Investment I, L.L.C., and Ritchie Capital Management, Ltd.'s Motion to Terminate Receivership or, Alternatively, to Lift the Litigation Stay Against Thomas J. Petters [Docket No. 2897] is **DENIED**.

BY THE COURT:


    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  September 27, 2017.