# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

United States of America,

    Plaintiff,

v.

Thomas J. Petters; Petters Company, Inc., a/k/a
PCI; Petters Group Worldwide, LLC;
Deanna Coleman a/k/a Deanna Munson;
Robert White;
James Wehmhoff;
Larry Reynolds and/or dba Nationwide
International Resources a/k/a NIR;
Michael Catain dba Enchanted Family Buying
Company;
Frank E. Vennes Jr. dba Metro Gem Finance,
Metro Gem Inc., Grace Offerings Of Florida,
LLC, Metro Property Financing, LLC, 38 E.
Robinson, LLC, 55 E. Pine, LLC, Orlando Rental
Pool, LLC, 100 Pine Street Property, LLC, Orange
Street Tower, LLC, Cornerstone Rental Pool,
LLC, 2 South Orange Avenue, LLC, Hope
Commons, LLC, Metro Gold, Inc.,

    Defendants,

Douglas A. Kelley,

    Receiver,

Gary Hansen,

    Receiver.

Civil No. 08-5348 ADM/TNL

**ORDER GRANTING MOTION TO (1) APPROVE FINAL FEES AND COSTS TO THE RECEIVER AND HIS PROFESSIONALS; (2) CLOSE THE RECEIVERSHIP AND DISCHARGE THE RECEIVER; AND (3) ESTABLISH PROCEDURES FOR RECORD RETENTION AND AUTHORIZE DESTRUCTION OF RECEIVERSHIP RECORDS AND MISCELLANEOUS PROPERTY**

James A. Lodoen, Esq., Spencer Fane LLP, Minneapolis, MN, and Steven E. Wolter, Esq., Kelley Wolter & Scott, P.A., Minneapolis, MN on behalf of Receiver Douglas A. Kelley.

Gregory G. Brooker, United States Attorney, Minneapolis, MN on behalf of Plaintiff United States of America.

Keith S. Moheban, Esq. and Adine S. Momoh, Esq., Stinson LLP, on behalf of BMO Harris Bank N.A.

Patrick H. O'Neill, Jr., Esq., Larson King, LLP, on behalf of Ritchie Capital Management, L.L.C.; Ritchie Special Credit Investments, Ltd.; Rhone Holdings II. Ltd.; Yorkville Investments I, L.L.C.; and Ritchie Capital Management SEZC, Ltd. f/k/a Ritchie Capital Management, Ltd.

## I.  INTRODUCTION

On July 22, 2021, the undersigned United States District Judge heard oral argument on the Motion of Douglas A. Kelley, in his capacity as the court-appointed receiver (the "Receiver") in the above-captioned case, to (1) Approve Final Fees and Costs to the Receiver and His Professionals; (2) Close the Receivership and Discharge the Receiver; and (3) Establish Procedures for Record Retention and Authorize Destruction of Receivership Records and Miscellaneous Property [Docket No. 3235].

## II. OBJECTIONS

### A.  BMO Harris Bank N.A.

BMO Harris Bank N.A. ("BMO") filed a limited objection [Docket No. 3242] opposing the Receiver's request for authorization to destroy Receivership property, including documents and records, one year after the date of the Order approving the Motion.  BMO argued that the property subject to destruction includes documents and records that are relevant to two cases involving BMO that are pending in this district:  Kelley v. BMO Harris Bank N.A., Case No. 19-

1756 WMW (the "Trustee Action), and <u>Ritchie Capital Management, L.L.C. v. BMO Harris Bank, N.A.</u>, Case No. 15-1876 ADM/JJK (the "Ritchie Action").

Following the hearing on the Motion, the Receiver submitted a revised proposed order stating that he will maintain the Receivership property, including documents and records, until these actions are resolved pursuant to a final order and any subsequent remands or appeals have been resolved. <u>See</u> Am. Proposed Order [Docket No. 3267] ¶ 4. The amended proposed order satisfies the concerns identified in BMO's limited objection. <u>See</u> Receiver's Letter to District Judge [Docket No. 3268].

**B. Ritchie Entities**

Ritchie Capital Management, L.L.C., Ritchie Special Credit Investments, Ltd., Rhone Holdings II. Ltd.; Yorkville Investments I, L.L.C., and Ritchie Capital Management SEZC, Ltd. f/k/a Ritchie Capital Management, Ltd. (collectively, "Ritchie") also filed an objection [Docket No. 3240] to the Motion.

Ritchie first argues that the final accounting should not be approved because the Receiver has not shown that attorney's fees and expenses paid from Receivership funds were reasonable. Ritchie wrongly contends that the itemized attorney fee invoices "were only allowed to be reviewed *in camera*." Ritchie Obj. at 13. In the very early stages of this case the Court did require itemized invoices to be submitted *in camera* to safeguard the integrity of parallel criminal proceedings against the individual Receivership defendants. However, this *in camera* process changed more than 10 years ago. Since then, complete itemized billing statements have been publicly filed along with the fee applications. No fee application in this case has been approved until after it has been reviewed by the Receiver and the Court and a public hearing has

been held. In many instances, corrections and deductions were made in the fee applications submitted.

Additionally, the hourly billing rates for attorneys and other professionals have been frozen at the rates in place at the time of their engagement, which in most instances has resulted in 2008 rates being applied despite the near doubling of many of the fee rates over that near 13 year period. The rigorous and transparent fee approval process has ensured that all professional fees paid to date have been reasonable and necessary.

Ritchie also opposes the Receiver's request to pay non-refundable amounts of $40,000 to the Receiver, $40,000 to Spencer Fane LLP, and $50,000 to PricewaterhouseCoopers LLP for work yet to be performed. The non-refundable amounts would be applied toward the fees and costs that will be incurred as the result of: responding to document requests and other inquiries regarding the Receivership's books and records; monitoring and maintaining the records; responding to inquiries of creditors regarding Receivership property or creditor claims; and preparing and reviewing final tax returns. The Court finds that these amounts are a reasonable and likely conservative estimate of the costs that will be incurred in completing the remaining necessary tasks.

Ritchie next argues that the settlement of a 2010 lawsuit filed by the Receiver against JP Morgan Chase Bank, N.A. ("JPMC") should not be approved as part of the final accounting. Ritchie argues that the final accounting does not disclose the entities on whose behalf the suit was filed, and does not adequately explain why the $2.5 million settlement payment from JPMC was forfeited to the Government. The Court approved the settlement between the Receiver and JPMC in May 2018 over Ritchie's objection. See Objection [Docket No. 2984]; Order [Docket No. 2990]; Judgment [Docket No. 2991]. Ritchie did not appeal the Order or Judgment

approving the settlement. In November 2018, the Receiver filed a Status Report stating that the $2.5 million settlement payment was forfeited and remitted to the United States Marshal's Service. See 62nd Status Report [Docket No. 3058] at 2. Ritchie did not object to this disposition of the settlement payment. Ritchie's efforts to relitigate these issues as part of the final accounting are denied.

Ritchie also argues that the final accounting for the Receivership [Docket No. 3235, Attach. 1] and the final accounting for Thomas J. Petters' individual receivership [Docket No. 3234] do not disclose sufficient information. This objection is overruled because most of the information that Ritchie seeks has been included in previously filed motions and fee applications. The final accountings include sufficiently detailed summaries of Receivership recoveries, expenses, and distributions. Ritchie further argues that information about distributions from Petters-related bankruptcy cases should not be included in the final accounting. This information is properly included to provide a comprehensive picture of the distributions that were achieved through the cooperative efforts of the Receiver, the Government, and the trustees in the Petters-related bankruptcy cases.

Ritchie also objects to the Receiver's proposed procedure for retaining records and destroying documents. Ritchie argues that the Receivership records should be made public and provided at no expense to a requesting party. The entire library of Receivership records cannot be made available to the public or to requesting parties because some of the records have been obtained pursuant to confidentiality agreements and protective orders. To the extent the documents and records can be produced, it is reasonable to require a requesting party to pay for the costs incurred in the production.

Ritchie further objects to the Receiver's request to enter an order that discharges the Receiver and his professionals from all duties, liabilities, claims and responsibilities of the Receivership. Ritchie contends this relief is premature because the Receiver still has a duty to maintain Receivership documents and property. The Court finds that entry of a discharge order is appropriate at this final stage of the Receivership case.

Ritchie has also filed a post-hearing letter with the Court that repeats its initial objections and raises new objections to the Receiver's requested relief. See Ritchie Letter [Docket No. 3270]. New objections that could have been raised before the hearing are not timely and will not be considered.

Ritchie further states in the post-hearing letter that this Court has taken judicial notice of state court judgments purportedly obtained by Ritchie in Illinois and Minnesota. The Court has not taken official judicial notice of any judgments. To the extent the judgments exist, they speak for themselves. Ritchie has previously stipulated in this case that it will not use any judgments it obtains against Thomas J. Petters to execute against Receivership assets or otherwise interfere with the Receivership. See Stipulation [Docket No. 3083] at 6; Mem. Supp. Mot. Lift Stay [Docket No. 3113] at 3.

The Court recognizes the frustration Ritchie has in being among the many victims who suffered severe losses as the result of Petters' fraud. But, there are no legally viable arguments to support Ritchie's objections and Ritchie's objections are therefore overruled.

### III.  COMPLETION OF RECEIVERSHIP OBJECTIVES

The entry of this Order marks the end of an equity receivership that was prompted by one of the largest and most complex Ponzi schemes in U.S. history. The primary objective of the Receivership was to preserve assets for victims and creditors. As part of this process, the

Receiver placed Petters' major corporations into bankruptcy, hundreds of clawback actions were filed against transferees of property belonging to the Receivership and bankruptcy estates, and the Government forfeited Receivership property for distribution to victims through the remission process. These efforts have resulted in global distributions to victims and creditors of over $722 million, which represents "north of a 30 percent recovery" for victims and creditors on their losses. See Hr'g Tr. [Docket No. 3272] at 47.[1] This recovery rate far exceeds the expectations that existed at the beginning of this case, and places it among the very top outcomes achieved in large fraud cases.

Another objective was to ensure a transparent process in this case of high public interest. As the Government noted during the hearing, a motion and public hearing were held for every sale or liquidation of a Receivership asset and every fee application. Id. at 65. In the Government's words, "[t]his Court freely granted parties to intervene temporarily to argue their point at these motions and people were heard." Id. Now, after more than 120 public hearings and nearly 3,300 docket entries, the work of the Receiver has concluded. At last, the time has arrived to close the Receivership and discharge the Receiver.

### IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein:

IT IS HEREBY ORDERED THAT:

1. The Receiver's Motion [Docket No. 3235], as amended, is **GRANTED**;

---

[1] Professional fees paid in the Receivership and the Minnesota bankruptcy proceedings are excluded from the distribution amount. See Hr'g Tr. at 46–47. The distribution amount does include some professional fees paid in related bankruptcy proceedings in Florida and Illinois. Id. at 47.

2. The Final Receivership Report and the Receiver's final accounting both with respect to the individual receivership of Thomas J. Petters and the Receiver's global receivership actions, are approved;

3. The Receiver is authorized to pay all professional fees and expenses approved by the Court from the remaining Receivership assets, to pay the non-refundable amounts provided for in the Motion, and to request further payments from the PCI Liquidating Trust, to the extent allowed and limited by the Motion;

4. The Receiver is authorized and directed to maintain Receivership Property, defined as equipment, personal property, documents and records of the Receivership, including any records necessary to support the tax returns filed by the Receiver, until such time as <u>Kelley v. BMO Harris Bank N.A.</u>, Case No. 19-01756 WMW, <u>Ritchie Capital Management L.L.C. v. BMO Harris Bank N.A.</u>, Case No. 15-1876 ADM/JJK, and <u>Ritchie Special Credit Investments, Ltd. v. JP Morgan Chase & Co.</u>, Case No. 14-4786 DWF/FLN, are finally resolved pursuant to a final order entered and any appeals or subsequent remands are resolved, and at any time thereafter destroy such Receivership Property at such time as the Receiver deems appropriate, in his sole discretion, subject to turnover of specific Receivership Property as provided for in the Motion or subject to requests to continue to maintain such Receivership Property provided the requesting party pays in advance all fees and costs related to such request and ongoing retention;

5. The Receiver and his agents, employees, members, officers, independent contractors, attorneys, representatives, predecessors, successors, and assignees are released of all duties, liabilities, claims and responsibilities pertaining to the

Receivership including duties, liabilities, claims and responsibilities existing as of the date of the Order approving this Motion or arising thereafter, with the limited exception of the residual responsibilities specified in Paragraph 8, below;

6. All persons or entities are enjoined from commencing or prosecuting any action against the Receiver or his agents in connection with or arising out of the Receiver's or his agents' services to this Court in this Receivership, whether previously or prospectively with respect to the Receivership Property;

7. The Court retains jurisdiction for the purpose of enforcing the above relief;

8. This Receivership is closed without further order from this Court effective upon filing the final necessary tax returns, and paying the final fees and costs of the Receivership, with the Receiver having the residual responsibility to maintain the Receivership Property as provided for in this Motion, with the residual obligations of the Receiver terminated at such time as the Receivership Property is destroyed, with such termination occurring without further order of this Court; and

9. The Receiver is authorized to terminate bonds or sureties related to this Receivership.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT COURT

Dated: July 29, 2021